UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.

AT&T WIRELESS SERVICES OF MASSACHUSETTS, )
INC., d/b/a AT&T WIRELESS, )
and EASTERN TOWERS, LLC, )
                                    Plaintiffs, )
)
    v. )
)
TOWN OF WAYLAND, MASSACHUSETTS, )
BOARD OF APPEALS of the TOWN OF )
WAYLAND and JAMES E. GRUMBACH, ERIC B. )
GOLDBERG, STEVEN FUGARAZZO, LAWRENCE K. )
GLICK, SUSAN KOFFMAN, SHAUNT SORIAN, )
ADIA GENNIS, LINDA SEGAL, as they are members )
and alternate members of the Board, )
                                    Defendants. )
)

04-11807 MLW

MAGISTRATE JUDGE

RECEIPT #
AMOUNT $
SUMMONS ISSUED
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE

## COMPLAINT

1.    Plaintiffs AT&T Wireless PCS, LLC ("AT&T Wireless") and Eastern Towers, LLC ("Eastern") appeal under both federal and state law from the denial by the Wayland Zoning Board of Appeals ("Board") of their joint application for zoning permission to install and operate a flagpole-style wireless communications tower and facility at 137 Boston Post Road (Route 20), Wayland, Massachusetts. Attached hereto as Exhibit A is a certified copy of the Board's Decision filed with the Wayland Town Clerk on July 30, 2004.

2.    The Plaintiffs seek relief pursuant to Section 704 of the Telecommunications Act of 1996, Pub. L. No. 104-104 ("the Telecommunications Act"), codified at Section 332(c)(7) of the Communications Act of 1934, 47 U.S.C. §§ 151-691, and the Massachusetts Zoning Act, M.G.L. c. 40A, § 17.

3.     As the Town of Wayland and its Board have previously been admonished by this Court for their "hostility" toward wireless communication facilities, AT&T Wireless and Eastern seek temporary, preliminary and permanent injunctive relief authorizing the immediate construction of their facilities. *Nextel Communications of Mid-Atlantic, Inc. v. Town of Wayland*, 231 F.Supp.2d 396, 407, 409 (D.Mass. 2002) ("Under the Telecommunications Act, the Board cannot deny the variance if in so doing it would have the effect of prohibiting wireless services. 47 U.S.C. § 332(c)(7)(B)(i)(II);" and "the undisputed evidence shows repeated delays and denials that, when viewed in the aggregate, demonstrate the Town's hostility towards" the wireless carrier in that case).

## JURISDICTION

4.     This Court has subject matter jurisdiction over this action pursuant to (a) Section 332(c)(7)(B)(5) of the Telecommunications Act because the Plaintiffs have been adversely affected and aggrieved by the Board's denial of their applications and (b) 28 U.S.C. § 1331 because this action presents a federal question under the Telecommunications Act. This action appropriately may be brought pursuant to the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 (the Declaratory Judgment statute) because an actual controversy exists. The Court has supplemental jurisdiction over the Massachusetts state law claims pursuant to 28 U.S.C. § 1367.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Plaintiffs' claims arose in this judicial district.

2

## THE PARTIES

6.     The Plaintiff AT&T Wireless Services of Massachusetts, Inc. (f/k/a AT&T Wireless PCS, LLC ("AT&T Wireless")), is a Delaware corporation qualified to do business in Massachusetts with a business address of 400 Blue Hill Drive, Suite 100, Westwood, MA 02090.  AT&T Wireless is licensed by the Federal Communications Commission to provide personal wireless service in areas that include Wayland, Massachusetts.

7.     The Plaintiff Eastern Towers, LLC ("Eastern"), is a Massachusetts limited liability company qualified to do business in Massachusetts with a business address of 40 Tioga Way, Suite 220, Marblehead, Massachusetts 01945.  Eastern is in the business of constructing and leasing telecommunications towers to carriers licensed by the Federal Communications Commission to provide personal wireless service in areas that include Wayland, Massachusetts.

8.     The Defendant Town of Wayland (the "Town") is a duly constituted municipal corporation of the Commonwealth of Massachusetts, with a place of business at the Town Building, 41 Cochituate Road, Wayland, MA 01778.

9.     The Defendant Board is a duly constituted board of the Town with an office at the Town Building, 41 Cochituate Road, Wayland, MA 01778.

10.     The Defendant, James E. Grumbach, is the Chairman of the Board.  He resides at 7 Winthrop Road, Wayland, Massachusetts 01778.

