UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEXTEL COMMUNICATIONS<br>OF THE MID-ATLANTIC, INC. d/b/a<br>NEXTEL COMMUNICATIONS,<br><br>Plaintiff<br><br>v.<br><br>THE TOWN OF WAYLAND<br>MASSACHUSETTS, THE ZONING<br>BOARD OF APPEALS of the TOWN<br>OF WAYLAND, MASSACHUSETTS and<br>LAWRENCE K. GLICK, ERIC<br>GOLDBERG, JAMES GRUMBACH,<br>CAROLYN KLEIN AND MARY L.<br>LENTZ in their capacities as Members<br>of the Zoning Board of Appeals of the<br>Town of Wayland, Massachusetts,<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION<br>) NO. 02-10260-REK<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Opinion and Order**
**November 22, 2002**

**KEETON**, District Judge

### I.  Pending Motions

Pending for decision are the following motions:

(1) Plaintiff's Motion for Summary Judgment (Docket No. 20, filed August 15,

2002).  Defendants have filed an opposition.  (Docket No. 29, filed September 18, 2002).

(2) Defendants' Cross Motion for Summary Judgment (Docket No. 28, filed

September 18, 2002).  Plaintiffs have filed an opposition.  (Docket No. 37, filed October 11,

2002).

## II. Relevant Factual and Procedural Background

Nextel is a provider of personal wireless services.  In or about 1994, Nextel

sought authorization from the Town of Wayland to construct a monopole antenna tower on a

wooded parcel of land in the Town, but such authorization was denied.  Nextel then obtained

permission from Boston Edison Electric Company ("BECO") to attach antennas to an existing

97' tall electric transmission tower ("BECO 111"), with the goal of providing coverage to central

Wayland.  Nextel filed an application with the Wayland Planning Board for review of the

proposed antenna facility.  On June 2, 1998, the Board issued an "approval not required"

determination ("ANR"), thereby "freezing" the applicable zoning regulations, making at least

some types of future amendments to the zoning regulations inapplicable to the subject site.

On June 4, 1998, the Town enacted a twelve-month moratorium, banning new

construction of telecommunications facilities, including Nextel's desired construction of

antennas on BECO 111, for that time period.  This moratorium was later found to be unlawful by

the Massachusetts Attorney general, but the Town responded on December 2, 1998 by enacting a

six-month moratorium.

Three times the Town repealed its existing by-law provisions governing wireless

communication facilities and replaced them with new or modified provisions.  Nextel, whose

application for the BECO site was still pending, continued to wait until the Town made these

changes to its zoning by-laws.  After the changes, the area in which the BECO site is located was

2

no longer zoned for wireless communication facilities.

Nextel filed an application for a zoning variance from the general thirty-five foot height restriction contained in the new By-Law in order to install its antennas atop the existing 97' tower. The Wayland Zoning Board of Appeals ("ZBA" or "the Board") held five public hearings on Nextel's application, stretching over an eight-month period beinginng on May 1, 2001, and ending on January 15, 2002. The ZBA voted to deny Nextel's application for the variance. This decision was reduced to writing and filed with the Town Clerk on January 29, 2002.

On February 15, 2002, Nextel filed a complaint in this court seeking declaratory and injunctive relief based on three claims for relief: the denial of permission to build the proposed facility was not supported by substantial evidence contained in a written record (Count I); the Town's regulatory scheme, as applied by the ZBA, has the effect of prohibiting Nextel from providing wireless services (Count II); and, the Town's regulatory scheme, as applied by the ZBA, is arbitrary, capricious, unreasonable and in excess of the authority lawfully granted to the Town or its ZBA under the laws of the Commonwealth of Massachusetts (Count III). Both sides to this lawsuit now seek summary judgment on each of these Counts.

### III. Summary Judgment Standard.

Summary judgment should be granted only where the court, viewing the evidence in the light most favorable to the non-moving party, determines that no genuine dispute of material fact exists. See Fed. R. Civ. P. 56. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record showing the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477

3

U.S. 317, 323 (1986). Then the non-moving party must demonstrate that "*every essential element* of its claim or defense is at least trialworthy." Price v. General Motors Corp., 931 F.2d 162, 164 (1st Cir. 1991) (italics in original).

A dispute is genuine if it "may reasonably be resolved in favor of either party." Cadle Co v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Facts are "material" if they possess "the capacity to sway the outcome of litigation under the applicable law." Id. The facts in genuine dispute must be significantly probative in order for summary judgment to be denied; "conclusory allegations, improbable inferences, and unsupported speculation will not suffice." Id.

### IV. Undisputed Facts

Because plaintiff and defendants filed cross-motions for summary judgment, each filed a statement of undisputed facts. Those facts from each statement that have been admitted, or not properly disputed, are directly quoted as follows:

**A.    Nextel's undisputed facts, admitted by defendants.**

1.    [Nextel] is a provider of enhanced specialized mobile radio services, a type of commercial mobile radio services ("CMRS") which are within the definition of "personal wireless services" (hereinafter "PWS") set forth at 47 U.S.C. § 332 (c)(7)(C)(i).

2.    Nextel is licensed by the Federal Communications Commission ("FCC") to provide CMRS in certain markets, including Massachusetts.