11.     The Defendant Eric B. Goldberg is a member of the Board. He resides at 211 West Plain Street, Wayland, Massachusetts 01778.

3

12.    The Defendant Steven Fugarazzo is a member of the Board. He resides at 17 Maguire Road, Wayland, Massachusetts 01778.

13.    The Defendant Lawrence K. Glick is a member of the Board. He resides at 35 Brooks Road, Wayland, Massachusetts 01778.

14.    The Defendant Susan Koffman is a member of the Board. She resides at 66 Shermons Bridge Rd., Wayland, Massachusetts 01778. She voted in favor of the necessary relief and is sued solely as a nominal party.

15.    The Defendant Shaunt Sorian is an alternate member of the Board. He resides at 9 Matthews Dr., Wayland, Massachusetts 01778. He did not sit on the matter at issue in this case and is sued solely as a nominal party.

16.    The Defendant Adia Gennis is an alternate member of the Board. She resides at 22 Wayland Hills Rd., Wayland, Massachusetts 01778. She did not sit on the matter at issue in this case and is sued solely as a nominal party.

17.    The Defendant Linda Segal is an alternate member of the Board. She resides at 9 Aqueduct Rd., Wayland, Massachusetts 01778. She did not sit on the matter at issue in this case and is sued solely as a nominal party.

18.    Defendants Grumbach, Fugarazzo, Glick, Goldberg and Koffman, rendered the decisions at issue in this case.

## NEED FOR ADDITIONAL COVERAGE IN WAYLAND

19.    Despite years of effort, AT&T Wireless currently has no wireless communication facilities in Wayland.

4

20.    AT&T Wireless covers portions of western Wayland from an existing site in Sudbury at the Sudbury landfill (site number 904).

21.    AT&T Wireless also has an approved site that is not yet on-air at the Weston Police Station property on Boston Post Road By-Pass (Route 20) in Weston, approximately 1.5 miles east of the Wayland town line (site number E-341.5).

22.    To the south of Wayland, AT&T Wireless has three sites providing a small amount of coverage to southern Wayland, located at 70 Pine Street, Natick (site number 163), 100 Brown Street, Weston (site number 166) and Old Connecticut Path, Framingham (site number 300).

23.    The sites identified above are not capable of providing coverage throughout Wayland or to the Coverage Gap (as defined below), especially in light of the size and topography of the Town.

24.    AT&T Wireless currently has no other sites outside Wayland that provide usable signal to Wayland.

25.    AT&T Wireless currently has a significant gap in its wireless communications services in Wayland, including the central and eastern portions of Route 20 in Wayland, and surrounding areas north and south of that segment of Route 20 (the "Coverage Gap").

26.    The proposed installation would provide wireless communications services in the area of the Coverage Gap.

27.    These are high-demand areas in which AT&T Wireless currently lacks adequate communications service.

28.    AT&T Wireless has no existing facilities in Wayland, and none of the existing or proposed sites in towns near Wayland provides or is capable of providing usable coverage to Wayland in these areas.

## THE WAYLAND ZONING BY-LAW

29.    Sections 198-1502, *et seq.* of the Wayland Zoning By-Law ("Bylaw") regulate the placement, construction and modification of personal wireless services facilities.

30.    Under § 198-1503.1 of the Bylaw, entitled Use restrictions, "A wireless communications facility may be erected in the Wireless Communications Services District upon the issuance of a special permit by the Planning Board . . .."

31.    Section 198- 302.1.8.A limits placement of wireless communications facilities to a narrow Wireless Communications Services Facility Overlay District ("WCSD"). It was originally enacted in 1999 and amended in 2001 and 2002 in ways prejudicial to pending applications. As currently phrased, it limits the WCSD to the extreme western part of town, surrounding the land in Sudbury, Massachusetts known as the Sudbury Landfill, where the Town well knows AT&T Wireless already has a wireless communications facility.

32.    The prohibition on wireless use outside the WCSD also appears in other Bylaw provisions, including Bylaw § 198-201.1.5, 198-802.1, 198-1502, 198-1503.1.