3.    Nextel's PWS network is entirely digital and employs time division multiple access technology. The network requires deployment of antennas throughout the area to be covered, which are connected to receivers and transmitters that operate in a limited geographic area known as a "cell." Nextel's portable telephones operate by transmitting and receiving low power radio frequence signals to and from these cell sites. The signals are transferred to and from ground telephone lines and routed to their destinations by sophisticated electronic equipment.

4.    The size of the area served by each cell site is dependent on several factors, including the number of antennas used, the height at which the antennas are deployed, the topography

of the land, vegetative cover and natural or man-made obstruction in the area. As customers move throughout the service area, the transmission from the portable unit is automatically transferred to the closest Nextel facility without interruption in service, provided that there is overlapping coverage from the cells. In order for Nextel's PWS network to function effectively, there must be some overlapping coverage between adjoining cells to allow for the transfer or "hand-off" of calls from one cell to another and to avoid disconnection or "dropped" calls. In other words, Nextel's antennas must be strategically located within the targeted area in order to provide sufficient radio frequency coverage, connectivity with surrounding sites, and adequate service. Nextel's antennas also must be located high enough above ground level to allow transmission (or "propagation") of the radio frequency signals above trees, buildings and natural or man-made other structures that may obstruct the signals. Areas without adequate radio frequency coverage have substandard or no wireless service.

5.    Nextel has had a need since at least 1994 for coverage in the central part of Wayland, an area which includes important commuter thoroughfares such as Routes 20 and 27. Nextel needs to install antenna facilities in this area in order to provide adequate service.

6.    In or about 1994, Nextel sought authorization from the Town to construct a monopole antenna tower on a wooded parcel of land in the Town, but such authorization was denied.

7.    Nextel then obtained permission from Boston Edison Electric Company ("BECO") to attach antennas to an existing 97' tall electric transmission tower, with the goal of providing coverage to central Wayland while minimizing the visual impact caused by such a facility.

8.    ...[Nextel filed an application with the Wayland Planning Board for review of the proposed antenna facility.] On June 2, 1998, the Planning Board issued an "approval not required" determination ("ANR"), which amounted to a determination that Nextel's proposal was exempt from subdivision regulations and also operated to "freeze" the applicable zoning regulations, i.e., to make at least certain types of future amendments to the land use regulations inapplicable to the subject site. On June 4, 1998, however, before Nextel could obtain final site plan approval, the Town enacted a twelve-month moratorium which banned all construction of wireless telecommunications facilities. This moratorium was later found to be unlawful by the Massachusetts Attorney General, but the Town responded on December 2,1998 by enacting a six-month moratorium, thus extending the ban on new construction of telecommunications facilities, even though Nextel and as many as three other wireless carriers were actively seeking to construct such facilities in Wayland at the time.

9.    On May 3, 1999, the Town repealed its existing by-law provisions governing wireless communication facilities and replaced them with new provisions, which in turn were

modified again on November 17, 1999 and yet again at the Town's Annual Town Meeting in 2000. Nextel, whose application for the BECO site was still pending, continued to wait while the Town made these changes to its zoning by-law and, although it had the right to do so, did not immediately challenge the Town-imposed delays.

10.   [After the changes, the area in which the BECO site is located was no longer zoned for wireless telecommunications facilities.]

11.   The Town has conceded that under Massachusetts law, Nextel's receipt of the ANR decision in June 1998 prevents the Town from subsequently designating the proposed Nextel antenna installation as an unlawful use. The Town, however, has taken the position that Nextel needs to obtain a dimensional variance from the general thirty-five foot height restriction contained in the By-law in order to install its antennas atop the existing 97' tower. Although Nextel disputes this position, on or about February 20, 2001, Nextel attempted to address the Town's concerns by applying to the Wayland ZBA for a variance form the 35 foot height limitation.

12.   [T]he ZBA found it necessary to hold five public hearings on Nextel's application, stretching over an eight-month period beginning on May 1, 2001, and ending on January 15, 2002.

14.   Nextel [during the hearing process] demonstrated the minimally intrusive nature of the proposed Nextel facility by presenting a number of photosimulations to the Board. [D]uring the November 13, 2001 hearing, a Board member suggested that the Board should deny Nextel's application and force Nextel to construct a new antenna tower on the Town-owned landfill site.

15.   The ZBA voted to deny Nextel's application for a dimensional variance. This decision was reduced to writing and filed with the Town Clerk on January 29, 2002.

Docket No. 23 at 1-6.

**B.   Defendants' undisputed facts, admitted by Nextel.**

1.   Wayland has adopted a Zoning Bylaw ("the Bylaw") regulating wireless communications facilities in the Town.

2.   Since May 3, 1999, the Bylaw has provided, in § 198-1503.1 that "A wireless communications facility may be erected in the Wireless Communications Services District ["District"] upon the issuance of a special permit by the Planning Board...." Section 198-1502 provides that the District encompasses certain parcels of land in the Town, known as the "old landfill site" ("Old Landfill") and the "new landfill site" ("New Landfill") and portions of the "Massachusetts Bay Transportation Authority (MBTA)

6

'right-of-way.' ["MBTA"]."

3.  Section 198-1503.2.4 provides: "Any wireless communication facility erected [in the
    District on the MBTA right-of-way] shall be mounted on and attached to one of the
    Boston Edison Company (BECO) electric transmission towers located therein numbered
    94 through 102, inclusive."