33.    Bylaw Section 1503.2.4 further regulates the use of existing electrical towers in the WCSD, by establishing height and design limitations:

Any wireless communications facility erected in the portion of the Wireless Communications Services District comprising the portion of so-called MBTA right-of-way located between its westernmost boundary with the Town of Sudbury and its boundary with the southerly side line of Route 20, as described in Section 198-1502.1 of this Zoning Bylaw, shall be mounted on and attached to one of the Boston Edison

6

Company (BECO) electric transmission tower located therein numbered 94 through 102, inclusive, except structures which are accessory to such wireless communications facilities. Except for the BECO towers, the highest point of any antennas support structure or of any antenna or any component thereof or attachment thereto shall not exceed 10 feet above the lesser of the preexisting significant tree canopy elevation or the proposed post construction significant tree canopy elevation, as defined in § 198-1503.2.4.2 below.

This section of the Bylaw is not applicable to this petition, because the Coverage Gap cannot be filled from any of these BECO towers within this section of the MBTA right-of-way. By its terms, the section is limited to particular electric transmission towers; it does not authorize the use of other electric transmission towers for wireless communications purposes; and it does not authorize the use of the towers discussed in the Board's decision, as set forth below.

34.    The general height restriction upon wireless communications facilities appears in section 1503.2.4.1, and reads as follows: "Except for the BECO towers, if there is no significant tree canopy elevation, as defined in § 198-1503.2.4.2 below, the maximum height of any antenna support structure or any antenna or any component thereof or attachment thereto shall not exceed 55 feet above finished grade of ground elevation."

## ATTEMPTS TO LOCATE A COMPLYING SITE

35.    To address the Coverage Gap in question, the Plaintiff AT&T Wireless evaluated potential sites in the WCSD, as well as any existing tall structures as potential candidates for a new wireless communications facilities.

36.    The extremely limited area of the WCSD cannot provide adequate coverage to the Coverage Gap. Indeed, AT&T Wireless already has a 150' facility on adjacent property at the Sudbury Landfill in an abutting town.

37.    In submissions to the Board, Eastern and AT&T Wireless documented the investigation of 56 potential locations for a new tower in Wayland, most of which were located outside of the WCSD. The properties at 135 and 137 Boston Post Road were the only ones available for lease. Either one would provide the necessary coverage for AT&T Wireless, and AT&T Wireless invited the Board's input as to which site the Board preferred. Eastern has the prime lease on the site at issue in this case; another wireless provider has the prime lease on the other property, which is mired in proceedings before the Board.

38.    At the Board's suggestion, AT&T Wireless also investigated numerous electric transmission towers (towers numbered 120-132) owned by NSTAR Electric (formerly Boston Edison Company ("BECO")) located outside the WCSD and near residences. In every case, installation of a facility on and next to those towers would require variance relief for use, setbacks, height, and possibly other dimensional requirements. Proposals for construction on particular towers would also raise other permitting issues; pose risks of legal challenges to access; entail highly visible placement of facilities; and/or raise serious obstacles to construction.

39.    Those towers were located in an area that the Town has *never* included within the WCSD. Indeed, they shared many of the characteristics that led to significant Town and resident opposition to proposals by four FCC-licensed carriers (AT&T Wireless, Omnipoint, Nextel and Cingular) to locate wireless communication facilities on a different set of BECO towers in Wayland, as alleged below.

40.    Because of obstacles to construction and permitting, AT&T Wireless submitted a letter to the Board explaining why those towers were not reasonable alternatives. Because the obstacles to permitting and construction relating to these transmission towers are at least as great

as at the proposed Site, it is irrelevant whether or not the towers are available for leasing and/or would meet radio frequency requirements.

41.    Despite a diligent search, the Plaintiffs have been unable to locate a suitable site that would not require variances under the By-Law, that would be leasable and constructable and reasonably likely to receive permits, and that would enable AT&T Wireless to provide coverage in the areas that would be covered by the proposed installation.

## PRIOR ATTEMPTS TO LOCATE FACILITIES IN WAYLAND

42.    Since at least 1998, AT&T Wireless has tried to site a suitable wireless communication facility or facilities in Wayland.

43.    The Town has stymied all of those efforts, despite the expenditure by AT&T Wireless of hundreds of thousands of dollars in an effort to investigate, identify, lease, design, permit, and construct a suitable facility or facilities in the Town of Wayland.

44.    The Town's animus against wireless communication facilities makes applications to the Board and other Town agencies futile, and is amply reflected in the Board's denial of the application in this case.

45.    Beginning in approximately 1998, AT&T Wireless worked to site a facility on a power mount pole mounted on an existing BECO transmission tower, numbered Tower 112, on a discontinued MBTA railroad right-of-way in Wayland center.  At the time AT&T Wireless proposed this facility (to be collocated with a proposed facility of Omnipoint Communications, now T-Mobile), AT&T Wireless relied on the then-current version of Section X F 6 of Bylaw, which exempted the proposed wireless communication facilities from the Wireless Communications bylaw.