4.  The Bylaw establishes a maximum height of 55 feet for new free-standing towers (§
    1503.2.5), but allows "antenna or equipment mounted on or attached to any of the BECO
    towers" to "extend" up to "25 feet above the highest point of said towers" (§ 15.03.2.14).

5.  The Old Landfill is located on the south side of Route 20 and the BECO transmission
    towers 94 through 102 are adjacent to the Old Landfill.

6.  BECO 111 is not in the District.

7.  On June 2, 1993 the Wayland Planning Board reported on a proposed zoning bylaw
    amendment to be considered at the June 4, 1998 Special Town Meeting.

8.  The proposed amendment was to adopt a 12-month moratorium relating to wireless
    communications facilities to enable the Planning Board to "study and give appropriate
    consideration to the location and impacts of wireless communications facilities on
    inhabitants of the Town and to the overall coordination of the various provisions
    presently in [the zoning bylaw] with respect to the short and long range future."

9.  On June 4, 1998, the voters of the Town adopted this amendment.  While the Attorney
    General disapproved the amendment (under Massachusetts law the Attorney General
    must review and approve town bylaws), the Town challenged that disapproval in state
    court, Wayland v. Attorney General, Middlesex Superior Court, No.MICV 1998-05297,
    and that litigation is still pending.

10. On June 2, 1998, Nextel filed an "Approval Not Required Plan" ("ANR plan") under the
    Massachusetts Subdivision Control Law, G.L. c.41, §81P, with the Town's Planning
    Board regarding BECO 111.

11. The submission of such an ANR plan protects the land in question from a zoning change
    regulating the use of the land for three years under G.L.c.40A, §6 ("the use of land shown
    on such plan shall be governed by applicable provisions of the zoning ordinance or by-
    law in effect at the time of the submission of such plan...for three years from the date of
    the endorsement of the planning board....").

12. The Planning Board endorsed the ANR plan on June 16, 1998.

7

13.    On May 3, 1999 the Town adopted the District, limiting the District as described above. Subsequent amendments did not change the District in any material respect.

15.    The ANR endorsement was challenged in Patton et al. v. Wayland Planning Board, et al., Middlesex Superior Court, No. CIV 1998-03576, and is currently on appeal, Massachusetts Appeals Court, No.2002-P-0474.

16.    On February 20, 2001,...Nextel filed the variance application that is the subject of the lawsuit.

19.    The Board held its public hearing on Nextel's variance application May 1, June 12, September 11 and November 13, 2001, and January 15, 2002.

21.    Nextel did not object to these continuances and, indeed, agreed to them.

22.    The unanimous decision denying the variance was issued on January 29, 2002. The Board noted that Nextel sought the variance because, without a facility at BECO 111 "it would be ·unable to adequately connect the Town of Wayland to its larger network.' In other words, Nextel will suffer hardship because it will not be able to provide as much wireless coverage as it would like."

25.    At no time has Nextel applied to the Planning Board for a special permit to locate a wireless communications facility in the District.

26.    On June 4, 2002, the board of Selectmen of the Town wrote to Nextel (in response to a letter from the company) inviting the company to meet with Town officials to discuss proposals regarding locating a facility within the district. The Board of Selectmen stated: "We are fully prepared to entertain and support proposals from wireless providers that meet the current requirements of our by-law and are to be cited [sic] within the wireless overlay district. While we appreciate your suggestion that the Town move forward with necessary procurement procedures by issuing an RFP on the Town-owned land in the district, we believe the more logical approach is to address this process when one or more wireless providers present us with a specific proposal for use of Town-owned land."

27.    Nextel did not ["follow-up on this request" or "respond to the Town's letter"].

28.    ...['T]he Town...proceeded to undertake the procedural steps necessary to formally make the Town-owned land...available to wireless service providers."

29.    On August 2, 2002 the Town issued a "Request for Proposals" ("RFP") to solicit requests from wireless service providers and others to locate wireless communications facilities in the District and to use the Town-owned land at the Old Landfill to access BECO 94 through 102. The Town is awaiting responses to the RFP, which are due on September

20. 2002.

33.    ...Nextel did not have a facility in the Town of Weston.

40.    The three-color plots submitted with the RF Supplement depict computer-estimated
       coverage from three facility configurations. Two plots depict estimated coverage from
       antennas at the disputed BECO 111 site, one at 100 feet, the approximate proposed
       antenna height, and the other at the zoning height limit of 35 feet. The third plot depicts
       computer estimated coverage from the "Dump" at the maximum height allowed for a new
       tower under the Wayland Zoning By-law - a height of 55 feet.

41.    The "Dump" site shown on the plots appears to be described inaccurately in the RF
       Supplement as the "old Wayland Landfill, now the transfer station." The Old Wayland
       Landfill, described in the Bylaw §198-1502.1, is south of Route 20 and is not the site
       shown on the Nextel "Dump" plot. The Wayland transfer station is situated north of
       Route 20, in Wayland, and is part of a parcel referred to as the New Landfill in the Bylaw.
       This site also appears not to be the site employed by Nextel in its plot of coverage from
       the "dump" site. The site marked "Dump" in the Nextel computer estimated coverage
       plot appears to be at the approximate location of the Sudbury transfer station, which is
       located on the Sudbury side of the Sudbury/Wayland town line north of Route 20. (In
       admitting this fact, Nextel states; "Nextel admits that it is true, but artfully worded to
       obscure the fact that the Dump Transfer Station and Old Landfill are all adjacent or nearly
       adjacent to each other and the Sudbury "Dump" is a single parcel nearly surrounded by
       Wayland and, except for a small right of way.")