46.    Initially, AT&T Wireless received site plan approval for the proposed facility.

47.    However, at nearly every turn, Wayland citizens, town officials, and/or the Town of Wayland attempted to stop the construction of the proposed facility.

48.    Citizen opposition efforts were often led by Margaret Patton. Ms. Patton appeared before the Board in opposition to the application at issue in this case *and the Board relied on her* (Decision, pp. 9, 13), without even acknowledging her long history of ideologically-based opposition to any cell tower anywhere in Wayland (and, indeed, in other municipalities).

49.    The opposition to the Wayland Center BECO Tower No. 112 facility by the Town, Ms. Patton and others included: filing unsuccessful and ultimately abandoned judicial appeals of the Planning Board's endorsements and approvals, which were rejected by the Middlesex Superior Court[1] and the Appeals Court;[2] appealing, without success, the Order of Conditions from the Wayland Conservation Commission to the Department of Environmental Protection (DEP File No. 322-428); initiating and passing a one-year Moratorium on Wireless Communication Facilities at the Wayland Town Meeting on June 4, 1998 as Article 2 (despite the existing, strict regulation of wireless facilities); initiating and passing a revised Wireless Bylaw which further restricted the available places to site a wireless communication facility in Wayland; opposing AT&T Wireless' and Omnipoint's request that the Massachusetts Historical

---

[1]    Patton v. Planning Bd. of Wayland, No. MICV99-01312 (Sup. Ct. filed Oct. 4, 2001) (Dismissing neighbors' appeal of Planning Board Site Plan Approval), *appeal dismissed for lack of prosecution*, No. 01-P-1858 (Mass. App. Ct. filed Apr. 8, 2002); Patton v. Planning Bd. of Wayland, No. MICV98-3576 (Sup. Ct. filed Oct. 3, 2001) (Dismissing neighbors' appeal of Planning Board's endorsement of ANR Plan), *aff'd* 56 Mass. App. Ct. 1107, 778 N.E.2d 31 (2002), *further app. rev. denied*, 438 Mass. 1106, 782 N.E.2d 516 (2003).

[2]    *Id.*

Commission make a finding of "no adverse effect" of the proposed facility on historical or archaeological resources; and initiating and passing Articles 40 of the May 8, 2000 Town Meeting and Article 34 of the May 3, 2001 Town Meeting, enacting a revised delineation of the Historic District in Wayland Center to include the area of the proposed facility on Tower No. 112.

50.     Ultimately, these dilatory tactics bore fruit for the opponents of the facility. The Massachusetts Historical Commission issued an "adverse effect" finding for the proposed project on BECO Tower No. 112 on March 9, 2001 (copy attached as Exhibit B), requiring AT&T Wireless to investigate "alternative project locations, designs, engineering and access routes" to mitigate any adverse effects on the historical and archaeological resources identified by MHC.

51.     The required investigation of alternative sites led directly to the present application for two viable alternative sites (either the Eastern Towers facility at issue in this Complaint or the abutting Classic Clocks facility that remains mired before the Board) that would completely eliminate any adverse effects of AT&T Wireless' proposed facility on the Wayland Center Historic District or the historical and archaeological resources in the former railroad right-of-way.   Indeed, from a coverage perspective, either site would address AT&T Wireless' significant coverage gap along Route 20 in a manner preferable to the previously proposed facility on BECO Tower No. 112 (which is located further west than is needed to address this gap, and which does not cover a topographical anomaly in the vicinity of the current proposed facilities).

52.     After AT&T Wireless and another FCC-licensed carrier, Sprint, approached the Town of Wayland to initiate a building permit application for the proposed facilities, the Town's Executive Secretary Jeff Ritter sent a certified letter stressing the Town's desire to have the

carriers locate a facility within the Town's existing Wireless Overlay District, and in particular BECO stanchions 101 and 102 and the Old Landfill. The letter expressed the Town's unsubstantiated and incorrect belief that those locations would be able to connect coverage to the Weston Police station site.

53.     In fact, it is not possible to address AT&T Wireless' substantial coverage gap by using a conforming facility in the Town's existing Wireless Overlay District, and in particular at BECO stanchions 101 and 102 and/or the Old Landfill. Further, the Town's existing Wireless Overlay District, and BECO stanchions 101 and 102 and the Old Landfill, are in close proximity to AT&T Wireless' existing Sudbury Landfill Facility, raising very real concerns about interference between the sites, overlapping coverage, and inefficient use of AT&T Wireless' allotted spectrum.