42.    The site depicted as the "Dump" but which appears to be in Sudbury is about one mile
       from the BECO 111 tower.

44.    The differences in ground elevation of the Old Landfill site, the BECO 111 site, and the
       BECO towers numbered 101 and 102 bordering the Old Landfill are less than ten feet.

45.    The BECO towers in the District are visually identical to the BECO 111. (Nextel states;
       "Admitted, except that the towers in the District are taller and thus potentially more
       visible.")

50.    The signal level chosen in the Plots as the apparent go/no-go value (threshold value) is
       negative 81 dBm. Signal levels shown in dBm are in decibels related to one milliwatt of
       power. Negative dBm figures represent levels less than one milliwatt. A -101 dBm
       signal is weaker than a -81 dBm signal.

54.    ...David Maxson of Broadcast Signal Lab conducted a drive test with a test signal emitted
       from the Old Landfill site.

9

56.    East of BECO 111 the terrain rises from the valley and flood plain of the Sudbury River. Continuing east toward Weston, the terrain takes a steep dip near Shir Tikva Temple ("the Temple") and rises again past Mahoney's Garden Center. The terrain levels out somewhat as one continues toward and beyond the Weston/Wayland boundary.

64.    The Town of Weston bylaws permit wireless facilities concealed within religious or municipal structures already in existence. Antennas mounted within church steeples tend to be 40 to 60 feet in height above ground. Weston also permits 100- to 120-foot towers on certain parcels that do not include the Baptist Church. The Police Station on Route 20 is one such parcel. Nextel has testified that it is considering development of a facility on Weston police property.

Docket No. 30 at 2-18

## V. The Merits

### A.    Introduction

Nextel is licensed by the Federal Communications Commission ("FCC") to provide enhanced specialized mobile radio services. These are types of commercial mobile radio services ("CMRS") that are within the definition of "personal wireless services" set forth at 47 U.S.C. § 332(c)(7)(C)(i).

Under the Telecommunications Act, 47 U.S.C. § 151 et seq., "local governments retain control 'over decisions regarding the placement, construction, and modification of personal wireless service facilities.' Nonetheless, this control is now subject to several substantive and procedural limitations that subject local governments to an outer limit upon their ability to regulate personal wireless services land use issues." Southwestern Bell Mobile Sys/, Inc. v. Todd, 244 F.3d 51, 57 (1st Cir. 2001). The Act places the following four requirements on localities making zoning decisions that involve the placement of "personal wireless service facilities:"

(1)    not to discriminate among providers of functionally equivalent services, 47

10

U.S.C. § 332(c)(7)(B)(i)(I);

(2)     not to prohibit or have the effect of prohibiting the provision of personal
         wireless services, id. at (B)(i)(II);

(3)     to act on any request for authorization to place, construct, or modify
         personal wireless service facilities within a reasonable period of time, id.
         at (B)(ii); and

(4)     to provide a decision in writing that is supported by "substantial
         evidence," id. at (B)(iii)

**B.     Count I - The ZBA's decision to deny the variance is in a writing that is not**

**supported by substantial evidence.**

In Count I, Nextel claims that the Town violated 47 U.S.C. § 332(c)(7)(B)(iii)

because the ZBA's denial of permission to build the proposed personal wireless service facility

on BECO 111 was not supported by substantial evidence contained in a written record.

**1.     Standard of review**

"The 'substantial evidence' standard of review is the same as that traditionally

applicable to a review of an administrative agency's findings of fact.  Judicial review under this

standard, 'even at the summary judgment stage, is narrow.' [I] review the written record

considered as a whole." Todd, 244 F.3d at 58 (quoting Associated Fisheries of Maine, Inc. v.

Daley, 127 F.3d 104, 109 (1st Cir. 1997)) (other internal citations omitted).

More than one panel of the First Circuit has defined "substantial evidence" as

follows:

> Substantial evidence is such relevant evidence as a reasonable
> mind might accept as adequate to support a conclusion.  The
> reviewing court must take into account contradictory evidence in
> the record.  But the possibility of drawing two inconsistent
> conclusions from the evidence does not prevent an administrative

11

agency's finding from being supported by substantial evidence.

Id. (quoting Penobscot Air Servs., Ltd. v. Fed. Aviation Admin., 164 F.3d 713, 719 (1st Cir. 1999).

The writing required by the Act "must contain a sufficient explanation of the reasons for the permit denial to allow a reviewing court to evaluate the evidence in the record supporting those reasons." Id. at 60.  My review of that decision, however, "is not limited...only to the facts specifically offered in the written decision." Id.