54.     These concerns are so serious that AT&T Wireless evaluated but declined to even bid on the Town of Wayland's Request for Proposals, with bids due by 12:00 noon, Friday, September 20, 2002, for a wireless communication facility on Town-owned property in the Wireless Overlay District. On information and belief, no other carrier bid on that request either.

55.     Other carriers have been subjected to the Town's anti-wireless animus, as found by the United States District Court. *Nextel Communications of the Mid-Atlantic, Inc. v. Town of Wayland*, 231 F.Supp. 2d 396, 406-407 (D. Mass. 2002) (commenting on the Town's "hostility" toward wireless communications facilities and concluding "[u]nder the Telecommunications Act, the Board cannot deny the variance if in doing so it would have the effect of prohibiting wireless services"). The Board relied upon the same expert, David Maxson, to buttress its position in that case as it did in denying the Plaintiffs' application at issue here.

## THE PROPOSED FACILITY

56.    As shown on the plans submitted with the application, Eastern proposes to construct and operate a 120' tall multi-carrier wireless communications tower at the Site, disguised as a flagpole with hidden antennas.

57.    During the hearings before the Board, it became apparent that AT&T Wireless, Sprint, Cingular and T-Mobile all would locate upon the proposed tower, if approved. Eastern noted that the proposed lease area for the proposed tower and offered, in order further to minimize future requests for additional towers, to construct a tower that would accommodate four carriers, instead of three, as originally proposed.

58.    AT&T Wireless proposes to install and operate its wireless communication facility within and next to the tower.

59.    The AT&T Wireless facility will consist of antennas, cables, up to two (2) RBS 2106 equipment cabinets, and electric and telephone utility connections.

60.    AT&T Wireless proposes to install its antennas at a center line height of 117'± AGL (above ground level).

61.    The entire facility will be enclosed inside a fenced compound.

62.    The proposed 120' tower will be capable of accommodating AT&T Wireless, and up to three (3) additional carriers. The fenced area will also be sufficient to accommodate the ground equipment for AT&T Wireless and the additional collocating carriers.

63.    The proposed use is completely passive and unobtrusive, requires no employees or customers on the premises and has no characteristics that are incompatible with nearby properties.

13

64.    The Site is located adjacent to a roadside business district, next to numerous non-residential uses, and buffered by the existing tree cover at the property and heavy existing tree cover in the neighborhood.

## THE PROCEEDINGS BEFORE THE BOARD

65.    On June 18, 2003, the Wayland Building Inspector denied an application for a building permit to construct a proposed wireless communications facility at 137 Boston Post Road (Assessor's Map 29, Lot 41) in Wayland (the "Site").

66.    The Plaintiffs submitted an application to the Board on or about July 16, 2003, for various forms of zoning relief authorizing construction of the proposed facility at the Site, including an appeal from the Building Inspector's denial, a use variance (Mass. Gen. Laws, c. 40A, §10 and Bylaw § 198-201.1.5, 198-802.1, 198-1502, 198-1503.1), dimensional variances (Mass. Gen. Laws, c. 40A, §10 and Bylaw § 198-701.1.2 (Height), 198-1503.2.4.1 (Height), 198-1503.2 (Height), 198-1503.2.7 ("Fall Zone"), 198-1503.2.13 (900' Setback)), a special permit ((Mass. Gen. Laws, c. 40A, §9 and Bylaw § 198-401, 198-201) and Site Plan Review with related waivers (Bylaw § 198-601).

67.    The Plaintiffs submitted with the application a memorandum documenting compliance with the requirements for a variance, special permit and other relief under the By-Law and M.G.L. c. 40A, §§ 9, 10.  The application attached exhibits, including analysis from a radio frequency specialist, documentation of compliance with state and federal regulatory requirements, detailed plans, a noise analysis, and a report of surveys and other items.

14

68.     In their application, the Plaintiffs satisfied all of the requirements for a use variance and special permit relief under the By-Law and the Zoning Act, M.G.L. c. 40A, §§ 9, 10, particularly in light of the Federal Telecommunications Act of 1996.

69.     On September 16, 2003, October 21, 2003, December 17, 2003, February 4, 2004, March 30, 2004, April 26, 2004, June 22, 2004, July 8, 2004 and July 15, 2004, the Board held a public hearing, after publishing and mailing a public notice referring to the application.