2.    **Applying the standard of review to the Wayland Zoning Board of Appeal's written decision.**

a.    **Introduction**

The Zoning Board unanimously denied Nextel's application for variance.  In a three page written decision, the Board presented a two-step set of reasons.  The Board reasoned that (1) the ANR freeze did not require the variance, and (2) because such variance was not required by the ANR freeze, it would be required only if unique circumstances existed, relating to soil condition, shape, or topography of the location and those circumstances would cause substantial hardship.  The Board found that such unique circumstances were not present.

b.    **The first step in the Board's reasoning is based on substantial evidence.**

First, the Board reasoned that the variance Nextel requested was a dimensional variance, not a use variance, and therefore was not protected by the "ANR freeze." In its decision, the Board admits that, under M.G.L. c. 40A § 6, the ANR endorsement that Nextel received freezes the applicable provisions of the zoning by-law in effect at the time of the

12

submission of the ANR plan. The Board, however, stated that "[t]he scope of this freeze of the applicable provisions of the zoning by-laws is expressly limited in M.G.L. c. 40A, § 6 to the 'use of the land shown on the plan.'" Quoting <u>Bellows Farms v. Building Inspector of Acton</u>, 364 Mass. 253, 260 (1973), the Board stated that the freeze

> 'gives...protection only against the elimination of or reduction in the kinds of uses which were permitted when the plan was submitted to the planning board.' It does not, however, give protection against amendments to zoning by-laws relative to dimensional requirements, unless such amendments 'amount to a total or virtual prohibition of the use of the locus' or 'impede the reasonable use of the...land' as permitted at the time of the of the [sic] submission of the ANR plan to the Planning Board.

(Proia Aff., Ex. J at 2).

According to the Board, the current height limitation is 35 feet, and therefore Nextel's proposal to build a tower on top of the 97' BECO 111 would violate the Zoning By-Law. The Board acknowledged Nextel's claim that a 35-foot tower on that spot would not provide as much coverage as Nextel would like. Despite this, the Board stated, "[u]nder these circumstances, the board finds that the 35-foot height limitation does not either amount to a virtual prohibition of the use or impede the reasonable use of the Locus for a WTF [wireless telecommunication facility]."

In evaluating whether substantial evidence is in the record to support this reason, I first note that Nextel and the Town agree on three important pieces of evidence: (1) an ANR designation operates to freeze zoning provisions regarding allowed uses of the location, not dimensions, (2) the proposed facility would exceed the dimensional requirements of the current Zoning By-Laws, and (3) Nextel can receive some coverage from a tower built on the location in

13

compliance with the current zoning dimensional requirements.

The parties disagreement is about whether the denial of the dimensional variance constitutes denial of the use. In other words, the disputed issue is whether the 35-foot height restriction so interferes with the use that it renders the use prohibited. This disagreement is more accurately described as a dispute, not over whether substantial evidence exists, but over the correct interpretation of "impede the reasonable use of the...land."

The Board based its reasoning on its interpretation of: (1) the Town's existing bylaws and (2) Bellows Farms, a case from the Massachusetts Supreme Judicial Court applying Massachusetts law. According to Nextel, the dimensional requirement impedes their reasonable use of the property. Nextel disagrees with the Board's interpretation of Massachusetts law, arguing that a tower complying with the current dimensional requirements of the by-laws would leave a substantial gap in coverage, and therefore Nextel could not use it for their desired purpose - eliminating a significant gap in coverage.

As stated above, I must exercise only narrow judicial review of the Board's decision. I emphasize that my "review is not focused on whether the [Zoning] Board made the best or the correct decision." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 99 (1st Cir. 2002). Instead, I "must simply determine whether the plaintiff[] ha[s] demonstrated that the Board's decision...is [or is not] supported by substantial evidence." Id. Keeping in mind these principles, I find that Nextel's admission that Nextel could still use the location to provide some coverage is substantial evidence supporting the Board's first reason. I also note that whether a tower built in compliance with the dimensional requirements would result in a significant gap in coverage is more properly an issue for Count II, not Count I.

14

For these reasons:

Giving the Board of Appeals' informed judgment the deference
which it is due, [this court] does not find fault with the Board of
Appeals' interpretation of its own By-Law as well as its
interpretation of the applicable state law.

Omnipoint Communications MB Operations v. Town of Lincoln, 107 F.Supp. 2d 108, 116 (D.

Mass. 2000).

<b>c.    The second step in the Board's reasoning was not based on</b>

<b>substantial evidence.</b>

A variance may still be required even if the ANR freeze does not require it.

Although the first step in the Board's reasoning is based on substantial evidence, the second step

is not.  After finding that the ANR endorsement did not require the Board to grant the variance,

the Board then went on to hold that "there are not unique circumstances relating to soil condition,

shape or topography of the location that would cause substantial hardship to the applicant if we

do not grant the variance."  According to the Board, in order to grant a variance under M.G.L. c.

40A § 10, the board must find that owing to circumstances related to those things listed above, a

literal enforcement of the zoning provisions would involve substantial hardship, financial or

otherwise, to the petitioner.  Because the Board did not find any such unique circumstances, it

denied the variance application.

Although the Board's statement may be a correct statement of the general law in

Massachusetts regarding variances, it is not controlling in the special case of wireless

communications facilities.  The Board's variance decision, because it is a local zoning decision

regulating the placement and construction of a wireless communications facility, is subject to the

15

federal Telecommunications Act. Under the Telecommunications Act, the Board cannot deny
the variance if in so doing it would have the effect of prohibiting wireless services. 47 U.S.C. §
332 (c)(7)(B)(i)(II). In other words, the need for closing a significant gap in coverage, in order to
avoid an effective prohibition of wireless services, constitutes another unique circumstance when
a zoning variance is required.