70.     The Board thus dragged proceedings out for a year, although it was no newcomer to wireless applications. During that time, the Board requested much burdensome and confidential material from AT&T Wireless, and sought to induce Eastern and AT&T Wireless to delay resolution even longer, until September, 2004 or later. AT&T Wireless and Eastern invoked their rights to a decision, rather than succumb to further delay. See G.L. c. 40A, §§ 9, 15; 47 U.S.C. § 332(c)(7)(B)(ii).

71.     After closing the hearing on July 15, 2004, the Board voted 4-1 to deny zoning variances that would have sufficed to authorize the facility. It voted 5-0 to deny the other requested relief.

72.     Given the Board's majority position denying the existence of any significant coverage gap at all, it is futile to examine further various options to filling the Coverage Gap (all of which options require significant variance relief to address a Coverage Gap, the existence of which the Defendants deny).

73.     Nevertheless, the Plaintiffs analyzed alternatives and showed that there are no reasonably available existing structures or alternative sites that could support the proposed wireless communications antennas and provide coverage to the Coverage Gap.

74.    As reflected in the Board's decision (p. 14), the dissenting Board member correctly concluded that:

the applicants' evidence, shown in the coverage maps and in testimony from the applicants' experts, showed that a gap existed north and south of Route 20 and that all the tests performed by the public and the Board's RF expert covered only the Rte. 20 corridor. Since this evidence stood unrefuted, she felt the Board, under the *Nextel* decision and other case law under the TCA, had no choice but to accept it as proof of a substantial gap.

75.    The Board's Decision (p. 17) even conceded the majority's view that the Town's consultant "opined, based on all the evidence at the hearings, that there is a small gap (somewhere between 0.5 and 1.5 miles on Rte. 20), but not a substantial coverage gap in the area in which the applicants seek to build a tower. Accordingly, the Board determined (4-1) that the applicants had not demonstrated a substantial gap in coverage."

76.    The undisputed evidence showed that there is a significant amount of traffic on Routes 20 and 27 in Wayland, as illustrated by average daily traffic counts ranging from 16,400 to 25,000 in 1999. This, among other evidence, showed the significance of even a ½ mile gap on those roads, not to mention the side roads, residences and businesses to the north and south of Route 20.

77.    Maxson - the Town's consultant whose efforts on behalf of towns seeking to stop wireless communication have been rebuffed by this Court in Wayland,[3] Concord,[4] and Lincoln[5] - reached his conclusion of a smaller gap than predicted by AT&T Wireless due to his improper

---

[3]    *Nextel Communications of the Mid-Atlantic, Inc. v. Town of Wayland*, 231 F.Supp. 2d 396, 406-407 (D. Mass. 2002).

[4]    *AT&T Wireless PCS, Inc., d/b/a AT&T Wireless Services v. Town of Concord, MA*, Civil Action No. 99CV 11866 RWZ.

[5]    *Omnipoint v. Town of Lincoln*, 107 F. Supp.2d 108 (D. Mass. 2000).

reliance upon signal strength criteria from an irrelevant context, without any proof that AT&T Wireless could actually build a usable network in Wayland with a signal strength lower than -95 dBm.

78.     The Board also stated that it did not believe that the carriers had made a sufficient effort to evaluate other alternatives, based upon its disbelief of AT&T Wireless analysis of BECO electric transmission towers number 120-132, lying outside of the WCSD. The Board also cited a snippet of testimony regarding coverage on Route 20 through use of an alternative technology that was planned for Nantucket. That technology would require placing antennas in multiple locations all along Route 20 outside the WCSD, each of which would require its own use variance and other relief, with each variance affording its own opportunity for defeating the technology through zoning denial(s) or delay through litigation. There was no evidence before the Board that either set of alternatives would receive the necessary use variances, dimensional variances, special permits or other relief. The Board did not commit to issue such relief for those alternatives, even conditionally.

79.     The Board erroneously, and without evidence, asserted that BECO towers 120-132 would not require building "a new structure above the treeline and near residential structures."

80.     Indeed, proposed wireless facilities construction using BECO tower No. 112 in Wayland had previously met with massive public and Town opposition, including assertions that such construction entailed new structures near residences. Like BECO tower No. 112, BECO towers 120-132 are, indeed, near residences and would require use and setback variances, and other material relief. The Town's refusal to permit construction upon BECO tower No. 112 was,