In its decision, the Board held, "[t]he hardship alleged by the applicant is related
to its business plan of providing a certain amount of wireless coverage to the Town, rather than
to the unique shape or topography of the Locus." The Board states that Nextel can comply with
the current dimensional requirements and still be able to provide "some wireless coverage."
Nowhere in its decision, however, does the Board address whether Nextel would be able to
provide sufficient coverage to close the significant gap in coverage. Although Nextel's ability to
use the land, for some coverage, may be sufficient to survive judicial review regarding the ANR
freeze, it is insufficient to support the Board's second step in its reasoning. Although the ANR
freeze may not require the variance, the Telecommunications Act may and the Board did not
address that issue.

As I stated above, although my review is not limited by the evidence in the
Board's written record, my review is limited to the reasons given in that record. National Tower,
LLC v. Plainville Zoning Board of Appeals, 297 F.3d 14, 22 (1st Cir. 2002) ("we will not uphold
a board's denial of a permit on grounds that it did not present in its written decision"). The only
reason the Board gave, in step two of its analysis, is that the unique circumstances that
necessitate a variance include only circumstances relating to soil condition, shape, or topography,
of the Locus and that such circumstances do not exist. The Board cannot now prevail in the

16

argument that substantial evidence is in the record about locations that would close the gap in coverage, and therefore a variance is not necessary. That reasoning, regardless of whether it would have been supported by substantial evidence, is not in the Board's written opinion, and therefore cannot be considered by the court in reviewing the decision. Id. at 21 ("A board may not provide the applicant with one reason for a denial and then, in court, seek to uphold its decision on different grounds.").

The Board's decision, particularly the second step in its analysis, fails to give due consideration to the requirements of the federal Telecommunications Act. The Board's reasoning involved incorrect legal conclusions, which led to the incorrect factual conclusion that no unique circumstances existed that would require a zoning variance. The decision, therefore, is not supported by substantial evidence and is in violation of 47 U.S.C. § 332 (c)(7)(B)(iii).

**C.    Count II - The Town's regulatory scheme, as applied by the ZBA, has the effect of prohibiting Nextel from providing wireless services.**

**1.    Introduction**

In Count II, Nextel claims that the Town's regulatory scheme, as applied by the ZBA, violates 332(c)(7)(B)(i)(II) because it effectively prohibits Nextel form providing wireless services. In response, the Town points to two alternative sites on which Nextel could construct its tower and asserts that doing so would provide similar coverage and would, therefore, eliminate the substantial gap in coverage. The Town argues that, by providing such alternatives, the Town has demonstrated that Nextel is not effectively prohibited from providing wireless services.

**2.    Standard of review and burden of proof**

17

Although under Count I the court engaged in a limited review of the Board's decision, nevertheless, determining whether the Town has effectively prohibited the provision of wireless services "involves federal limitations on state authority, presenting issues that the district court would resolve *de novo* and for which outside evidence may be essential." Amherst v. Omnipoint Communications Enterprises, Inc., 173 F.3d 9, 16 fn. 7 (1st Cir. 1999). Because of this standard of review, "such claims under the TCA are treated no differently on summary judgment than any other claims litigated in the District Court." Omnipoint Communications MB Operations, LLC v. Town of Lincoln, 107 F. Supp. 2d 108, 116 (D. Mass. 2000)

On Count II, Nextel carries the burden of proof and must demonstrate that a significant gap in coverage exists and must "show from language or circumstances not just that *this* application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even try." Amherst, 173 F.3d at 14 (italics in original).

3.    **A significant gap in coverage exists.**

It is beyond genuine dispute that a significant gap in coverage exists in Wayland. As stated in Nextel's statement of undisputed facts (Number 5), and admitted by the Town, "Nextel has had a need since at least 1994 for coverage in the central part of Wayland, an area which includes important commuter thoroughfares such as Routes 20 and 27. Nextel needs to install antenna facilities in this area in order to provide adequate service."

4.    **Any further reasonable efforts are so likely to be fruitless that it is a waste of Nextel's time even to try them.**

The core of the Town's arguments regarding Count II is the fact that two alternative sites exist on which Nextel could build its tower. Nextel argues that these alternatives

18

are not feasible because both sites raise serious environmental concerns and would require

additional approvals, hearings, permits, and easements. Also, Nextel claims that one of the sites

would not provide sufficient coverage to fill the substantial gap that now exists.

In filing these motions, both parties filed numerous, highly technical affidavits of

experts concerning the amount of coverage each alternative site would provide, whether the tests

performed to arrive at such conclusions are technically accurate, and what effect, if any,

environmental issues may have on each of the sites. This court need not address such technical

issues of feasability, however, because circumstances existing in this case demonstrate that any

further efforts of Nextel are likely to be as fruitless as its efforts up to this point. The alternative

sites, even if technically feasible in the abstract, do not overcome the undisputed evidence in the

record of the Town's hostility to the provision of wireless services. As one court faced with

similar issues stated;

> Even assuming, however, that the Board was able to present viable
> alternatives...Plaintiff has still demonstrated 'such fixed hostility
> by the Board that one can conclude that further applications would
> be useless.'

Omnipoint Holdings, Inc. v. Town of Westford, 206 F. Supp. 2d 166, 172 (D. Mass. 2002).

First, it is undisputed that, in 1994, the Town denied Nextel authorization to construct a

monopole antenna tower. After this first denial, Nextel obtained permission from BECO to

attach antennas to BECO 111 and filed an application with the Wayland Planning Board for

review of the proposed facility. Before Nextel could receive approval, the Town enacted a

twelve-month moratorium. This twelve-month moratorium was disapproved by the Attorney

General and the Town then enacted a six-month moratorium. The Town further delayed Nextel's

attempt to build the tower when it repealed and modified its zoning by-law provisions three times. Although the Town admits such delays, it argues that Nextel agreed to them. The fact that Nextel agreed to the delays is immaterial. The Town has repeatedly delayed Nextel, and Nextel's willingness not to argue over every delay does not overcome the evidence of hostility that those delays present. Also, when Nextel filed the application for variance (in response to the Town's concerns that the ANR did not allow all components of the still-pending original application) the Town further delayed Nextel by holding five public hearings stretching over eight months.

The Town has admitted that, regarding the alternative sites, "[o]f course some permits would be required." *Defendants' Response Memorandum*, pg. 5. Defendants' Response Memorandum states "The Town does not dispute that some permits would be required to locate a facility at BECO 102 or the Old Landfill [the two alterantives]; however, but [sic] the need for such permits does not make either site 'unfeasible' under the TCA." Id. Although the Town is correct that the requirements of additional permits do not ordinarily make alternative sites unfeasible, the Town cannot show that those permits will be forthcoming. Instead, the undisputed evidence shows repeated delays and denials that, when viewed in the aggregate, demonstrate the Town's hostility towards Nextel. Nextel, therefore, has met its burden of showing "from language or circumstances not just that *this* application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." Amherst, 173 F.3d at 14.

Nextel also argues that the Town's failure to issue a Request for Proposal ("RFP") until after this litigation began is further evidence of the Town's hostility. The RFP would allow

20

a successful bidder to enter into negotiations with the Town for the right to have access to the

two alternative sites. In other words, Nextel claims that the Town did not even make the

alternatives available until after Nextel began this litigation. The Town responds to this evidence

with two arguments: (1) although the formal RFP was not published until August, 2002, six

months after this litigation began, the process for developing the RFP was underway before this

litigation and (2) the timing of the RFO is irrelevant because Nextel did not even respond to the

RFP. Both of these arguments fail to defeat this evidence of hostility, particularly when viewed

in the context of the previously discussed evidence. First, even if the process began before the

lawsuit was filed, Nextel could not have responded to the RFP until it was formally published. It

is reasonable that Nextel would not want to abandon the BECO 111 location it had been pursuing

for approximately four years, and respond to the RFP published six months after Nextel filed this

lawsuit.

Nextel has met its heavy burden of showing the Town's hostility, and therefore

that any further efforts would be so likely to be fruitless, that it is futile even to try. The Town

has presented no convincing arguments to the contrary.

**D.      The appropriate remedy for the Town's violation of the Telecommunications Act is**

**an injunction.**

Because I find that the Town violated sections 332(c)(7)(B)(iii) and

332(c)(7)(B)(i)(II) of the Telecommunications Act, I must determine the appropriate remedy. A

panel of the First Circuit has held;

> in the majority of cases the proper remedy for a zoning board
> decision that violates the Act will be an order...instructing the
> board to authorize construction.

21

National Tower, LLC v. Plainville Zoning Board of Appeals, 297 F.3d 14, 21-22 (1st Cir. 2002)

(affirming the district court's issuance of such an injunction against the Plainville Zoning Board).

This is true because "Congress did not intend multiple rounds of decisions and litigation" and "a

board will not ordinarily receive a second chance." Id. at 21 and 22.  I do not find any special

circumstances in this case, nor have the parties presented any arguments regarding such

circumstances, that would make remand a more appropriate remedy than injunction.  Id. at 24

("While we can conceive of circumstances in which a remand may be in order – for example, an

instance of good faith confusion by a board that has acted quite promptly – this case is not a

candidate for remand to the board.").

   For all these reasons, I conclude that it will be appropriate to make an order

requiring the Wayland Zoning Board of Appeals to authorize Nextel's construction of its

antennas, as described in Nextel's original application, on BECO 111, unless some intervening

development requires an order of somewhat different terms.

**E.  This court does not have jurisdiction over Count III.**

   In Count III, plaintiff claims that the Town's regulatory scheme, as applied by the

ZBA, is in excess of the authority lawfully granted to the Town or its ZBA under the laws of the

Commonwealth of Massachusetts.  This court's jurisdiction in this case, however, does not

extend to deciding whether the Town's actions violated Massachusetts state law.

   Nextel appears to contend that this court, having federal-question jurisdiction

through the Telecommunications Act, must exercise jurisdiction over the state-law claim because

the state-law claim arises out of the same nucleus of operative facts under the statutory provision

for supplemental jurisdiction that appears in 28 U.S.C. § 1367.

Just as Congress can confer jurisdiction upon the federal courts by statute, however, Congress may also limit that jurisdiction. 28 U.S.C. § 1367 (a) ("except...as expressly provided otherwise by Federal statute,..."). Section 332(c)(7)(A) of the Telecommunications Act, which immediately precedes the four requirements of 332(c)(7)(B), listed in Section V. A. above, declares:

> Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

47 U.S.C. § 332(c)(7)(A).  Construed as favorably to federal jurisdiction as its text can be reasonably interpreted, the Act manifested only a limited scope of federal jurisdiction to review state and local zoning decisions.  By limiting the federal courts' jurisdiction, Congress manifestly limited federal intrusion into local zoning authority.  That manifested limitation cannot be avoided by a purported exercise of supplemental jurisdiction.  For that reason, this court is not authorized to exercise subject-matter jurisdiction to consider whether the Town has violated Massachusetts state law.

23

## ORDER

For the foregoing reasons, it is ORDERED;

(1) Plaintiff's Motion for Summary Judgment (Docket No. 20, filed August 15, 2002) is GRANTED on Counts I and II and DENIED on Count III.

(2) Defendants' Cross Motion for Summary Judgment (Docket No. 28, filed September 18, 2002) is DENIED on Counts I and II and GRANTED on Count III.

(3) The parties may file, on or before December 4, 2002, proposals for the text of the order to be issued by the court. Responses may be filed on or before December 18, 2002.

(4) The next Case Management Conference is set for _____.m., January _____, 2003 at which time the court will consider the filed submissions and oral argument with the expectation of then ordering an appropriate final judgment forthwith.


_____

United States District Judge

24

**Publisher Information**
Note* This page is not part of the opinion as entered by the court.
The docket information provided on this page is for the benefit
of publishers of these opinions.

U.S. District Court - Massachusetts (Boston)

CIVIL DOCKET FOR CASE #: 02-CV-10260

Nextel Communication v. Wayland, Town of, et al          Filed: 02/15/02
Assigned to: Judge Robert E. Keeton
Demand: $0,000                    Nature of Suit: 890
Lead Docket: None                 Jurisdiction: Federal Question
Dkt# in other court: None

NEXTEL COMMUNICATIONS OF THE     Steven E. Grill, Esq.
MID-ATLANTIC, INC.
     Plaintiff              Steven E. Grill, Esq.
                            (See above)

                            Devine, Millimet & Branch
                            111 Amherst Street
                            P.O. Box 719
                            Manchester, NH 03105-0719
                            603-669-1000

NEXTEL COMMUNICATIONS OF THE     Steven E. Grill, Esq.
MID-ATLANTIC, INC.
     Plaintiff              Steven E. Grill, Esq.
                            (See above)

                            Devine, Millimet & Branch
                            111 Amherst Street
                            P.O. Box 719
                            Manchester, NH 03105-0719
                            603-669-1000

WAYLAND, TOWN OF          Joel B. Bard
     Defendant
                            Kopelman & Paige, P.C.
                            31 St. James Avenue
                            Boston, MA 02116
                            617-556-0007

                            Patricia A. Cantor

                            Kopelman and Paige. P.C.
                            31 St. James Avenue
                            Boston, MA 02116
                            617-556-0007

ZONING BOARD OF APPEALS     Joel B. Bard
     Defendant              (See above)

Patricia A. Cantor
(See above)


LAWRENCE K. GLICK, in the         Joel B. Bard
capacity as a member of the      (See above)
Zoning Board of Appeals of the
Town of Wayland, Massachusetts
    Defendant              Patricia A. Cantor
                    (See above)


LAWRENCE K. GLICK, in the        Joel B. Bard
capacity as a member of the      (See above)
Zoning Board of Appeals of the
Town of Wayland, Massachusetts
    Defendant              Patricia A. Cantor
                    (See above)


)


ERIC GOLDBERG, in the capacity    Joel B. Bard
as a member of the Zoning        (See above)
Board of Appeals of the Town
of Wayland  Massachusetts
    Defendant


ERIC GOLDBERG, in the capacity    Joel B. Bard
as a member of the Zoning        (See above)
Board of Appeals of the Town
of Wayland, Massachusetts
    Defendant


JAMES GRUMBACH, in the         Joel B. Bard
capacity as a member of the      (See above)
Zoning Board of Appeals of the
Town of Wayland, Massachusetts
    Defendant              Patricia A. Cantor
                    (See above)


JAMES GRUMBACH, in the         Joel B. Bard
capacity as a member of the      (See above)
Zoning Board of Appeals of the
Town of Wayland, Massachusetts
    Defendant              Patricia A. Cantor
                    (See above)


)

26

Board of Appeals of the Town
of Wayland, Massachusetts
    Defendant        Patricia A. Cantor
             (See above)


Board of Appeals of the Town
of Wayland  Massachusetts
    Defendant        Patricia A. Cantor
             (See above)



MARY L. LENTZ, in the capacity   Joel B. Bard
as a member of the Zoning      (See above)
Board of Appeals of the Town
of Wayland, Massachusetts
    Defendant        Patricia A. Cantor
             (See above)


MARY L. LENTZ, in the capacity   Joel B. Bard
as a member of the Zoning      (See above)
Board of Appeals of the Town
of Wayland, Massachusetts
    Defendant        Patricia A. Cantor
             (See above)