1

1          ZONING BOARD OF APPEALS
2               TOWN MEETING

          COPY

3

4

5

6  A CONSOLIDATED HEARING

7

8  RE:    AT&T WIRELESS
          SPRINT PCS
9          EASTERN TOWER

10

11

12

13

14

15

16

17

18              ZBA HEARING

19              TOWN OF WAYLAND

20              DECEMBER 14, 2004

21

22

23              Reported bu:

24              Teresa E. Costello, CSR

25

2

```
 1   APPEARANCES:

 2

 3   JAMES  GRUMBACH
     SHAUNT  SARIAN
 4   SUSAN  KOFFMAN
     ERIC  GOLDBERG
 5   STEVEN  FUGARAZZO
     AIDA  GENNIS
 6   MICHAEL  THOMAS

 7
     Also  Present:
 8
     Mike  Dexter-Smith
 9   Edward  Collins
     Stan  Robinson
10   Patricia  Reinhardt
     Sheila  Cuttell
11

12   ANDERSON  &  KREIGER,  LLP
     (by  Brian  S.  Grossman,  Esq.)
13   43  Thorndike  Street
     Cambridge,  Massachusetts  02141-1764
14   for  AT&T  Wireless.

15
     BROWN,  RUDNICK,  BERLACK,  ISRAELS,  LLP
16   (by  Scott  Lacy,  Esq.)
     121  South  Main  Street
17   Providence,  Rhode  Island  02903
     for  Sprint.
18

19

20

21

22

23

24

25
```

3

1          DECEMBER 14, 2004

2          MR. GRUMBACH:  Good evening.

3  Welcome to the Tuesday, December 14th, 2004

4  hearing on the Wayland Zoning Board of

5  Appeals.  Tonight we have two hearings.  The

6  first hearing is the 8:00 o'clock continued

7  hearing on the application of Sprint

8  Spectrum for any necessary approval, special

9  permits, variances, as may be required to

10 appeal the decision of the building

11 commissioner, see letter dated June 18th,

12 2003 and to erect a 120-foot flagpole-style

13 monopole wireless communications tower and

14 associated wireless communications ground

15 equipment on land not within the wireless

16 communications services district under the

17 Town of Wayland zoning bylaws Chapter 198,

18 Sections 201.1.5, 203401, Article 6, SPA701,

19 701.1, 702, 801 table of dimensional

20 requirements, roadside business, minimum lot

21 area, frontage side, rear yard setbacks and

22 maximum height, 802 table of permitted

23 principal uses by district.  1001, 1001.2,

24 1002, 1002.1, 1002.2 and 1002.1.7,

25 the properties located at 135 Boston Post

4

1  Road which is in a roadside business

2  district and it's matter Number 03-34.  Good

3  afternoon.  Good evening.

4          MR. LACY:  Good evening.  For the

5  record my name is Scott Lacy.  I'm with the

6  firm of Brown, Rudnick, Berlack and Israels.

7          MR. GRUMBACH:  Where's Mr. Pare

8  tonight?

9          MR. LACY:  Unfortunately Mr. Pare

10  could not attend tonight's meeting, so I was

11  sent in his place.

12          MR. GRUMBACH:  So this is a

13  temporary change?

14          MR. LACY:  Yes.  What I wanted to

15  submit to the Board is that Sprint had

16  followed up with respect to the BECO poles,

17  and on October 28th I sent a letter to the

18  Board of Selectmen.  This is the copy of the

19  letter and the attachments that were

20  submitted to the Board of Selectmen.

21          MR. GRUMBACH:  Okay.

22          MR. LACY:  In essence the letter

23  brought the Board of Selectmen up to speed

24  in terms of the location, the application,

25  the fact that there was a number of

1  neighbors --

2        MR. COLLINS:  Mr. Chairman, point

3  of order.  Is the letter submitted as an

4  exhibit in this matter?

5        MR. GRUMBACH:  I don't know.  I

6  received a copy of it.  It went to the Board

7  of Selectmen.  There was a hearing at the

8  Board of Selectmen.

9        MR. COLLINS:  What I'm raising is

10 that counsel is explaining the contents of

11 it.  If it is an exhibit then we all know

12 what the contents are.  That's all.

13       MR. GRUMBACH:  Why don't we let

14 counsel finish up, and I'll be glad to let

15 anybody see it.  Go ahead, Scott.

16       MR. LACY:  Just briefly the letter

17 requested that the Board grant Sprint

18 consent to file to zoning for a site on BECO

19 pole number 131.  The Board of Selectmen did

20 respond to the letter in writing, and I

21 would like to submit both letters as an

22 exhibit.

23       MS. KOFFMAN:  Are there copies

24 sufficient for all members of the Board?

25       MR. LACY:  I do have copies.  I

1  have a copy of all of the correspondence.  I

2  provided one copy with all of the

3  attachments to be submitted for the record.

4          MR. GOLDBERG:  We have the

5  October 28th letter.  I have it in my

6  folder.

7          MS. KOFFMAN:  I don't know what it

8  is he's submitting.

9          MR. GRUMBACH:  It came to us in the

10  packet, the October 28th letter.  What is

11  here is an October 28th letter from Attorney

12  Pare.

13          MS. KOFFMAN:  A lot fatter than

14  what we got in our packet.

15          MR. GRUMBACH:  It's got a plan.

16  It's got some -- looks like it's got a deed.

17  It's got a certified vote of the Board of

18  Directors of State Street Trust Company.

19  It's got another -- it's got an agreement

20  between Boston and Maine Railroad and Boston

21  Edison from 1962, and it's got a 1965

22  agreement between the railroad and Boston

23  Edison so that seems to be --

24          MS. KOFFMAN:  So this is something

25  that we have received prior to the hearing

1  because our rules require things to be

2  submitted prior to the hearing so that both

3  Board members and members of the public can

4  see what's in it, and you're just giving us

5  a --

6           MR. LACY:  Just a copy.

7           MS. KOFFMAN:  One more copy.

8           MR. GRUMBACH:  There's a

9  November 17, 2004 letter from Mark Long

10  (phonetics) town counsel to Attorney Pare

11  referencing a November 8th 2004 meeting of

12  the Board of Selectmen.

13           MR. LACY:  To summarize the

14  contents of the letter which again was

15  submitted to the Board just indicated that

16  the town would not grant consent to allow

17  Sprint to file zoning with respect to BECO

18  pole number 131 and indicated be located

19  within the wireless communications overlay

20  district.

21           MS. KOFFMAN:  I know that I've seen

22  a copy of this.  I believe we all got a copy

23  of that in our packet as well.

24           MR. GOLDBERG:  We have that, too.

25  November 17th?

8

1          MS. KOFFMAN:  Yes.  So that has
2   been available for the public to see as
3   well.

4          MR. ROBINSON:  As a member of the
5   public, I'd like to say that I came in
6   yesterday to see if anything was filed, was
7   told that nothing had been filed.

8          MR. GRUMBACH:  I don't quite
9   understand that.  I don't disbelieve you,
10  but we all got the letter.  I believe we got
11  both the letters in our packets that we get
12  routinely, and typically we don't get them
13  until they're filed and then typically
14  they're in the file, so that's unfortunate.
15  I would suggest you go in and talk to the
16  Building Department tomorrow.  I'm not going
17  to ask Sheila to respond to it right now
18  because I don't think she's taking notes,
19  but they certainly should have been there.

20          MR. ROBINSON:  It's not easy for me
21  to travel.  It's not easy for me to travel.

22          MS. CUTTELL:  We don't do the
23  research.  They look through the files,
24  themselves.

25          MR. GRUMBACH:  Right, but I mean,

1  normally -- forget about the cell tower

2  case.  Normally if something comes in and it

3  gets sent out to the --

4          MS. CUTTELL:  It's in the file.

5          MR. GRUMBACH:  It's in the file.

6  So it should have been, but there is a

7  little difference with the cell tower?

8          MS. CUTTELL:  We don't do any

9  research for zoning hearings.  If people

10  want to see the application, they have to do

11  it themselves.

12          MR. GRUMBACH:  But as to any

13  correspondence that comes in.

14          MS. CUTTELL:  Is in those folders.

15  In the boxes.

16          MR. GRUMBACH:  Should be in the

17  folders.  I can't answer as to why it wasn't

18  there when you looked, Stan.

19  Mr. Lacy, thank you for bringing that to our

20  attention.

21          Now the purpose of tonight's

22  hearing was a status report.  I recognize

23  that we had asked Sprint to look into the

24  BECO towers and Sprint was weighing its

25  options, and in light of this latest

1  happening has Sprint decided what it's going

2  to do?

3          MR. LACY:   In light of the fact the

4  town is not going to make BECO pole 131

5  available in terms of proceeding with the

6  zoning, there isn't any additional

7  information that I can present to the

8  Board with respect to the BECO poles.  Not

9  respective, it's no longer an option for

10  Sprint in terms of an alternative to the

11  present site.

12          MR. GRUMBACH:   So Sprint is taking

13  the position that because of what it's done

14  and what's happened that it believes that

15  the BECO towers, all of them from Route 27

16  all the way over, I guess, are not viable

17  alternatives?

18          MS. KOFFMAN:   We are not going to

19  have a substantive hearing tonight at all.

20  We're only going to have a status check.

21          MR. GRUMBACH:   So I take it that

22  means that Sprint is going to go forward

23  with the proposal at 135 Boston Post Road?

24          MR. LACY:   Correct.

25          MR. GRUMBACH:   Does Sprint know how

11

1  much longer it intends to go and what sort

2  of evidence it intends to put on?

3        MR. LACY:  Sprint is not intending

4  to present any additional evidence, so in

5  terms of when the Board could close the

6  public hearing from Sprint's perspective,

7  Sprint would not be presenting any

8  additional evidence so if the Board

9  decides --

10        MR. GRUMBACH:  Sprint is prepared

11  to close the hearing?

12        MR. LACY:  This evening.

13        MR. GRUMBACH:  Okay.

14        MS. KOFFMAN:  What about AT&T?

15        MR. GROSSMAN:  The same.  For the

16  record, Brian Grossman for Anderson &

17  Krei.ger for AT&T Wireless.  We think this

18  just buffers our original position that BECO

19  stansions were unavailable.  We don't have

20  any further information that we'd like to

21  submit on this particular application.

22        MS. KOFFMAN:  We had not given the

23  public an opportunity in 135 to participate,

24  so I would suggest --

25        MR. GRUMBACH:  I think we should

12

1 schedule another hearing and then the public

2 can put in anymore evidence they want.

3       MR. GOLDBERG:  I don't think it

4 should be more than a single evening's

5 presentation.

6       MS. KOFFMAN:  Right, and then if we

7 could schedule a deliberation evening for

8 ourselves.

9       MR. GRUMBACH:  That's fine.  So we

10 don't have to -- I mean, we can decide on

11 the next hearing tonight, and then at the

12 next hearing we can decide a schedule for

13 the deliberation hearing and the final

14 decision.  Mr. Collins.

15       MR. COLLINS:  Thank you,

16 Mr. Chairman.  Ed Collins, Plain Road.  I

17 don't know whether this is consistent or not

18 with the prospect you just announced, but

19 counsel did say here -- what I'm asking is

20 whether counsel for Sprint, at this point

21 now tonight, is willing to curtail the

22 efforts it's made to look at alternative

23 sites between, as was said earlier tonight,

24 the center of town and I would say the

25 Weston town line?

1          MS. KOFFMAN:  I'm very strongly

2  opposed to doing anything substantive

3  tonight since for -- since April we've

4  agreed that each hearing is going to be

5  simply a status check.  I'm not prepared --

6          MR. COLLINS:  Susan, as far as I'm

7  concerned, that's fine, as long as it's

8  clear what's happening here.

9          MR. GRUMBACH:  That's fine, and I

10  think my understanding from Mr. Lacy is that

11  what has been put before us is the

12  evidentiary showing of what's been done.  He

13  did some investigation.

14          They sent a letter and the letter

15  was responded to.  If Sprint has a different

16  view and they bring it to the next hearing,

17  then we may not finish off at the next

18  hearing.

19          MR. COLLINS:  Thank you.  That's

20  agreeable to me.

21          MR. GRUMBACH:  We've got to try to

22  work with the procedure that we can all deal

23  with.

24          MR. COLLINS:  Absolutely.

25          MR. GRUMBACH:  In the event it

14

1  wasn't clear, that's the way it looks to me

2  and Mr. Lacy.  If that's not accurate, then

3  I would suggest you submit something in

4  writing before the next hearing.  Okay?

5  So --

6          MR. COLLINS:  That was a yes,

7  please?  I'm just talking for the record.

8          MR. LACY:  For the record.

9          MR. GRUMBACH:  I interpret it as a

10  yes.

11          MR. LACY:  For the record.

12          MR. GRUMBACH:  Now the next hearing

13  is between Christmas and New Year's, and I'm

14  not going to be here, so I'm not going to

15  schedule it at the December 28th hearing.

16          MS. KOFFMAN:  Calendar behind this

17  piece of paper will tell you all of next

18  year's dates.

19          MR. GRUMBACH:  Fine.  It looks to

20  me because there's a special town election

21  on January 25th which is a normal night that

22  we would be changing our second hearing for

23  January to either the 18th or the 26th.

24          I, personally, would prefer to go

25  on the 18th which is a Tuesday.  26th is a

15

1  Wednesday.  How does the Board feel about

2  that?

3              MR. FUGARAZZO:  I agree with that.

4              MR. GRUMBACH:  Okay.  Why don't we

5  schedule?  Why don't we schedule the next

6  hearing on this for 8:00 o'clock on Tuesday,

7  January 18th?  Is that all right with --

8              MR. LACY:  Point of clarification.

9  Just trying to understand the timetable with

10  respect to if the hearing was continued

11  until the 18th and it was closed that

12  evening, this way they have opportunity to

13  present their case although it's my

14  understanding that some evidence has been

15  presented by the process, what would be the

16  timetable in terms of when the Board would

17  deliberate?

18              MR. GRUMBACH:  That's why I thought

19  we'd wait until then to, you know, I was

20  not -- I didn't really know what was going

21  to happen tonight.  I don't really want to

22  set a final schedule tonight.  I'd rather

23  set a final schedule at that hearing when we

24  see what the abutters have to do.  It's

25  clear to me what's going on, and we all can

1  just sit down.  I mean, obviously we -- this

2  was consolidated with the other hearing.  We

3  spent months and months on the other

4  hearing.

5        Obviously not everybody agrees with

6  what was done, but I wrote a

7  30-some-odd-page decision, and the two

8  properties are pretty similar from a

9  telephonic perspective, if that's the right

10 word, so I don't think we're going to need

11 the amount of time to write the decision

12 that we did last time.

13        Last time I was very conscious

14 about wanting to have a long period of time

15 because I knew it was going to be a long,

16 involved thing.  We've had an awful lot of

17 evidence which was taken in the consolidated

18 hearing.  Assuming we don't have an awful

19 lot of evidence in the next hearing, I'm

20 assuming we don't need an awful lot more

21 time.  We'll need a night to deliberate and

22 then write a decision.

23        MR. GOLDBERG:  If the applicant is

24 indicating that no additional evidence will

25 be presented by the applicants and we give

1  one hearing night to the abutters to say

2  their last piece, why not just schedule

3  that?  At that point it will be closed, and

4  all we have left is to deliberate.

5          MS. KOFFMAN:  The worst case

6  scenario would be that we have to change

7  that, so I feel --

8          MR. GOLDBERG:  Why not set in stone

9  now what the closure of this thing is?

10          MR. GRUMBACH:  Why don't we say

11  then 8:00 o'clock will be Sprint on

12  January 18th, and then the next hearing date

13  would be February 8th.  You want to schedule

14  February now?  You know, we could certainly

15  have a number of other --

16          MS. KOFFMAN:  If we're going to use

17  up a whole night, it will be a problem

18  because we could run into problems with

19  residents' applications.

20          MR. GROSSMAN:  Mr. Chairman, could

21  I have a minute to confer with Sprint's

22  counsel about the timing of hearings and

23  schedule?

24          MR. GRUMBACH:  Sure.  Does anybody

25  in the public want to think about it?

18

1          MR. COLLINS:  I'd like to just make

2  a comment.  I trust we have a representation

3  here from Sprint at least and I assume from

4  AT&T to the extent that things have not cut

5  off this application by filing a complaint

6  in the United States District Court.  We

7  have a representation.

8          MR. GROSSMAN:  We haven't filed a

9  complaint in this matter in 135.

10          MR. COLLINS:  Thank you very much.

11  Then I hope we have --

12          MR. GRUMBACH:  Absent talking to

13  counsel and changing that, you're not

14  intending to put on more evidence?

15          MR. GROSSMAN:  No.

16          MR. COLLINS:  I hope we have a

17  representation though that these applicants

18  have agreed to whatever continuance we're

19  talking about here.

20          MR. GRUMBACH:  I don't think

21  there's a -- I mean, a continuance has been

22  granted in the past.

23          MR. COLLINS:  I know that.  I don't

24  want to face an argument somewhere in the

25  future.

1          MR. GRUMBACH:  I think
2  Miss Koffman is drafting a continuance now,
3  and it probably is helpful to schedule all
4  the dates so we can factor them in.
5          MR. GOLDBERG:  Up to this point
6  anyway it was agreed that this was a status
7  hearing anyway, so there was no anticipation
8  that there would be any substantive
9  discussion.
10          MR. COLLINS:  I understand that,
11  but I hope they're not going to spring on us
12  at some later point that we did not timely
13  act as the present complaint has alleged a
14  lot of fatuous allegations.
15          MS. PATTON:  Mr. Chairman, may you
16  name the five people who are now on the
17  panel?
18          MR. GROSSMAN:  There's only four.
19          MS. PATTON:  There's four of you.
20          MR. GRUMBACH:  Only four of us --
21  well, have any of the alternate --
22          MR. GOLDBERG:  No, just the four.
23  Michael is new.
24          MR. GRUMBACH:  That's a good point.
25  It's only four Board members.  Eric, Susan,

1  Steve and myself.

2          MS. PATTON:   Thank you.

3          MR. GROSSMAN:   Can we have that

4  break so I can confer?

5          MR. GRUMBACH:   What would you like,

6  about five minutes?

7          (Brief Recess.)

8          MR. GRUMBACH:   Mr. Grossman and Mr.

9  Lacy, have you had a chance to confer?

10         MR. LACY:   Yes, we have.   With

11  respect to the additional information --

12         MR. GRUMBACH:   What additional

13  information?

14         MR. LACY:   With respect to

15  continuing the hearing until the 18th, we

16  have no problem continuing the hearing to

17  the 18th with the understanding that on the

18  18th the hearing would be closed and a

19  decision would be rendered by the end of

20  January.   We could continue to provide

21  extensions up until the end of January  with

22  respect to this matter and filing of a

23  decision.

24         MR. DEXTER-SMITH:   Mr. Chairman --

25         MR. GRUMBACH:   That does not sound

1  like it gives us an awful lot of time.

2          MR. LACY:  It will be two weeks.

3          MR. GRUMBACH:  One thing which has

4  been brought to my attention is that we will

5  need to ask David Maxson to come to the

6  hearing.  We didn't know tonight that we

7  were going to be scheduling the final

8  hearing.  We haven't contacted David Maxson.

9  We don't know if he will be able to come

10 here.

11          Secondly, my understanding is he's

12 still owed money from both applicants both

13 as to the last case and this case.  That's a

14 serious matter.  He's not doing this for

15 charity.  He deserves to be paid, so we have

16 to have an assurance that you're going to

17 pay him and that you have paid him, so

18 frankly I don't think it's fair for you to

19 tell us that you're not putting in more

20 evidence and for you to tell us that you're

21 going to give us 14 days to make our final

22 decision, so I'm going to tell you on the

23 record right now that I don't think that's a

24 fair position that you're putting us in.

25          You may want to go out in the hall

22

1   and talk to Mr. Grossman about it, and you

2   may decide the same thing and so be it, but

3   I really don't think -- I don't understand

4   why you haven't paid his bills, and I don't

5   understand why you're putting us under such

6   a tight schedule.

7           I know it's important for you to

8   move along, but we allowed you to suspend

9   this hearing in March, okay?  We've now gone

10  ten months and all of a sudden you're in a

11  rush and I don't -- I don't understand that,

12  so maybe you'd like to go out in the hall

13  and talk a minute.

14          MR. LACY:  Okay.

15          MR. COLLINS:  Can I comment before

16  they do, Mr. Chairman?

17          MR. GRUMBACH:  Sure.

18          MR. COLLINS:  I appreciate your

19  remarks and I would point out with respect

20  to the 137 Boston Post Road application

21  which was pursued hand-in-glove on the

22  applicant's own representations for many

23  months with the 135 Boston Post Road

24  application, we now have a lawsuit in the

25  United States District Court brought by AT&T

VERITEXT COURT REPORTING SERVICES  (800) 227-8440

23

1  which contains a number of our allegations.

2         A number of them with respect to

3  this Board and some other people in this

4  room I regard as totally scurrilous to

5  understate the situation.  I understand that

6  they want to make a legal argument.  You

7  know, that's fine.

8         As I said to somebody else earlier

9  tonight, I'm a member of the Lawyers'

10  Benevolent Society and all of that, but a

11  number of those allegations are scurrilous,

12  I think, and they relate to timing and

13  allegations of deliberate delay and that

14  sort of thing, and I don't want to see

15  either of these parties, AT&T or Sprint, try

16  at some later point to take advantage of

17  these disingenuous, dishonest arguments, so

18  I want to say that from my own point of

19  view, and I'm only speaking for myself here

20  this evening, that's a real issue, so if

21  they want to talk about what they want to do

22  in the future, I think it would be great if

23  they could factor that in.  Thank you.

24         MR. GRUMBACH:  Okay.

25         MR. DEXTER-SMITH:  Mr. Chairman,

24

1  Mike Dexter-Smith, 8 Pinebrook Road.  When
2  we started this whatever it was, two years
3  ago you, yourself, said that these would be
4  treated two commingled applications.  We've
5  now combined them as two separate
6  applications.  We, the abutters, have
7  presented based upon 135 and put into the
8  record and TCA very clear about evidence put
9  in the record, and I would want some
10  clarification from someone, a lawyer, that
11  in fact, we as the abutters don't have to
12  put all the same information that we've put
13  on 137 in for 135 again.
14        MR. GRUMBACH:  Well, right now --
15        MR. DEXTER-SMITH:  You shake your
16  head.  Just a second if I may,
17  Mr. Chairman.  You shake your head, but we,
18  the abutters, don't completely accept that
19  we don't have to put all of the information
20  that we put in on 137 in for 135 again, so
21  that the record is fully, fully complete.
22        MR. GRUMBACH:  Thank you for making
23  that statement, but I will tell you as a
24  person who chaired the hearings, the
25  evidence was taken from both hearings.  They

1 | were fully consolidated and as far as --

2 | MR. COLLINS: Then I believe you

3 | can make a decision now on those two things.

4 | There is no difference, as you said

5 | yourself, to 135 and 137. These towers are

6 | in falling distance of each other. They

7 | would fall on top of each other.

8 | MR. GRUMBACH: We're not going to

9 | start deliberations now, but if you feel

10 | that way then you come to the next hearing

11 | and you take the position that no more

12 | evidence is necessary.

13 | MR. DEXTER-SMITH: I'm not taking

14 | that position for the abutters. We're going

15 | to wait and see what -- find that out, but I

16 | don't want to be stuck with one hearing and

17 | that we would be stopped at the end of one

18 | hearing if we believe that we've got to put

19 | all of that information back on.

20 | MR. GRUMBACH: You don't have to

21 | put that on. In fact, I don't -- my view,

22 | personally, is that if there have been any

23 | changes in circumstances since that hearing

24 | and Sprint has put in two pieces of evidence

25 | that they believe is a change in

26

1  circumstance or additional evidence, and I

2  think the public should have the same

3  opportunity to put in any additional

4  evidence, and we want to have Mr. Maxson

5  here to see if there's anything, in his

6  view, that requires a change, and that's why

7  for me it's precipitous tonight to say we

8  will have one more hearing and it's going to

9  be on such and such a date, and we're going

10 to have deliberations on such and such a

11 date and then, you know, we'll make a

12 decision because I just don't know. We

13 don't have all the information right here.

14          MS. KOFFMAN:  Mr. Chairman, I would

15 be delighted to incorporate by reference all

16 of the documents all of which are in both --

17 physically have been submitted to both 135

18 and 137's files.  There are duplicate

19 documents in both files.  The Building

20 Department copied everything that came in

21 and put a copy in both places physically,

22 and I would be delighted to incorporate by

23 reference the information that we heard from

24 the public and all of those documents so the

25 public is not forced to have to recopy,

1 re-photo, reproduce and we sit here

2 re-hearing exactly the same information.

3          MR. GRUMBACH:  We shouldn't have to

4 re-hear it, but if there's an easy way to

5 put it in for the public, that's fine.

6          MR. GOLDBERG:  Would you entertain

7 the notion of requiring the applicant to

8 stipulate that the abutters' presentation

9 under 137 applies in total, in full, for all

10 purposes under 135 to satisfy the abutter's

11 concern that their voices have not been

12 heard?

13          MR. GRUMBACH:  Is there any

14 question but that it applies?  I'm

15 addressing that to both Sprint and AT&T

16 which are applicant and co-applicant in both

17 cases and certainly when I -- when we

18 consolidated the two hearings, my

19 understanding is it was consolidated by

20 agreement, and all evidence was coming in in

21 both hearings.

22          MR. GROSSMAN:  That's true and if

23 it helps as far as the hearing schedule

24 goes, certainly.  I mean, I don't think

25 anyone wants to stand up and give the

28

1 presentation again and the applicants sit

2 through a presentation we've heard before.

3          In the same respect hopefully we

4 can then use that to help shorten the time

5 frames a little bit as far as when we're

6 going to be able to have deliberations and a

7 vote.

8          MR. GOLDBERG:  But your voice has

9 been heard and we've been sued by your

10 client, and I think it's more important for

11 us as a Board and to abutter's concern that

12 Sprint, quite frankly and respectfully,

13 indicates whether there's consent or

14 stipulation that the evidence submitted has,

15 for all purposes, can be utilized for

16 Sprint's application.

17          MR. LACY:  To reiterate what

18 counsel said, Sprint wouldn't have a problem

19 with that stipulation with respect to the

20 evidence that's been submitted.

21          MR. GRUMBACH:  It was first

22 Mr. Grossman on behalf of AT&T, and then Mr.

23 Lacy, on behalf of Sprint, stipulating that

24 the evidence that's been put in applies to

25 both cases.

1          My memory, although it's been a

2   while, is that most of the evidence was the

3   same except that each of the companies had

4   their own siting consultants, so there was

5   slightly different site acquisition

6   testimony, and there might have been a

7   couple of other experts that were different,

8   but essentially the testimony was the same.

9          MR. GROSSMAN:  The only experts I

10  think that were different were the radio

11  frequency engineers and myself and Ed Pare.

12         MR. GRUMBACH:  Right.  They had

13  different siting people who went out.

14         MR. GROSSMAN:  Chris Dwight and

15  Gerry Squires and --

16         MR. COLLINS:  Ed Collins again.  I

17  trust we have a stipulation that all of the

18  evidence, whichever way it cuts, and whether

19  there is an applicant, whether there was an

20  expert for applicant A and a different

21  expert for applicant B, I think the

22  stipulation -- I trust the stipulation is

23  that all the evidence that has previously

24  been introduced in this case applies to both

25  of these applications.

1          MS. KOFFMAN:  And both applicants

2    including all of the evidence that's been

3    put in by the public, so that no one has to

4    put in all that evidence again.

5          MR. COLLINS:  That's correct.

6    Thank you.

7          MS. KOFFMAN:  Mr. Chairman, then

8    perhaps only AT&T on the 18th we can simply

9    deliberate.

10          MR. GRUMBACH:  No, because I don't

11    think that we've heard from the public if

12    they don't want to put in more evidence, and

13    we haven't heard from David Maxson who is

14    not here tonight who we haven't had a chance

15    to call and tell that we're having another

16    hearing; that we are, you know, winding down

17    the evidence.  Yes.  Could you give me your

18    name?

19          MS. SELDON:  Stephanie Seldon

20    (phonetics), 151 Plain Road.  Could I just

21    understand in terms of on the public hearing

22    issue, when you speak of a continuance to

23    January, did you have before you tonight a

24    formal application from Sprint on the BECO

25    131, or was it subsequent to the letter that

31

1  went before the selectmen?  Do you have an

2  application on the BECO?

3            MR. GRUMBACH:  There is no

4  application.  No application has ever been

5  filed on the BECO tower.  135 Boston Post

6  Road is the case that we're hearing tonight,

7  and that is the case that's going to be

8  heard presumably on January 18th.

9            MS. SELDON:  Some of the same

10 public opinion that I think we all came here

11 to express tonight even though many of us

12 are from Plain Road, probably we would come

13 again in January to express, if we're not

14 going to have a public comment session

15 tonight, we'd like to have it in January.

16           MR. GRUMBACH:  We're not going to

17 have it tonight.  That's fine.  Give us your

18 name.

19           MS. SCHRIVER:  Kathy Schriver,

20 3 Fields Lane.  Can you clarify the request

21 for a closed hearing that I heard earlier?

22           MR. GOLDBERG:  Not a closed

23 hearing.  Closing of the evidence.

24           MR. GRUMBACH:  We are not allowed

25 to have closed hearings.  The open meeting

32

1   laws.

2         MS. KOFFMAN:  We have to close the

3   public portion.

4         MR. GRUMBACH:  And the evidence.

5         MS. GENNIS:  So just clarify that.

6         MR. GROSSMAN:  Clarify.

7         MR. LACY:  For the record again I

8   was asking on the 18th if the Board could

9   close the public hearing.

10         MR. GRUMBACH:  Meaning the

11   evidence.

12         MR. DEXTER-SMITH:  Mr. Chairman,

13   I'm sorry.  Did we get an answer from AT&T

14   and Sprint if they were accepting all of the

15   evidence or partial?

16         MR. GRUMBACH:  That's the way I

17   heard it, Mike.  There is going to be a

18   transcript tonight.  You're welcome to look

19   at the transcript.

20         MR. DEXTER-SMITH:  Because there

21   was different people on different sides, do

22   we have to have those experts back again for

23   the public hearing?

24         MR. GRUMBACH:  You know, I'm

25   assuming that as I recall we actually heard

33

1  from all the experts whether they were on

2  135 or 137 before Sprint decided that it was

3  going to seek a continuance, so I think

4  we've heard from all of their experts.

5          MR. DEXTER-SMITH:  I'm not sure all

6  the abutters had a chance to have a go at

7  their witnesses.  If they will accept, if

8  they will agree that they will accept all

9  the evidence from 137 on the 135 file, I'll

10  be quiet.

11          If they won't, Mr. Chairman, I

12  suggest they got to bring back their -- if

13  they want different witnesses they've got to

14  bring back those witnesses so that they can

15  be asked questions by the abutters.

16          MR. GRUMBACH:  You know, I don't --

17          MR. DEXTER-SMITH:  I'm not trying

18  to be a pain.  The CCA very specifically

19  says we -- this is going to go to court in

20  one way or another.  We need a file full

21  that says 135 Boston Post Road, right?

22  There's not one page in there that says, Oh,

23  nobody turned up and nobody filed it, put

24  any papers in this file.  That is what we

25  are going to be measured on by a court of

34

1 law.  Not --

2          MR. GRUMBACH:  One thing you should

3 do between now and the 18th of January is

4 you should go through the transcripts and

5 the evidence and if there were any

6 particular witnesses that you don't think

7 that the public had an opportunity to

8 cross-examine, then you bring that up.

9 They've said they're not putting in anymore

10 evidence, so they've made their position

11 clear, and if you feel that that's

12 meritorious because a particular witness

13 wasn't here for cross-examination, that's

14 fine.

15          If you feel that a particular

16 rebuttal witness is important, go ahead.

17 That's what we're going to do on the 18th.

18          MR. DEXTER-SMITH:  Okay.

19          MR. GRUMBACH:  Anybody else?

20          MR. COLLINS:  Thank you,

21 Mr. Chairman.

22          MR. GRUMBACH:  I think what I would

23 like to do then is schedule -- oh, did you

24 have a chance to go outside and talk?

25          MR. LACY:  Not yet.

35

1          MR. GRUMBACH:  Why don't you step

2   outside --

3          MR. GROSSMAN:  I sat back down.

4          MR. GRUMBACH:  -- and talk in light

5   of what I said?

6          (Brief Recess.)

7          MR. GRUMBACH:  We're back.

8   Mr. Lacy and Mr. Grossman, have anymore

9   input for us on the hearing schedules?

10          MR. GROSSMAN:  We do.  We were

11   talking about having a January 18th hearing

12   and then the proposal was 14 days thereafter

13   we'd have a written decision.  Talked it

14   over with counsel for Sprint, and what we'd

15   like to do is this.

16          We're willing to grant the Board a

17   continuance until January 31st to render a

18   final decision.  Have a hearing on the 18th.

19   Have one before.  Have one after.  Have four

20   hearings before or after, but we'd like to

21   see -- from our position we'd like to be

22   able to try and shorten this a little bit

23   especially in light of the stipulation

24   regarding the evidence presented by the

25   abutters and everyone else with 137 with 137

36

1  applying to 135.  We can condense this time

2  frame a little bit and save everybody a lot

3  of additional time and effort.

4          MR. GRUMBACH:  Okay.  I'm not sure

5  I heard any change in your position.  I

6  gather you want to move along quickly.

7  You're content to have the next hearing on

8  January 18th.  I didn't hear you say

9  anything about paying the expert.

10          MR. GROSSMAN:  This is the first --

11  I think this is the first I remember hearing

12  about owing Mr. Maxson

13  so --

14          MR. COLLINS:  It's not true.

15          MR. GROSSMAN:  I heard Mr. Collins

16  comment which said it wasn't true.  Said

17  first I remember.  I didn't say it's the

18  first time.  It's been a long process, so

19  I'll certainly -- I'll talk to my client

20  about it and do what we can to get

21  Mr. Maxson's bills paid.  It's never been a

22  problem in the past.  I wouldn't anticipate

23  it would be one now.

24          MR. GRUMBACH:  Well, I'm assuming

25  he will be spending a couple of extra hours

37

1   if he's going to be coming to the hearing on

2   the 18th, and one of the questions I'm going

3   to ask him is if he thinks anything further

4   has to be done to render a decision on 135

5   given this additional evidence you have

6   brought in, and also I believe there's one

7   other change in circumstance.  I believe

8   that the Weston tower has come on line.

9           MR. GROSSMAN:  Which one?  There

10  are actually two Weston police.  The town of

11  Weston issued an RFP and accepted two

12  separate bids.  There's the AT&T Wireless

13  Sprint flagpole.

14          MR. GRUMBACH:  That's the one I'm

15  talking about.

16          MR. GROSSMAN:  And then there was

17  the Cingular monopole which was set further

18  back.

19          MR. GRUMBACH:  But your evidence

20  was printed based on the AT&T, Sprint

21  monopole so I think that --

22          MR. GROSSMAN:  AT&T, Sprint

23  monopole has not been constructed yet.

24          MR. GRUMBACH:  Oh, it has not?

25          MR. GROSSMAN:  No.  It was what was

VERITEXT COURT REPORTING SERVICES  (800) 227-8440

1  the Cingular bid occupied by, I think also,

2  T-Mobile and Verizon.

3        MR. GRUMBACH:  So then that has not

4  happened?

5        MR. GROSSMAN:  That's correct.

6        MR. GRUMBACH:  Well, I still --

7  what I'm planning to do is contact

8  Mr. Maxson and see if he can come here on

9  the 18th, and I have no idea what he's going

10  to say on the 18th.

11        I'm assuming he'll come even though

12  he hasn't been paid, and I'm certainly going

13  to tell him that we're going to expect you

14  to pay him and to pay him quickly.

15        MR. GROSSMAN:  Could you ask

16  Mr. Maxson to send me the latest invoice?

17        MR. GRUMBACH:  Sure.

18        MS. KOFFMAN:  No.  I will send you

19  the latest invoice.  The money has to go

20  through the town.  However, there is a small

21  balance of about $316.876 in this case,

22  thereabouts.  In this matter there is a

23  deficit of about $650 in the 137 matter.

24        MR. GROSSMAN:  600 roughly?

25        MS. KOFFMAN:  Roughly, and at the

1  last -- I unfortunately, the last piece of

2  paper I put in my briefcase I thought was

3  the invoice, and I don't have it.

4         At the last hearing or a few

5  hearings ago I had asked or at the last

6  hearing on the other matter I'd asked that

7  each applicant provide an additional

8  thousand dollar deposit to the town from

9  which we would pay that bill and this bill

10 and whatever other bills, and you all

11 promised and the town never got anything.

12        I will send you the printout that I

13 asked the Building Department to prepare,

14 and I will send you copies of all of his

15 invoices and a formal request for additional

16 deposits.

17        MR. GROSSMAN:  Okay.

18        MR. GRUMBACH:  Well, what I would

19 like to do is I'd like to schedule the next

20 hearing for 8:00 o'clock on Tuesday, January

21 18th, and I would like to not have to make

22 an agreement that a decision is going to be

23 written by January 31st.

24        Is it your position that that's the

25 only way you will agree to the next hearing

40

1  on the 18th of January?

2            MR. GROSSMAN:  Yes.

3            MR. GRUMBACH:  Well, let the record

4  reflect that, and the record will reflect

5  that in my view this is an outrageous thing

6  that you're doing and its, you know,

7  considering the fact that you haven't paid

8  the expert's bill, that's just another

9  activity that I think is blatantly unfair,

10  but you represent your clients the way you

11  see fit.

12            Do we want them to sign an

13  extension to that even though we don't

14  believe that January 31st is a fair date?

15            MS. KOFFMAN:  Our alternative is

16  that we make a decision tonight.  Since that

17  is status night, I'm uncomfortable although

18  I suppose --

19            MR. GRUMBACH:  Can we draft it in a

20  way that we agree to it and say that we do

21  not believe the January 31st date is a fair

22  closing date?  It's certainly going to be on

23  the record.

24            MS. KOFFMAN:  You want me to put a

25  sentence on our extension form?

1          MR. GRUMBACH:  Yes.

2          MS. KOFFMAN:  I'm suggesting we

3   ought to put that into our final decision.

4          MR. GRUMBACH:  We can certainly do

5   that as well.

6          MR. GROSSMAN:  I guess I'm just a

7   little confused on the consternation of your

8   January 18th.  The last thing I heard was

9   the abutters were going to have to do the

10  presentation that they did for 137 again on

11  the 18th, and then we were going to have one

12  more hearing and then deliberation.  If we

13  stipulated that all that evidence is coming

14  in, I'm a little confused on why moving to

15  the 18th is problematic.  I'm not --

16         MR. GRUMBACH:  Moving to the 18th

17  is not problematic.  The problem is that Mr.

18  Maxson, we have not contacted him.  We do

19  not know if he'll be there.  We do not know

20  if he believes there is any need for

21  additional evidence.  He's an RF expert.

22  None of us here are RF experts.

23         This whole hearing is related to RF

24  issues so we, you know, I would feel more

25  comfortable coming up with a final date for

1  the decision after Mr. Maxson weighs in.

2  That's really the only concern I have.

3          I'm not concerned that the public

4  is going to come in and say they've got six

5  more weeks of hearings.  That's just not

6  going to happen unless there's been some

7  major change in circumstances that I don't

8  see tonight, but I'm very concerned that

9  this was a status hearing.  We could have

10 come in tonight, and this could have been

11 continued again.  Who knows what could have

12 happened?  And now you want us to set a

13 final hearing date and a decision date, and

14 to me that's quick.

15         MR. GROSSMAN:  I mean, we've had

16 two written reports by Mr. Maxson.

17 Mr. Maxson, from -- I don't know why --

18 wasn't present at the deliberations for 137.

19         MR. COLLINS:  Mr. Chairman, I'm

20 going to object to this.

21         MR. GRUMBACH:  The reason he wasn't

22 present is because we got an opinion from

23 town counsel that we could not take evidence

24 at that deliberation hearing, so if he was

25 there, that might be construed as evidence,

43

1  so because of the open meeting laws we

2  essentially said, You give us all of your

3  input at the last public hearing, not at the

4  deliberation hearing, so that's what we made

5  as a Board decision in light of input from

6  town counsel and our understanding of the

7  public meeting law.

8          MR. GROSSMAN:  Then maybe my memory

9  betrays me a little, but there was a hearing

10  where we sat here as applicants on the Board

11  waiting for Mr. Maxson who didn't show, and

12  I thought that was the deliberations

13  hearing, and no one knew why.  I think Linda

14  Segal tried to call him a couple of times.

15          MS. SEGAL:  My recollection was

16  that I tried to call him a couple of times.

17          MS. KOFFMAN:  My recollection.  Was

18  that the final hearing before?

19          MR. GROSSMAN:  Was that the final

20  hearing?

21          MR. COLLINS:  It was what it was.

22          MR. GROSSMAN:  My point is we can

23  get --

24          MR. GRUMBACH:  My memory was there

25  was a scheduling problem, and somebody

1  didn't show up one week, and we came the

2  next week.

3           MR. GROSSMAN:  If we need to we can

4  get it by written report if we need to.  As

5  I said, we're willing to work within a

6  January 31st time frame.  We're not married

7  to the January 18th date.  That's the date

8  the Board has set.

9           MR. GRUMBACH:  Put it this way --

10           MR. GROSSMAN:  If it needs to move

11  a couple days one way or the other, I think

12  that's fine with the applicant to

13  accommodate Mr. Maxson.

14           MR. GRUMBACH:  Well, it's difficult

15  for us to have another public hearing before

16  the 18th because of the holidays and, you

17  know, we normally meet on Tuesday nights,

18  and we already have hearings scheduled for

19  the 11th of January unless I'm wrong.  Yes,

20  we do.  We have three hearings scheduled,

21  and we're starting at 7:30.  I don't

22  really -- it's not typical for us to

23  schedule more than three hearings in a

24  night.

25           MR. GOLDBERG:  I'm a little puzzled

1  quite frankly why AT&T is controlling us.

2  We've already been sued by your client.

3  Sprint is the applicant who effectively

4  requested and has been requesting

5  consistently status conferences to apprise

6  the Board of the circumstances of its

7  investigation and where it intends to go,

8  and it's conducted that investigation; it's

9  made its determination; it's made its

10 request to the town.  The town has issued

11 its response, and AT&T is sitting here

12 telling us what we can and can't do, and I'm

13 not sure why.

14       MR. GROSSMAN:  AT&T Wireless is a

15 co-applicant so our signature is required on

16 the form you're about to ask us to sign.

17 I've done most of the speaking probably

18 mostly because Ed Pare is not here, and

19 Scott doesn't have the benefit of the

20 history.

21       MR. GOLDBERG:  Then perhaps we

22 ought to reschedule this for a time when Mr.

23 Pare could be here because that would be

24 more convenient to Sprint and to the Board

25 because he has history.

1      MR. GROSSMAN:  I haven't heard

2  Sprint's counsel pipe up and say I've said

3  anything that Sprint doesn't agree with.

4  I mean, we've conferred this was what we had

5  come up with as far as between the

6  applicants what was acceptable to both

7  applicants, and I've been the mouthpiece for

8  that, but Scott Lacy could have told you the

9  same thing for the last five to ten minutes.

10      MR. LACY:  Just with respect to if

11  the Board's concern seems to be primarily

12  whether or not David Maxson has a need for

13  additional information on the 18th or

14  follow-up questions that can't be answered

15  within the confines of the public hearing on

16  the 18th, would it be something where the

17  Board could foresee if David Maxson, on the

18  18th, attends the public hearing and has no

19  additional questions, that the hearing would

20  be closed and continue it to the 31st would

21  provide the Board with time to render a

22  decision.

23      MR. GRUMBACH:  That might well be.

24  I don't want to bind us and say that's going

25  to happen because it may not happen.  That's

47

1   my concern.  You know, I don't foresee

2   what's going to happen, and I don't want to

3   set a binding date now.

4           MR. GOLDBERG:  And consistent with

5   that concern, it has been Sprint all along

6   asking for and requesting and agreeing with

7   the Board to set up a status hearing at some

8   point in the future.

9           If we, the Board, had any

10  indication or impression that this is where

11  the discussion would have been, I suspect we

12  could have and would have had Mr. Maxson

13  here to circumvent this very problem, but

14  relying upon the representation of Mr. Pare

15  or other counsel who is here on his behalf

16  and your client, we're in this predicament

17  because we're doing exactly what your client

18  has requested.  Bring it forward for status

19  conference, and so now we are being

20  penalized for that, in essence.

21          MR. LACY:  With respect, if Sprint,

22  on behalf of our client, did try to go the

23  extra mile in terms of fully evaluating the

24  BECO poles, contacting the town and more

25  fully exploring the feasibility of using

1  that as an alternative, that did require

2  some time, and we appreciate the continuance

3  to more fully flush that out, and as

4  submitted to the Board in prior

5  correspondence and officially tonight, we

6  did contact the town.  We did follow up with

7  the town with respect to that.

8  Unfortunately the town took the position

9  that it's not a viable alternative on BECO

10  pole 131.

11          MR. COLLINS:  That was the Board of

12  Selectmen, as I recall.  Not the town.

13          MR. GOLDBERG:  That is correct and

14  I accept that nonetheless.  We are here for

15  a status hearing.  We agreed to this date.

16  Your client agreed to this date.  Other

17  counsel on your client's behalf agreed to

18  this date for purposes of a status

19  conference irrespective of what Sprint's

20  determination was, irrespective of what the

21  town's response to that determination was,

22  so now we are being hand-strung by the

23  position that we've been put in in reliance

24  upon being here tonight for status

25  conference and that is, to me, what is most

1 | problematic by this procedural sort of
2 | conundrum that we are in.

3 |      If we had some indication or idea
4 | that this had to be something more or that
5 | we had any belief that Mr. Maxson should
6 | have been here to respond to these concerns,
7 | he would be sitting here or we would have
8 | requested he be sitting here, but he is not,
9 | and that is, to me, fundamentally unfair of
10 | what the position that you are putting in
11 | and that your co-counsel is putting this
12 | Board in.

13 |      MR. GRUMBACH:  Stan, is that your
14 | tape?  Ed Collins.

15 |      MR. COLLINS:  I wonder if I might
16 | make a suggestion to the Board through you,
17 | Mr. Chairman.  My suggestion is as follows.
18 | I think no reasonable person can think that
19 | a continuance through the 18th is not, in
20 | fact, called for for all of the reasons that
21 | you have recited and Mr. Goldberg has
22 | recited and I think that I've heard from
23 | other Board members.  The hang-up seems to
24 | be how much time after that date the
25 | applicants are willing to give, whatever

1 that means, for the Board to write a

2 decision.

3        My suggestion is that the Board

4 might decide on continuing this matter to

5 the 18th and that the agreement might recite

6 that a decision is required by a month after

7 the 18th, some reasonable period of time,

8 not the two weeks that has been talked of

9 here.

10        If, after the meeting on the 18th,

11 the applicants are unhappy, they might be

12 willing to consider a further extension;

13 likewise, the results might be what they are

14 at the time, but that would seem to

15 alleviate the problem of anything happening

16 before the 18th which seems to be

17 essentially physically impossible, and it

18 would alleviate the problem of requiring the

19 Board to file a decision within two weeks.

20        I would urge -- I would urge the

21 applicants to accept that view.

22        MR. GRUMBACH:  A month after

23 January 18th, which is February 17th,

24 30 days after the 18th for the filing of the

25 decision.  If it happens earlier, it will

1  happen earlier.  We don't have any desire to

2  hold onto it.

3         MS. GENNIS:  That gives the Board

4  flexibility so that if Mr. Maxson can't come

5  on the dates we would like him to come, we

6  could still have the public voice any other

7  concerns and then still have time to have a

8  discussion.

9         MS. KOFFMAN:  There are two

10 alternatives.  One alternative is that we

11 have a hearing on December 28th.  I don't

12 think anyone on this Board will like that.

13 I don't think that serves the public.

14        MR. GRUMBACH:  I'm not going to be

15 here.

16        MS. KOFFMAN:  We could have it on

17 January 4th.  I don't believe that serves

18 the public because that's still in that

19 school break.

20        MR. COLLINS:  The 12 days of

21 Christmas.

22        MS. KOFFMAN:  We have a hearing

23 date already scheduled for the 11th.  It is

24 filled.  We already have residents'

25 applications filling that on the 11th.  We

52

1  have a hearing date on the 25th that we
2  cannot hold because that's town election.
3  By State law we're not allowed to have a
4  hearing on that date, so what we're doing is
5  we're adding in an extra hearing in January,
6  a third hearing, an additional hearing just
7  for AT&T.
8         The problem is we may need -- we
9  may use up that entire night talking or
10 hearing from the public or hearing from
11 Mr. Maxson, and I agree with you,
12 Mr. Maxson says I can't make the 18th, how
13 about the 17th?  We have, in the past,
14 agreed and notified the public that we move
15 the hearing by one day or another, but if we
16 can't get it done on the 18th, and we
17 schedule another hearing for the 26th, the
18 Wednesday, an additional four hearings in a
19 month, five days isn't enough to write a
20 decision, so we need more time.  We cannot
21 move it back the other way, and we cannot --
22 we can't meet on other nights of the week.
23 These are the nights that the Board members
24 have agreed to meet on.
25         MR. GRUMBACH:  Does anybody have a

53

1   calendar?  What is February 17th?

2           MR. GOLDBERG:  It's a Thursday.

3           MR. GRUMBACH:  Thursday.  Do we

4   have an agreement?

5           MR. LACY:  February 6th is a

6   Tuesday.

7           MR. GOLDBERG:  6th is a Sunday.

8   I'm not meeting on a Sunday.

9           MR. GROSSMAN:  We wouldn't suggest

10  that either.

11          MR. GOLDBERG:  17th is a Thursday.

12          MS. KOFFMAN:  Well, it's the date

13  on which the decision would be due.

14          MS. PATTON:  Mr. Chairman, I'm

15  concerned in two points and with all due

16  respect --

17          MR. GRUMBACH:  Why don't you just

18  give your name for the record?

19          MS. PATTON:  Peggy Patton,

20  43 Plain Road.  I'm concerned, number one,

21  that Mr. Maxson hasn't been paid.  Quite

22  frankly, I know he's very professional.  I

23  wouldn't come back until I got paid.  I

24  wouldn't come back on the 18th.  So they

25  ought to pay these people.

1        MR. GRUMBACH:  I don't disagree

2  with you, but I don't know.  You know, I

3  suspect he's dealt with cities and towns

4  before, and he probably is used to it.

5        MS. PATTON:  But the second point

6  is this is a rerun of what happened before.

7  They came in and said we want you to write

8  that decision on such and such time.  It's

9  the same players.  It's the same act.  It's

10  act two.  We get it again.  I just don't

11  understand.

12        MR. GRUMBACH:  Gentlemen, have you

13  made a decision on February 17th?

14        MR. LACY:  Actually what we were

15  contemplating was just continuing it to the

16  18th and then grant an extension until the

17  end of the week following the February 8th

18  meeting which would be, I think, the 11th.

19        MR. GROSSMAN:  If my math is

20  correct.

21        MR. GRUMBACH:  February 11th.  I

22  think that will give us three weeks or so so

23  that's --

24        MS. KOFFMAN:  We are extended to

25  and including February 11th, and that's the

1  time within which we make a final decision.

2        MR. GRUMBACH:   For people who are

3  not familiar with Massachusetts law,

4  Massachusetts law states that once a public

5  hearing is closed, we have 14 days to render

6  a decision.

7        Now there's some dispute about what

8  rendering a decision means.   There are some

9  cases that say if we deliberate and reach a

10 decision, that's rendering a decision.

11 Other cases or other lines of thinking are

12 that we have to actually write the decision

13 and file it, and if we don't write and file

14 it within that 14 days, it's deemed granted,

15 so we're very concerned to not allow that to

16 happen because we, you know, we make our

17 decisions and if people don't like them we

18 can appeal them, but we don't really like

19 them to make -- to have permission granted

20 because our decision has not been formally

21 rendered in a timely manner, so that's what

22 we've been wrangling about.   It seems

23 arcane, but that's the way it is.   January

24 18th at 8:00 o'clock is the continued

25 hearing and the February 11th which is a --

56

1           MR. GROSSMAN:  Friday.

2           MR. GRUMBACH:  -- Friday is the

3  date for our decision.

4           MR. SARIAN:  What day?

5           MR. GRUMBACH:  Excuse me.  I didn't

6  hear what you said, Shaunt.  Thank you all

7  for coming tonight.

8           MR. DEXTER-SMITH:  Mr. Chairman.

9           MR. GRUMBACH:  Yes.

10          MR. DEXTER-SMITH:  When you speak

11  with Mr. Maxson what, exactly, are you going

12  to ask him?  Are you going to ask him just

13  to attend, or are you going to ask him if

14  he's going to introduce more evidence at

15  that meeting?

16          MR. GRUMBACH:  We're going to ask

17  him to attend, and we're going to ask him

18  what happened with Sprint and the BECO

19  towers, and we're going to ask him if, in

20  his opinion, there's any other evidence that

21  he will need or any other assistance he can

22  give us in terms of the RF consulting

23  issues.

24          MR. DEXTER-SMITH:  How will we, as

25  the abutters, know what that information is?

57

1          MR. GRUMBACH:  If he gives us

2  anything, it will be part of the record.  It

3  will either be in writing in which case

4  he'll submit it to us and it will become

5  part of the public record, or else he'll

6  come here on the 18th, and he'll have a

7  chance to be heard.

8          MR. DEXTER-SMITH:  Mr. Chairman,

9  are you looking to introduce the coverage

10  that may or may not occur from the tower

11  that will be erected in Weston?  You raised

12  it as if it was a new issue.

13          MR. GRUMBACH:  My understanding is

14  that was taken into account in the previous

15  calculations or estimates or --

16          MS. KOFFMAN:  The coverage map.

17          MR. GRUMBACH:  The coverage maps.

18          MR. DEXTER-SMITH:  It wasn't

19  actually in the drive-by because the tower

20  wasn't physically there, so you can't have

21  it in the drive-bys.  The drive-by was what

22  the drive-by was.

23          MR. GRUMBACH:  Who knows?  Maybe

24  there have been drive-bys since we closed

25  the hearing.  I don't know about any.

58

1            MR. DEXTER-SMITH:  But you would

2    accept that as new evidence into the record?

3            MR. GRUMBACH:  You know, if

4    somebody chooses to put it into evidence,

5    unless there's an objection and some reason

6    not to take it, I think we take evidence,

7    you know, as it comes in.

8            MS. KOFFMAN:  Mr. Chairman, if

9    anyone does want to submit additional

10   evidence in connection with both this and

11   137, would we want that to be submitted in

12   advance of January 18th so that we, the

13   Board, would have an opportunity to read it?

14           MR. GRUMBACH:  That's a good point.

15   If anybody wants to submit written evidence

16   for the January 18th hearing, you will need

17   to submit nine copies of it so that the

18   Board members can all have it and I would --

19   seven days in advance of the 18th, so by

20   January 11th.

21           MR. COLLINS:  Clearly,

22   Mr. Chairman, that doesn't relate to

23   evidence that may be used to dispute

24   evidence that's produced by Mr. Maxson or

25   anybody else on the 18th?

59

1          MR. GRUMBACH:  You're talking about

2   closing arguments or something?

3          MR. COLLINS:  No, I'm talking about

4   evidence.  I mean, the ultimate test here,

5   the one you'll hear when we're all done, is

6   whether there's substantial evidence on the

7   record to support whatever --

8          MR. GRUMBACH:  If you're planning

9   on evidence to rebut evidence that was put

10  in several months ago that's already in the

11  record --

12         MR. COLLINS:  I understand that.

13  No problem.  I think that's fair.  Suppose

14  it turns out on the 18th that Mr. Maxson or

15  somebody else says something that we haven't

16  even heard previously?

17         MR. GRUMBACH:  If that happens,

18  that's one reason that I did not want to

19  establish a date to close the hearing.

20         MR. COLLINS:  I understand that.  I

21  want to make sure we're not agreeing to

22  blindside ourselves.

23         MR. GRUMBACH:  What we have now is

24  we have a current date of February 11th to

25  render a decision.

60

1          MR. COLLINS:  Right.  Thank you.  I

2   appreciate that.

3          MR. GRUMBACH:  We're going to keep

4   that in mind because that date may not

5   change, and if so, we're not going to want a

6   lot of evidence coming in after the 18th of

7   January.

8          MR. COLLINS:  I just don't want

9   opponents to be blamed for not producing an

10  opposition to evidence that appears for the

11  first time, should it happen.  That's all.

12         MS. KOFFMAN:  I'm sorry.  We do

13  have the opportunity between January 18th

14  and in advance of February 11th to hold

15  another hearing if we needed to, if we had

16  evidence we wanted to discuss or talk about.

17         MR. GRUMBACH:  Yes.  Stan.  Give us

18  name and address, please.

19         MR. ROBINSON:  Stan Robinson,

20  9 Wheelock Road.  My property is within

21  900 feet of the proposed tower so I'm

22  directly affected, at least as regards to

23  the current 900-foot setback required by the

24  zoning bylaw.

25         MR. GRUMBACH:  You're talking about

1  135 Boston Post Road?

2          MR. ROBINSON:  Yes, I am.  It's a

3  question.  Based on something you said

4  earlier, am I -- do I understand it

5  correctly that you disregarded some of David

6  Maxson's presentation because it came in on

7  the wrong day?

8          MR. GRUMBACH:  No.  You did not

9  hear that.  There was some question about

10  whether Mr. Maxson wasn't here one night and

11  I don't remember, but in June or July of

12  last year when we were scheduling the final

13  hearing and the final deliberation, one of

14  the hearings got changed because either we

15  had given the wrong date or somebody had

16  written down the wrong date or somebody

17  didn't appear, and so there was confusion as

18  to which hearing Mr. Maxson appeared at and

19  whether he appeared at the deliberation

20  hearing.

21          My memory is that he did not appear

22  at the deliberation hearing because we were

23  told by town counsel that we could not take

24  testimony at the deliberation hearing and

25  that if he joined us at the last hearing and

```
1  we asked him a question, that was
2  essentially new evidence and we decided,
3  Well, that doesn't make any sense, so we
4  need his input before the deliberation
5  hearing.  So that's what you heard.
6          MR. ROBINSON:  Okay.
7          MR. GRUMBACH:  Kathy.
8          MS. SCHRIVER:  Kathy Schriver,
9  3 Fields Lane.  Do Sprint and AT&T have to
10 also submit their new evidence a week before
11 the hearing?
12         MR. GRUMBACH:  Well, they said
13 they're not going to submit any, but if they
14 do plan to, yes, they do.
15         MR. LACY:  Mr. Chairman, if I
16 could.  If David Maxson has any questions
17 with respect to the evidence that has
18 already been submitted and/or the
19 correspondence with the town with respect to
20 the BECO pole, would it be possible for him,
21 through contact of the Board, to ask us for
22 any additional information so that we could
23 respond to that before that public hearing
24 on the 18th?
25         MR. GRUMBACH:  You know, that's one
```

63

1  of the things we'll pose to him is does he

2  have any additional questions to you?

3         MR. GROSSMAN:  I mean, if he knows

4  them today, it would be helpful to know them

5  today and we can hopefully respond.

6         MS. KOFFMAN:  We did do that in

7  137.  Mr. Maxson prepared a list of

8  questions outside the context of public

9  meeting and submitted them directly to the

10  applicants who submitted answers directly

11  back, and those all went into the public

12  record for people to read, but we did use

13  that.

14         MR. COLLINS:  Presumably if this

15  were to happen again the opponents, and we

16  can designate a representative, would also

17  receive, at the same time, that

18  communication?

19         MS. KOFFMAN:  No, it would be in

20  the record.

21         MS. GENNIS:  It would be in the

22  record.

23         MS. KOFFMAN:  It would be in the

24  building.

25         MR. COLLINS:  In other words if Mr.

64

1  Maxson wrote a letter as suggested by
2  counsel here, Mr. Lacy, you're telling us
3  that it would be in the record at the same
4  time so that any foolish member of the
5  public might, in fact, find it and provided
6  that the Building Department would make it
7  available?
8          MR. GRUMBACH:  First of all let me
9  respond to what came up before because I've
10 spoken to Sheila.  My understanding is that
11 in the past we've had problems on this
12 particular case because the pleadings are so
13 voluminous there may have been
14 misunderstandings in the past about
15 particular documents in the public file, and
16 so the Building Department has made a
17 separate policy for this case for these two
18 consolidated cases which is that they put
19 things in the file and the public can look
20 through them.
21         They do not assist the public in
22 terms of going through those files.  It's
23 not because they're not interested in
24 helping the public out.  It's simply that
25 they are concerned that the public will say

1  to them, Gee, you didn't tell us this or you

2  told us this wrong, so I think if you come

3  down and look at the files, you're not going

4  to get a lot of assistance from the Building

5  Department.

6        If something has been filed, it

7  should be in the file, but don't expect to

8  ask one of the Building Department employees

9  to assist you.

10        MR. COLLINS:  Fair enough.  It

11  should be in the file, however.

12        MR. DEXTER-SMITH:  So, Mr.

13  Chairman, they get a copy sent to them.  We

14  have to go in the Building Department to try

15  and find it?  That's the fairness of these

16  hearings that they get a copy sent?  They

17  get a letter sent to them?

18        MR. GRUMBACH:  No, no, they don't

19  normally get a letter sent.

20        MR. DEXTER-SMITH:  Why don't we

21  agree that they have to go and look at the

22  file just like we do?  Fair is fair in love

23  and war.  These guys are just as capable as

24  I am of getting in the car and driving down

25  here and looking through voluminous files to

1  try to find the letter.

2         MR. GRUMBACH:  I don't think that's

3  the issue.  I think the issue is if there

4  was communication directly between them and

5  Mr. Maxson which is what I understood the

6  question to be.

7         MS. KOFFMAN:  Right.

8         MR. GRUMBACH:  It's not a matter of

9  them coming down here, but Mr. Maxson

10 communicates through us, so I don't

11 understand why there would be any

12 communication between them and Mr. Maxson.

13        MS. KOFFMAN:  The last time

14 Mr. Maxson sent the Building Department, the

15 Zoning Board through the Building

16 Department, a list of questions and the

17 Building Department forwarded them to the

18 applicants who wrote answers and sent them

19 back to the Building Department, all of

20 those things are in the public record.

21        If the Zoning Board were to take

22 onto itself the burden or the responsibility

23 of mailing a copy of everything that comes

24 in on this case to every member of the

25 public that --

67

1              MR. COLLINS:  That's very unfair,

2    Susan.  I've been with -- everything you

3    said tonight I've generally agreed with.  I

4    think you've been exemplary until the last

5    comment.

6              People in the public -- I think

7    this is clear -- want to know if the next

8    hearing is presumably going to be the final

9    hearing, that they know at least as early as

10   the applicants know, what's going on, and if

11   that has to do with communications between

12   the applicants and Mr. Maxson or Mr. Maxson

13   and the Board, the people -- I speak for

14   right now including myself and I guess Mike

15   Smith and I think others -- want to know at

16   the same time that everybody else knows,

17   what's going on, and I submit that anything

18   else is unfair.

19              MS. KOFFMAN:  Mr. Collins, stop

20   yelling at me.  I am the strongest advocate

21   on this Board of the public's right not only

22   to know --

23              MR. COLLINS:  I agree.

24              MS. KOFFMAN:  -- but to see things

25   in advance.  I argue strenuously that when

68

1  we are handed things at hearings, we should

2  not take them in as evidence at that hearing

3  because the public has not had a chance to

4  see them --

5        MR. COLLINS:  I agree.  You've been

6  doing it all night.  That's great.

7        MS. KOFFMAN:  -- the situation that

8  occurred before and that I assume would

9  occur again.  Mr. Maxson had a date on which

10  he had to submit, and the date was announced

11  at this hearing at a hearing, that on, I

12  think it was the 25th of whatever the month

13  was, he had to submit to the Building

14  Department, the questions that he wanted to

15  be sent to the applicants so that they would

16  be in the file.  The applicants also had a

17  date that they had to submit answers back.

18  I would assume the same kind of thing.

19        Those documents, both Mr. Maxson's

20  questions, if he has any, and remember we're

21  surmising that maybe he might have

22  questions.  Those questions would be in the

23  Building Department files, and their answers

24  would be in the Building Department files,

25  and all of those things would have to be

69

1  submitted in advance of the hearing so that

2  everybody, including Board members, have a

3  chance to read them in advance.

4         MR. GRUMBACH:  Everybody

5  communicates through the Building

6  Department.  That was the message.  So that

7  means if the applicants want to get a copy

8  have to come into the Building Department

9  and public, if they want a copy, have to

10  come into the Building Department, so it's

11  equal access through the Building

12  Department.

13        MR. COLLINS:  Thank you.  I agree

14  with it.

15        MR. GRUMBACH:  Peggy.

16        MS. PATTON:  Mr. Chairman, just one

17  question.  Peggy Patton, Plain Road.  I do

18  remember when Mr. Maxson finally gave his

19  report it was on line and we had to access

20  to go in and get that.

21        MS. KOFFMAN:  We put it on line on

22  purpose.

23        MR. GRUMBACH:  We specifically

24  asked for that because we knew it would be

25  long.

1          MS. PATTON:   Wouldn't it be nice

2     for you to put it on line the questions

3     Mr. Maxson asked these guys and these guys

4     reply back?   Couldn't we get it on line?

5          MR. GRUMBACH:   We don't know if

6     he's going to ask more questions.

7          MS. PATTON:   If he does.   If he

8     does.

9          MR. GRUMBACH:   If he does, we can

10    ask him to put it on line.

11          MS. KOFFMAN:   It was the town clerk

12    who made that decision or the executive

13    secretary who made the decision of what goes

14    on the website.   We specifically asked last

15    time.

16          MS. PATTON:   Thank you.

17          MR. GOLDBERG:   Could I ask a

18    question?

19          MR. GRUMBACH:   Go ahead, Eric.

20          MR. GOLDBERG:   We have a hearing

21    now for the 18th, and we have a deadline for

22    February 11th to render a decision.   Is it

23    contemplated that the evidence is to close

24    the 18th, and that we have a deliberated

25    hearing before the 11th?

1          MR. GRUMBACH:  I think that's my

2     present anticipation, and possibly we'd have

3     a deliberation hearing on the 26th.

4          MR. GOLDBERG:  Okay.

5          MR. GRUMBACH:  Although, you know,

6     it's not cast in stone.

7          MR. GOLDBERG:  We'll figure out

8     that date on the 18th.

9          MS. REINHARDT:  Hi, I'm Pat

10    Reinhardt.  I live on 145 Plain Road, and I

11    am a resident of one of the two houses that

12    fall within 150 feet -- Joanne Barnett is

13    the other resident -- of this BECO 131, and

14    I don't need to hear tonight because it's

15    already late enough, but I would like to

16    hear off line from one of you how it came to

17    be that that tower was proposed by the ZBA,

18    but the more important question I have is

19    just --

20         MR. GRUMBACH:  Let me just tell you

21    right now.  It was not the ZBA that proposed

22    that tower.  The ZBA, last winter, when we

23    were starting the hearings

24    or several hearings into the 135 and 137

25    Boston Post Road hearings, said to the

72

1   applicants, What sort of search have you

2   made within the neighborhood?  And they took

3   the position that they had called or

4   contacted 50 private people and we said,

5   Have you checked any of the BECO towers, any

6   of the series of BECO towers from

7   Route 27 all the way east to the Weston

8   line?  And they said, No, we haven't, and we

9   said, Have you read the zoning bylaws

10  because the zoning bylaws give a preference

11  for existing towers.

12          MS. REINHARDT:  I understand.

13          MR. GRUMBACH:  Exactly.  That's

14  what we did.

15          MS. REINHARDT:  But more

16  importantly, there's a lot of residents from

17  Plain Road tonight, and I know this will be

18  continued, but where does this tower stand?

19  I'm just not clear where it stands in the

20  process at this point.

21          MR. GRUMBACH:  You can look at this

22  letter from November 17th, and you can look

23  at the letter from Sprint, and Sprint

24  basically said we're interested in this one

25  particular tower which is the one that's

73

1  right off Plain Road.  Would you, the Town

2  of Wayland, since you are a part owner of

3  the land that it's on, give your assent and

4  the Board of Selectmen said No, we will not

5  give our assent.

6        MS. REINHARDT:  I read both those

7  documents.

8        MS. KOFFMAN:  BECO 131 is not in

9  front of us tonight.  It is not in front of

10 us, so have to file an application for it.

11       MR. GOLDBERG:  There is no

12 application pending and I interpret from the

13 comments of counsel and the substance of the

14 letters that because the town, the Board of

15 Selectmen, have refused to give consent

16 because they own a piece of the property

17 that the applicants effectively have

18 determined that it's not a viable option for

19 them, so I suspect that there will not be an

20 application for that tower.

21       MS. REINHARDT:  So is someone going

22 on the record on behalf of the client that

23 they will not be going forward on this, and

24 this is a dead issue for them?

25       MR. GRUMBACH:  I interpret what

74

1  they've said to mean that, but if you want

2  to ask them that, you should either write to

3  the companies or ask counsel.

4          MS. REINHARDT:  I mean, everyone

5  here, we're all -- Is it dead?  We'd like to

6  know if this is not going to come up again?

7          MR. GRUMBACH:  If counsel wants to

8  say further, go ahead.

9          MR. LACY:  With respect to the

10  correspondence that was submitted, in light

11  of the town's decision not to permit Sprint

12  to file to zoning, Sprint would not be able

13  to file that -- any application for that

14  particular BECO pole into zoning so no.

15          MS. GENNIS:  Dead issue.

16          MR. LACY:  The Board of Selectmen's

17  vote, in light of the Board of Selectmen's

18  vote, that site is not going to be brought

19  into zoning on behalf of Sprint or any other

20  applicant at this point.

21          MS. KOFFMAN:  This Board cannot on

22  the 18th of January, 11th of February or any

23  other date, cannot make any decision that

24  allows anything on BECO 131.  It's not in

25  front of us.  It hasn't been filed.  It

1  hasn't been publicly noticed in the

2  newspaper.  By law BECO 131 cannot -- if you

3  went home, you couldn't wake up in the

4  morning and suddenly discover we approved

5  the tower.

6          MS. REINHARDT:  I appreciate that.

7  I just wanted to clarify that.  I think

8  there are other people in the room that

9  wanted that clarified.

10         MR. GRUMBACH:  We had previous

11 discussions with Attorney Pare several

12 months ago where they were considering the

13 various BECO towers, and we made it clear

14 that if Sprint wanted to formally place a

15 cell tower on one of those towers, they

16 would have to withdraw the 135 Boston Post

17 Road application and submit a new, complete

18 application for a particular BECO tower, and

19 that -- Attorney Pare understood that.

20         MS. REINHARDT:  Okay, thank you.

21         MR. DEXTER-SMITH:  I have one more

22 question, Mr. Chairman.

23         MR. GRUMBACH:  Okay, but, you know,

24 we have another hearing that was scheduled

25 for 8:30.

76

1          MR. DEXTER-SMITH:  There are some

2  special conditions with regard to the

3  owner's use of that particular property.

4  Will the Board be requiring the owner to be

5  present at that meeting to answer those

6  questions?

7          MR. GRUMBACH:  I wasn't -- I don't

8  think we were planning to do anything, but

9  if you think that's an important issue, then

10  bring it up at the hearing.

11          MR. DEXTER-SMITH:  I think it's a

12  very important issue.

13          MR. GRUMBACH:  Then bring it up.  I

14  haven't really thought about this for a long

15  time.

16          MR. DEXTER-SMITH:  I think he's a

17  witness we would like to talk with about

18  exactly the use of that particular property.

19          MR. GRUMBACH:  Well, if you think

20  that's important why don't you write a

21  letter and then it can go into the record

22  and, you know, nine copies by the 11th.

23          MR. GRUMBACH:  Last question, Stan

24  Robinson.

25          MR. ROBINSON:  This is an honor.

77

1              MR. GRUMBACH:  Better be quick
2  though, Stan.
3              MR. ROBINSON:  With regard to the
4  Building Department's determination that
5  it's not going to help any abutter who's
6  going in to look at the file, I'm wondering
7  if there's a way that we can actually get
8  the file in a form that we can actually look
9  at it and not upset the organization of it.
10             MR. GRUMBACH:  Go in and ask the
11 Building Department.
12             MR. ROBINSON:  They're very
13 discourteous to me.  They don't want to have
14 anything to do with me, and it's a very
15 upsetting thing.  When I went in yesterday
16 there were two full boxes.  One was marked
17 135 and 137.
18             The other one was marked strictly
19 137, so I went into the 135 and 137 one, and
20 I was told, Don't upset that -- Don't upset
21 anything in that box.  It's been completely
22 organized.  And I looked at it and it's not
23 completely organized.  Furthermore, I did
24 not find the letters.
25             MR. GRUMBACH:  I'll tell you what,

1  Stan.  Right now you're beyond my expertise.

2  You're a tax payer in this town just like I

3  am.  If that's the way that people in the

4  town departments treat you, then maybe you

5  ought to go talk to somebody in the town

6  about that, but I think, you know, the

7  public should have a right to, you know, I

8  think, look at materials that are on file.

9          MS. KOFFMAN:  I want to say one

10  thing on behalf of the Building Department

11  workers.  I believe that what the Building

12  Department said was not that they would not

13  help, but that they would not pull papers

14  from the files or make any assertions on

15  what had or had not been filed because in

16  the past one Building Department employee

17  was not aware that something had been filed

18  and that person said no, nothing's been

19  filed.  The other employee had filed

20  something.  She knew something had been

21  filed, but the first one didn't, and that

22  became a problem because person B who didn't

23  know and hadn't done the filing, so the

24  safer course was don't make assertions,

25  invite the public to look for themselves

1  rather than say on behalf of the Building

2  Department and the planning Board what has

3  or hasn't been filed.  That's all.  I don't

4  think it's a matter of that they said they

5  won't help the public in this case.  They

6  don't want to -- they don't want to pull

7  papers.

8          MR. GRUMBACH:  Stan, I am a hundred

9  percent certain if you went into the

10  Building Department tomorrow that Norma and

11  Sheila and Dan would be very polite to you,

12  but if you don't find that's true then, you

13  know, you're a tax payer.  You do what you

14  think is appropriate.  Anyway, thanks all

15  for coming tonight.  This hearing is

16  continued to the 18th of January.

17          (Whereupon the deposition

18              suspended at 9:38 p.m.)

19

20

21

22

23

24

25

Page 80

1  Commonwealth of Massachusetts.

2  South Middlesex, ss.

3

4

          I, Teresa E. Costello, Notary

5  Public in and for the Commonwealth of
   Massachusetts, do hereby certify that

6  there came before me on the 14th day of
   December, 2004, A hearing of the Zoning

7  Board of Appeals of Wayland, Massachusetts,
   that the ensuing hearing was reported

8  stenographically by me and transcribed into
   typewriting under my direction and control;

9  and that the within transcript is a true
   record.

10

11         IN WITNESS WHEREOF I have hereunto
   set my hand and affixed my seal of office

12  this 26th day of December, 2004, at
   Framingham.

13

14

15

16         *Teresa E. Costello*
           Teresa E. Costello

17         CSR #1452S98
           Registered Professional Reporter

18         Notary Public
           Commonwealth of Massachusetts

19         My Commission
           Expires:  5/29/09

20

21

22

23

24

25

**A**

able 2:9 28:6 35:22
 74:12
**Absent** 18:12
**Absolutely** 13:24
**abutter** 77:5
**abutters** 15:24 17:1
 24:6,11,18 25:14
 27:8 33:6,15 35:25
 41:9 56:25
**abutter's** 27:10 28:11
**accept** 24:18 33:7,8
 48:14 50:21 58:2
**acceptable** 46:6
**accepted** 37:11
**accepting** 32:14
**access** 69:11,19
**accommodate** 44:13
**account** 57:14
**accurate** 14:2
**acquisition** 29:5
**act** 19:13 54:9,10
**activity** 40:9
**adding** 52:5
**additional** 10:6 11:4
 11:8 16:24 20:11,12
 26:1,3 36:3 37:5
 39:7,15 41:21 46:13
 46:19 52:6,18 58:9
 62:22 63:2
**address** 60:18
**addressing** 27:15
**advance** 58:12,19
 60:14 67:25 69:1,3
**advantage** 23:16
**advocate** 67:20
**affixed** 80:11
**afternoon** 4:3
**ago** 24:3 39:5 59:10
 75:12
**agree** 15:3 33:8 39:25
 40:20 46:3 52:11
 65:21 67:23 68:5
 69:13
**agreeable** 13:20
**agreed** 13:4 18:18
 19:6 48:15,16,17
 52:14,24 67:3
**agreeing** 47:6 59:21
**agreement** 6:19,22
 27:20 39:22 50:5
 53:4
**agrees** 16:5
**ahead** 5:15 34:16
 70:19 74:8
**AIDA** 2:5

**allegations** 19:14
 23:1,11,13
**alleged** 19:13
**alleviate** 50:15,18
**allow** 7:16 55:15
**allowed** 22:8 31:24
 52:3
**allows** 74:24
**alternate** 19:21
**alternative** 10:10
 12:22 40:15 48:1,9
 51:10
**alternatives** 10:17
 51:10
**amount** 16:11
**Anderson** 2:12 11:16
**and/or** 62:18
**announced** 12:18
 68:10
**answer** 9:17 32:13
 76:5
**answered** 46:14
**answers** 63:10 66:18
 68:17,23
**anticipate** 36:22
**anticipation** 19:7
 71:2
**anybody** 5:15 17:24
 34:19 52:25 58:15
 58:25
**anymore** 12:2 34:9
 35:8
**anyway** 19:6,7 79:14
**appeal** 3:10 55:18
**Appeals** 1:1 3:5 80:7
**appear** 61:17,21
**APPEARANCES** 2:1
**appeared** 61:18,19
**appears** 60:10
**applicant** 16:23 27:7
 27:16 29:19,20,21
 39:7 44:12 45:3
 74:20
**applicants** 16:25
 18:17 21:12 28:1
 30:1 43:10 46:6,7
 49:25 50:11,21
 63:10 66:18 67:10
 67:12 68:15,16 69:7
 72:1 73:17
**applicant's** 22:22
**application** 3:7 4:24
 9:10 11:21 18:5
 22:20,24 28:16
 30:24 31:2,4,4
 73:10,12,20 74:13

 75:17,18
**applications** 17:19
 24:4,6 29:25 51:25
**applies** 27:9,14 28:24
 29:24
**applying** 36:1
**appreciate** 22:18
 48:2 60:2 75:6
**apprise** 45:5
**appropriate** 79:14
**approval** 3:8
**approved** 75:4
**April** 13:3
**arcane** 55:23
**area** 3:21
**argue** 67:25
**argument** 18:24 23:6
**arguments** 23:17
 59:2
**Article** 3:18
**asked** 9:23 33:15
 39:5,6,13 62:1
 69:24 70:3,14
**asking** 12:19 32:8
 47:6
**assent** 73:3,5
**assertions** 78:14,24
**assist** 64:21 65:9
**assistance** 56:21 65:4
**associated** 3:14
**assume** 18:3 68:8,18
**assuming** 16:18,20
 32:25 36:24 38:11
**assurance** 21:16
**attachments** 4:19 6:3
**attend** 4:10 56:13,17
**attends** 46:18
**attention** 9:20 21:4
**Attorney** 6:11 7:10
 75:11,19
**AT&T** 1:8 2:14 11:14
 11:17 18:4 22:25
 23:15 27:15 28:22
 30:8 32:13 37:12,20
 37:22 45:1,11,14
 52:7 62:9
**available** 8:2 10:5
 64:7
**aware** 78:17
**awful** 16:16,18,20
 21:1

**B**

**B** 29:21 78:22
**back** 25:19 32:22
 33:12,14 35:3,7

 37:18 52:21 53:23
 53:24 63:11 66:19
 68:17 70:4
**balance** 38:21
**Barnett** 71:12
**based** 24:7 37:20
 61:3
**basically** 72:24
**BECO** 4:16 5:18 7:17
 9:24 10:4,8,15
 11:18 30:24 31:2,5
 47:24 48:9 56:18
 62:20 71:13 72:5,6
 73:8 74:14,24 75:2
 75:13,18
**behalf** 28:22,23 47:15
 47:22 48:17 73:22
 74:19 78:10 79:1
**belief** 49:5
**believe** 7:22 8:10
 25:2,18,25 37:6,7
 40:14,21 51:17
 78:11
**believes** 10:14 41:20
**benefit** 45:19
**Benevolent** 23:10
**Berlack** 2:15 4:6
**betrays** 43:9
**Better** 77:1
**beyond** 78:1
**bid** 38:1
**bids** 37:12
**bill** 39:9,9 40:8
**bills** 22:4 36:21 39:10
**bind** 46:24
**binding** 47:3
**bit** 28:5 35:22 36:2
**blamed** 60:9
**blatantly** 40:9
**blindside** 59:22
**Board** 1:1 3:4 4:15
 4:18,20,23 5:6,8,17
 5:19,24 6:17 7:3,12
 7:15 10:8 11:5,8
 15:1,16 19:25 23:3
 28:11 32:8 35:16
 43:5,10 44:8 45:6
 45:24 46:17,21 47:7
 47:9 48:4,11 49:12
 49:16,23 50:1,3,19
 51:3,12 52:23 58:13
 58:18 62:21 66:15
 66:21 67:13,21 69:2
 73:4,14 74:16,17,21
 76:4 79:2 80:7
**Board's** 46:11

Boston 3:25 6:20,20
  6:22 10:23 22:20,23
  31:5 33:21 61:1
  71:25 75:16
box 77:21
boxes 9:15 77:16
break 20:4 51:19
Brian 2:12 11:16
Brief 20:7 35:6
briefcase 39:2
briefly 5:16
bring 13:16 33:12,14
  34:8 47:18 76:10,13
bringing 9:19
brought 4:23 21:4
  22:25 37:6 74:18
Brown 2:15 4:6
bu 1:23
buffers 11:18
building 3:10 8:16
  26:19 39:13 63:24
  64:6,16 65:4,8,14
  66:14,15,17,19
  68:13,23,24 69:5,8
  69:10,11 77:4,11
  78:10,11,16 79:1,10
burden 66:22
business 3:20 4:1
bylaw 50:24
bylaws 3:17 72:9,10

——— C ———
calculations 57:15
calendar 14:16 53:1
call 30:15 43:14,16
called 49:20 72:3
Cambridge 2:13
can't 9:17 45:12
  46:14 51:4 52:12,16
  52:22 57:20
capable 65:23
car 65:24
case 9:2 15:13 17:5
  21:13,13 29:24 31:6
  31:7 38:21 57:3
  64:12,17 66:24 79:5
cases 27:17 28:25
  55:9,.1 64:18
cast 71:6
CCA 33:18
cell 9:1,7 75:15
center 2:24
certain 79:9
certainly 8:19 17:14
  27:17,24 36:19
  38:12 40:22 41:4

certified 6:17
certify 80:5
chaired 24:24
Chairman 5:2 12:16
  17:20 19:15 20:24
  22:16 23:25 24:17
  26:14 30:7 32:12
  33:11 34:21 42:19
  49:17 53:14 56:8
  57:8 58:8,22 62:15
  65:13 69:16 75:22
chance 20:9 30:14
  33:6 34:24 57:7
  68:3 69:3
change 4:13 17:6
  25:25 26:6 36:5
  37:7 42:7 60:5
changed 61:14
changes 25:23
changing 14:22 18:13
Chapter 3:17
charity 21:15
check 10:20 13:5
checked 72:5
chooses 58:4
Chris 29:14
Christmas 14:13
  51:21
Cingular 37:17 38:1
circumstance 26:1
  37:7
circumstances 25:23
  42:7 45:6
circumvent 47:13
cities 54:3
clarification 15:8
  24:10
clarified 75:9
clarify 31:20 32:5,6
  75:7
clear 13:8 14:1 15:25
  24:8 34:11 67:7
  72:19 75:13
Clearly 58:21
clerk 70:11
client 28:10 36:19
  45:2 47:16,17,22
  48:16 73:22
clients 40:10
client's 48:17
close 11:5,11 32:2,9
  59:19 70:23
closed 15:11 17:3
  20:18 31:21,22,25
  46:20 55:5 57:24
closing 31:23 40:22

59:2
closure 17:9
Collins 2:9 5:2,9
  12:14,15,16 13:6,19
  13:24 14:6 18:1,10
  18:16,23 19:10
  22:15,18 25:2 29:16
  29:16 30:5 34:20
  36:14,15 42:19
  43:21 48:11 49:14
  49:15 51:20 58:21
  59:3,12,20 60:1,8
  63:14,25 65:10 67:1
  67:19,23 68:5 69:13
combined 24:5
come 21:5,9 25:10
  31:12 37:8 38:8,11
  42:4,10 46:5 51:4,5
  53:23,24 57:6 65:2
  69:8,10 74:6
comes 9:2,13 58:7
  66:23
comfortable 41:25
coming 27:20 37:1
  41:13,25 56:7 60:6
  66:9 79:15
comment 18:2 22:15
  31:14 36:16 67:5
comments 73:13
commingled 24:4
Commission 80:19
commissioner 3:11
Commonwealth 80:1
  80:5,18
communicates 66:10
  69:5
communication
  63:18 66:4,12
communications
  3:13,14,16 7:19
  67:11
companies 29:3 74:3
Company 6:18
complaint 18:5,9
  19:13
complete 24:21 75:17
completely 24:18
  77:21,23
concern 27:11 28:11
  42:2 46:11 47:1,5
concerned 13:7 42:3
  42:8 53:15,20 55:15
  64:25
concerns 49:6 51:7
condense 36:1
conditions 76:2

conducted 45:8
confer 17:21 20:4,9
conference 47:19
  48:19,25
conferences 45:5
conferred 46:4
confines 46:15
confused 41:7,14
confusion 61:17
connection 58:10
conscious 16:13
consent 5:18 7:16
  28:13 73:15
consider 50:12
considering 40:7
  75:12
consistent 12:17 47:4
consistently 45:5
consolidated 1:6 16:2
  16:17 25:1 27:18,19
  64:18
consternation 41:7
constructed 37:23
construed 42:25
consultants 29:4
consulting 56:22
contact 38:7 48:6
  62:21
contacted 21:8 41:18
  72:4
contacting 47:24
contains 23:1
contemplated 70:23
contemplating 54:15
content 36:7
contents 5:10,12 7:14
context 63:8
continuance 18:18,21
  19:2 30:22 33:3
  35:17 48:2 49:19
continue 20:20 46:20
continued 3:6 15:10
  42:11 55:24 72:18
  79:16
continuing 20:15,16
  50:4 54:15
control 80:8
controlling 45:1
conundrum 49:2
convenient 45:24
copied 26:20
copies 5:23,25 39:14
  58:17 76:22
copy 4:18 5:6 6:1,2
  7:6,7,22,22 26:21
  65:13,16 66:23 69:7

69:9
correct 10:24 30:5
  38:5 48:13 54:20
correctly 61:5
correspondence 6:1
  9:13 48:5 62:19
  74:10
Costello 1:24 80:4,16
couldn't 70:4 75:3
counsel 5:10,14 7:10
  12:19,20 17:22
  18:13 28:18 35:14
  42:23 43:6 46:2
  47:15 48:17 61:23
  64:2 73:13 74:3,7
couple 29:7 36:25
  43:14,16 44:11
course 78:24
court 18:6 22:25
  33:19,25
coverage 57:9,16,17
co-applicant 27:16
  45:15
co-counsel 49:11
cross-examination
  34:15
cross-examine 34:8
CSR 1 24 80:17
current 59:24 60:23
curtail 12:21
cut 18:4
cuts 29:18
Cuttell 2:10 8:22 9:4
  9:8,14

## D

Dan 79:11
date 17:12 26:9,11
  40:14,21,22 41:25
  42:13,13 44:7,7
  47:3 48:15,16,18
  49:24 51:23 52:1,4
  53:12 56:3 59:19,24
  60:4 61:15,16 68:9
  68:10,17 71:8 74:23
dated 3:11
dates 14:18 19:4 51:5
David 21:5,8 30:13
  46:12,17 61:5 62:16
day 52:15 56:4 61:7
  80:6,12
days 21:21 35:12
  44:11 50:24 51:20
  52:19 55:5,14 58:19
dead 73:24 74:5,15
deadline 70:21

deal 13:22
dealt 54:3
December 1:20 3:1,3
  14:15 51:11 80:6,12
decide 12:10,12 22:2
  50:4
decided 10:1 33:2
  62:2
decides 11:9
decision 3:10 12:14
  16:7,11,22 20:19,23
  21:22 25:3 26:12
  35:13,18 37:4 39:22
  40:16 41:3 42:1,13
  43:5 46:22 50:2,6
  50:19,25 52:20
  53:13 54:8,13 55:1
  55:6,8,10,10,12,20
  56:3 59:25 70:12,13
  70:22 74:11,23
decisions 55:17
deed 6:16
deemed 55:14
deficit 38:23
delay 23:13
deliberate 15:17
  16:21 17:4 23:13
  30:9 55:9
deliberated 70:24
deliberation 12:7,13
  41:12 42:24 43:4
  61:13,19,22,24 62:4
  71:3
deliberations 25:9
  26:10 28:6 42:18
  43:12
delighted 26:15,22
Department 8:16
  26:20 39:13 64:6,16
  65:5,8,14 66:14,16
  66:17,19 68:14,23
  68:24 69:6,8,10,12
  77:11 78:10,12,16
  79:2,10
departments 78:4
Department's 77:4
deposit 39:8
deposition 79:17
deposits 39:16
deserves 21:15
designate 63:16
desire 51:1
determination 45:9
  48:20,21 77:4
determined 73:18
Dexter-Smith 2:8

20:24 23:25 24:1,15
  25:13 32:12,20 33:5
  33:17 34:18 56:8,10
  56:24 57:8,18 58:1
  65:12,20 75:21 76:1
  76:11,16
didn't 15:20 21:6
  36:8,17 43:11 44:1
  56:5 61:17 65:1
  78:21,22
difference 9:7 25:4
different 13:15 29:5
  29:7,10,13,20 32:21
  32:21 33:13
difficult 44:14
dimensional 3:19
direction 80:8
directly 60:22 63:9
  63:10 66:4
Directors 6:18
disagree 54:1
disbelieve 8:9
discourteous 77:13
discover 57:4
discuss 60:16
discussion 19:9 47:11
  51:8
discussions 75:11
dishonest 23:17
disingenuous 23:17
dispute 55:7 58:23
disregarded 61:5
distance 25:6
district 3:16,23 4:2
  7:20 18:6 22:25
documents 26:16,19
  26:24 64:15 68:19
  73:7
doesn't 45:19 46:3
  58:22 62:3
doing 13:2 21:14
  40:6 47:17 52:4
  68:6
dollar 39:8
don't 5:5,13 6:7 8:8,9
  8:12,18,22 9:8
  11:19 12:3,10,17
  15:4,5,21 16:10,18
  16:20 17:10 18:20
  18:23 21:9,18,23
  22:3,3,4,11,11
  23:14 24:11,18,19
  25:16,20,21 26:12
  26:13 27:24 30:10
  30:12 33:16 34:6
  35:1 39:3 40:13

42:7,17 44:21 46:24
  47:1,2 51:1,11,13
  51:17 53:17 54:1,2
  54:10 55:13,17,18
  57:25 60:8 61:11
  65:7,18,20 66:2,10
  70:5 71:14 76:7,20
  77:13,20,20 78:24
  79:3,6,6,12
draft 40:19
drafting 19:2
drive-by 57:19,21,22
drive-bys 57:21,24
driving 65:24
due 53:13,15
duplicate 26:18
Dwight 29:14

## E

E 1:24 80:4,16
earlier 12:23 23:8
  31:21 50:25 51:1
  61:4
early 67:9
east 72:7
EASTERN 1:9
easy 8:20,21 27:4
Ed 12:16 29:11,16
  45:18 49:14
Edison 6:21,23
Edward 2:9
effectively 45:3 73:17
effort 36:3
efforts 12:22
either 14:23 23:15
  53:10 57:3 61:14
  74:2
election 14:20 52:2
employee 78:16,19
employees 65:8
engineers 29:11
ensuing 80:7
entertain 27:6
entire 52:9
equal 69:11
equipment 3:15
erect 3:12
erected 57:11
Eric 2:4 19:25 70:19
especially 35:23
Esq 2:12,16
essence 4:22 47:20
essentially 29:8 43:2
  50:17 62:2
establish 59:19
estimates 57:15

evaluating 47:23
evening 3:2 4:3,4
11:12 12:7 15:12
23:20
evening's 12:4
event 13:25
everybody 16:5 36:2
67:16 69:2,4
evidence 11:2,4,8
12:2 15:14 16:17,19
16:24 18:14 21:20
24:8,25 25:12,24
26:1,4 27:20 28:14
28:20,24 29:2,18,23
30:2,4,12,17 31:23
32:4,11,15 33:9
34:5,10 35:24 37:5
37:19 41:13,21
42:23,25 56:14,20
58:2,4,6,10,15,23
58:24 59:4,6,9,9
60:6,10,16 62:2,10
62:17 68:2 70:23
evidentiary 13:12
exactly 27:2 47:17
56:17 72:13 76:18
Excuse 56:5
executive 70:12
exemplary 67:4
exhibit 5:4,11,22
existing 72:11
expect 38:13 65:7
expert 29:20,21 36:9
41:21
expertise 78:1
experts 29:7,9 32:22
33:1,4 41:22
expert's 40:8
Expires 80:19
explaining 5:10
exploring 47:25
express 31:11,13
extended 54:24
extension 40:13,25
50:12 54:16
extensions 20:21
extent 18:4
extra 36:25 47:23
52:5

F
face 18:24
fact 4:25 10:3 24:11
25:21 40:7 49:20
64:5
factor 19:4 23:23

fair 21:18,24 40:14
40:21 59:13 65:10
65:22,22
fairness 65:15
fall 25:7 71:12
falling 25:6
familiar 55:3
far 13:6 25:1 27:23
28:5 46:5
fatter 6:13
fatuous 19:14
feasibility 47:25
February 17:13,14
50:23 53:1,5 54:13
54:17,21,25 55:25
59:24 60:14 70:22
74:22
feel 15:1 17:7 25:9
34:11,15 41:24
feet 60:21 71:12
Fields 31:20 62:9
figure 71:7
file 5:18 7:17 8:14 9:4
9:5 33:9,20,24
50:19 55:13,13
64:15,19 65:7,11,22
68:16 73:10 74:12
74:13 77:6,8 78:8
filed 8:6,7,13 18:8
31:5 33:23 65:6
74:25 78:15,17,19
78:19,21 79:3
files 8:23 26:18,19
64:22 65:3,25 68:23
68:24 78:14
filing 18:5 20:22
50:24 78:23
filled 51:24
filling 51:25
final 12:13 15:22,23
21:7,21 35:18 41:3
41:25 42:13 43:18
43:19 55:1 61:12,13
67:8
finally 69:18
find 25:15 64:5 65:15
66:1 77:24 79:12
fine 12:9 13:7,9 14:19
23:7 27:5 31:17
34:14 44:12
finish 5:14 13:17
firm 4:6
first 3:6 28:21 36:10
36:11,17,18 60:11
64:8 78:21
fit 40:11

five 19:16 20:6 46:9
52:19
flagpole 37:13
flagpole-style 3:12
flexibility 51:4
flush 48:3
folder 6:6
folders 9:14,17
follow 48:6
followed 4:16
following 54:17
follows 49:17
follow-up 46:14
foolish 64:4
forced 26:25
foresee 46:17 47:1
forget 9:1
form 40:25 45:16
77:8
formal 30:24 39:15
formally 55:20 75:14
forward 10:22 47:18
73:23
forwarded 66:17
four 19:18,19,20,22
19:25 35:19 52:18
frame 36:2 44:6
frames 28:5
Framingham 80:12
frankly 21:18 28:12
45:1 53:22
frequency 29:11
Friday 56:1,2
front 73:9,9 74:25
frontage 3:21
FUGARAZZO 2:5
15:3
full 27:9 33:20 77:16
fully 24:21,21 25:1
47:23,25 48:3
fundamentally 49:9
further 11:20 37:3,17
50:12 74:8
Furthermore 77:23
future 18:25 23:22
47:8

G
gather 36:6
Gee 65:1
generally 67:3
GENNIS 2:5 32:5
51:3 63:21 74:15
Gentlemen 54:12
Gerry 29:15
getting 65:24

give 16:25 21:21
27:25 30:17 31:17
43:2 49:25 53:18
54:22 56:22 60:17
72:10 73:3,5,15
given 11:22 37:5
61:15
gives 21:1 51:3 57:1
giving 7:4
glad 5:14
go 5:15 8:15 10:22
11:1 14:24 21:25
22:12 33:6,19 34:4
34:16,24 38:19 45:7
47:22 65:14,21
69:20 70:19 74:8
76:21 77:10 78:5
goes 27:24 70:13
going 8:16 10:1,4,18
10:20,22 13:4 14:14
14:14 15:20,25
16:10,15 17:16
19:11 21:7,16,21,22
25:8,14 26:8,9 28:6
31:7,14,16 32:17
33:3,19,25 34:17
37:1,2 38:9,12,13
39:22 40:22 41:9,11
42:4,6,20 46:24
47:2 51:14 56:11,12
56:13,14,16,17,19
60:3,5 62:13 64:22
65:3 67:8,10,17
70:6 73:21,23 74:6
74:18 77:5,6
Goldberg 2:4 6:4
7:24 12:3 16:23
17:8 19:5,22 27:6
28:8 31:22 44:25
45:21 47:4 48:13
49:21 53:2,7,11
70:17,20 71:4,7
73:11
good 3:2 4:2,3,4
19:24 58:14
grant 5:17 7:16 35:16
54:16
granted 18:22 55:14
55:19
great 23:22 68:6
Grossman 2:12 11:15
11:16 17:20 18:8,15
19:18 20:3,8 22:1
27:22 28:22 29:9,14
32:6 35:3,8,10
36:10,15 37:9,16,22

37:25 38:5,15,24
39:17 40:2 41:6
42:15 43:8,19,22
44:3,10 45:14 46:1
53:9 54:19 56:1
63:3
ground 3:14
GRUMBACH 2:3
3:24:7,12,21 5:5,13
6:9,15 7:8 8:8,25
9:5,12,16 10:12,21
10:25 11:10,13,25
12:9 13:9,21,25
14:9,12,19 15:4,18
17:1),24 18:12,20
19:1 20,24 20:5,8
20:12,25 21:3 22:17
23:24 24:14,22 25:8
25:20 27:3,13 28:21
29:12 30:10 31:3,16
31:24 32:4,10,16,24
33:16 34:2,19,22
35:1,4,7 36:4,24
37:14,19,24 38:3,6
38:17 39:18 40:3,19
41:1,4,16 42:21
43:24 44:9,14 46:23
49:13 50:22 51:14
52:25 53:3,17 54:1
54:12,21 55:2 56:2
56:5,9,16 57:1,13
57:17,23 58:3,14
59:1,8,17,23 60:3
60:17,25 61:8 62:7
62:12,25 64:8 65:18
66:2,8 69:4,15,23
70:5,9,19 71:1,5,20
72:13,21 73:25 74:7
75:10,23 76:7,13,19
76:23 77:1,10,25
79:8
guess 10:16 41:6
67:14
guys 65:23 70:3,3

**— H —**
hadn't 78:23
hall 21 25 22:12
hand 80:11
handed 68:1
hand-in-glove 22:21
hand-strung 48:22
hang-up 49:23
happen 15:21 42:6
46:25,25 47:2 51:1
55:16 60:11 63:15

happened 10:14 38:4
42:12 54:6 56:18
happening 10:1 13:8
50:15
happens 50:25 59:17
hasn't 38:12 53:21
74:25 75:1 79:3
haven't 18:8 21:8
22:4 30:13,14 40:7
46:1 59:15 72:8
76:14
head 24:16,17
hear 36:8 56:6 59:5
61:9 71:14,16
heard 26:23 27:12
28:2,9 30:11,13
31:8,21 32:17,25
33:4 36:5,15 41:8
46:1 49:22 57:7
59:16 62:5
hearing 1:6,18 3:4,6
3:7 5:7 6:25 7:2
9:22 10:19 11:6,11
12:1,11,12,13 13:4
13:16,18 14:4,12,15
14:22 15:6,10,23
16:2,4,18,19 17:1
17:12 19:7 20:15,16
20:18 21:6,8 22:9
25:10,16,18,23 26:8
27:23 30:16,21 31:6
31:21,23 32:9,23
35:9,11,18 36:7,11
37:1 39:4,6,20,25
41:12,23 42:9,13,24
43:3,4,9,13,18,20
44:15 46:15,18,19
47:7 48:15 51:11,22
52:1,4,5,6,6,10,10
52:15,17 55:5,25
57:25 58:16 59:19
60:15 61:13,18,20
61:22,24,25 62:5,11
62:23 67:8,9 68:2
68:11,11 69:1 70:20
70:25 71:3 75:24
76:10 79:15 80:6,7
hearings 3:5 9:9
17:22 24:24,25
27:18,21 31:25
35:20 39:5 42:5
44:18,20,23 52:18
61:14 65:16 68:1
71:23,24,25
height 3:22
help 28:4 77:5 78:13

79:5
helpful 19:3 63:4
helping 64:24
helps 27:23
hereunto 80:11
he'll 38:11 41:19 57:4
57:5,6
he's 6:8 21:11,14
37:1 38:9 41:21
53:22 54:3 56:14
70:6 76:16
Hi 71:9
history 45:20,25
hold 51:2 52:2 60:14
holidays 44:16
home 75:3
honor 76:25
hope 18:11,16 19:11
hopefully 28:3 63:5
hours 36:25
houses 71:11
hundred 79:8

**— I —**
idea 38:9 49:3
important 22:7 28:10
34:16 71:18 76:9,12
76:20
importantly 72:16
impossible 50:17
impression 47:10
including 30:2 54:25
67:14 69:2
incorporate 26:15,22
indicated 7:15,18
indicates 28:13
indicating 16:24
indication 47:10 49:3
information 10:7
11:20 20:11,13
24:12,19 25:19
26:13,23 27:2 46:13
56:25 62:22
input 35:9 43:3,5
62:4
intending 11:3 18:14
intends 11:1,2 45:7
interested 64:23
72:24
interpret 14:9 73:12
73:25
introduce 56:14 57:9
introduced 29:24
investigation 13:13
45:7,8
invite 78:25

invoice 38:16,19 39:3
invoices 39:15
involved 16:16
irrespective 48:19,20
Island 2:17
isn't 10:6 52:19
Israels 2:15 4:6
issue 23:20 30:22
57:12 66:3,3 73:24
74:15 76:9,12
issued 37:11 45:10
issues 41:24 56:23
it's 4:2 6:15,16,16,17
6:19,19,21 8:20,21
9:4,5 10:1,9,13
12:22 13:7 15:13,24
19:25 21:18 22:7
26:7,8 28:10 29:1
36:14,17,18,21
40:22 44:14,22 45:8
45:8,9 48:9 53:2,12
54:8,9,9 55:14 61:2
64:22,24 66:8 69:10
71:6,14 73:3,18
74:24 76:11 77:5,14
77:21,22 79:4
I'd 8:5 15:22 18:1
39:6,19
I'll 5:14 33:9 36:19
36:19 77:25
I'm 4:5 5:9 8:16
12:19 13:1,5,6 14:7
14:13,14 16:19
21:22 23:9,19 25:13
27:14 32:13,24 33:5
33:17 36:4,24 37:2
37:14 38:7,11,12
40:17 41:2,6,14,15
42:3,8,19 44:19,25
45:12 51:14 53:8,14
53:20 59:3 60:12,21
71:9 72:19 77:6
I've 7:21 45:17 46:2,7
49:22 64:9 67:2,3

**— J —**
JAMES 2:3
January 14:21,23
15:7 17:12 20:20,21
30:23 31:8,13,15
34:3 35:11,17 36:8
39:20,23 40:1,14,21
41:8 44:6,7,19
50:23 51:17 52:5
55:23 58:12,16,20
60:7,13 74:22 79:16

Joanne 71:12
joined 61:25
July 61:11
June 3:11 61:11

**K**

Kathy 31:19 62:7,8
keep 60:3
kind 68:18
knew 16:15 43:13
  69:24 78:20
know 5:5,11 6:7 7:21
  10:25 12:17 15:19
  15:20 17:14 18:23
  21:6,9 22:7 23:7
  26:11,12 30:16
  32:24 33:16 40:6
  41:19,19,24 42:17
  44:17 47:1 53:22
  54:2 55:16 56:25
  57:25 58:3,7 62:25
  63:4 67:7,9,10,15
  67:22 70:5 71:5
  72:17 74:6 75:23
  76:22 78:6,7,23
  79:13
knows 42:11 57:23
  63:3 67:16
Koffman 2:4 5:23 6:7
  6:13,24 7:7,21 8:1
  10:18 11:14,22 12:6
  13:1 14:16 17:5,16
  19:2 26:14 30:1,7
  32:2 38:18,25 40:15
  40:24 41:2 43:17
  51:9,16,22 53:12
  54:24 57:16 58:8
  60:12 63:6,19,23
  66:7,13 67:19,24
  68:7 59:21 70:11
  73:8 74:21 78:9
Kreiger 2:12 11:17

**L**

Lacy 2:16 4:4,5,9,14
  4:22 5:16,25 7:6,13
  9:19 10:3,24 11:3
  11:12 13:10 14:2,8
  14:11 15:8 20:9,10
  20:14 21:2 22:14
  28:17,23 32:7 34:25
  35:8 46:8,10 47:21
  53:5 54:14 62:15
  64:2 74:9,16
land 3:15 73:3
Lane 31:20 62:9

late 71:15
latest 9:25 38:16,19
law 34:1 43:7 52:3
  55:3,4 75:2
laws 32:1 43:1
lawsuit 22:24
lawyer 24:10
Lawyers 23:9
left 17:4
legal 23:6
letter 3:11 4:17,19,22
  5:3,16,20 6:5,10,11
  7:9,14 8:10 13:14
  13:14 30:25 64:1
  65:17,19 66:1 72:22
  72:23 76:21
letters 5:21 8:11
  73:14 77:24
light 9:25 10:3 35:4
  35:23 43:5 74:10,17
likewise 50:13
Linda 43:13
line 12:25 37:8 69:19
  69:21 70:2,4,10
  71:16 72:8
lines 55:11
list 63:7 66:16
little 9:7 28:5 35:22
  36:2 41:7,14 43:9
  44:25
live 71:10
LLP 2:12,15
llth 44:19 59:24
  70:22
located 3:25 7:18
location 4:24
long 7:9 13:7 16:14
  16:15 36:18 69:25
  76:14
longer 10:9 11:1
look 8:23 9:23 12:22
  32:18 64:19 65:3,21
  72:21,22 77:6,8
  78:8,25
looked 9:18 77:22
looking 57:9 65:25
looks 6:16 14:1,19
lot 3:20 6:13 16:16,19
  16:20 19:14 21:1
  36:2 60:6 65:4
  72:16
love 65:22

**M**

mailing 66:23
Main 2:16

Maine 6:20
major 42:7
making 24:22
manner 55:21
map 57:16
maps 57:17
March 22:9
Mark 7:9
marked 77:16,18
married 44:6
Massachusetts 2:13
  55:3,4 80:1,5,7,18
materials 78:8
math 54:19
matter 4:2 5:4 18:9
  20:22 21:14 38:22
  38:23 39:6 50:4
  66:8 79:4
maximum 3:22
Maxson 21:5,8 26:4
  30:13 36:12 38:8,16
  41:18 42:1,16,17
  43:11 44:13 46:12
  46:17 47:12 49:5
  51:4 52:11,12 53:21
  56:11 58:24 59:14
  61:10,18 62:16 63:7
  64:1 66:5,9,12,14
  67:12,12 68:9 69:18
  70:3
Maxson's 36:21 61:6
  68:19
mean 8:25 12:10 16:1
  18:21 27:24 42:15
  46:4 59:4 63:3 74:1
  74:4
Meaning 32:10
means 10:22 50:1
  55:8 69:7
measured 33:25
meet 44:17 52:22,24
meeting 1:1 4:10 7:11
  31:25 43:1,7 50:10
  53:8 54:18 56:15
  63:9 76:5
member 8:4 23:9
  64:4 66:24
members 5:24 7:3,3
  19:25 49:23 52:23
  58:18 69:2
memory 29:1 43:8,24
  61:21
meritorious 34:12
message 69:6
Michael 2:6 19:23
Middlesex 80:2

Mike 2:8 24:1 32:17
  67:14
mile 47:23
mind 60:4
minimum 3:20
minute 17:21 22:13
minutes 20:6 46:9
misunderstandings
  64:14
money 21:12 38:19
monopole 3:13 37:17
  37:21,23
month 50:6,22 52:19
  68:12
months 16:3,3 22:10
  22:23 59:10 75:12
morning 75:4
mouthpiece 46:7
move 22:8 36:6 44:10
  52:14,21
moving 41:14,16

**N**

name 4:5 19:16 30:18
  31:18 53:18 60:18
necessary 3:8 25:12
need 16:10,20,21
  21:5 33:20 41:20
  44:3,4 46:12 52:8
  52:20 56:21 58:16
  62:4 71:14
needed 60:15
needs 44:10
neighborhood 72:2
neighbors 5:1
never 36:21 39:11
new 14:13 19:23
  57:12 58:2 62:2,10
  75:17
newspaper 75:2
nice 70:1
night 14:21 16:21
  17:1,17 40:17 44:24
  52:9 61:10 68:6
nights 44:17 52:22,23
nine 58:17 76:22
Norma 79:10
normal 14:21
normally 9:1,2 44:17
  65:19
Notary 80:4,18
notes 8:18
nothing's 78:18
noticed 75:1
notified 52:14
notion 27:7

November 7:9,11,25
  72:22
number 4:2,25 5:19
  7:18 17:15 23:1,2
  23:11 53:20

___ O ___

object 42:20
objection 58:5
obviously 16:1,5
occupied 38:1
occur 57:10 68:9
occurred 68:8
October 4:17 6:5,10
  6:11
office 30:11
officially 48:5
oh 33:22 34:23 37:24
okay 4:21 11:13 14:4
  15:4 22:9,14 23:24
  34:13 36:4 39:17
  62:6 71:4 75:20,23
once 55:4
open 31:25 43:1
opinion 31:10 42:22
  56:20
opponents 60:9 63:15
opportunity 11:23
  15:12 26:3 34:7
  58:13 60:13
opposed 13:2
opposition 60:10
option 10:9 73:18
options 9:25
order 5:3
organization 77:9
organized 77:22,23
original 11:18
ought 41:3 45:22
  53:25 78:5
outrageous 40:5
outside 34:24 35:2
  63:8
overlay 7:19
owed 21:12
owing 36:12
owner 73:2 76:4
owner's 76:3
o'clock 3:6 15:6
  17:1 39:20 55:24

___ P ___

packet 6:10,14 7:23
packets 8:11
page 33:22
paid 21:15,17 22:4

36:21 38:12 40:7
  53:21,23
pain 33:18
panel 19:17
paper 14:17 39:2
papers 33:24 78:13
  79:7
Pare 4:7,9 6:12 7:10
  29:11 45:18,23
  47:14 75:11,19
part 57:2,5 73:2
partial 32:15
participate 11:23
particular 11:21 34:6
  34:12,15 64:12,15
  72:25 74:14 75:18
  76:3,18
parties 23:15
Pat 71:9
Patricia 2:10
Patton 19:15,19 20:2
  53:14,19,19 54:5
  69:16,17 70:1,7,16
pay 21:17 38:14,14
  39:9 53:25
payer 78:2 79:13
paying 36:9
PCS 1:8
Peggy 53:19 69:15,17
penalized 47:20
pending 73:12
people 9:9 19:16 23:3
  29:13 32:21 53:25
  55:2,17 63:12 67:6
  67:13 72:4 75:8
  78:3
percent 79:9
period 16:14 50:7
permission 55:19
permit 74:11
permits 3:9
permitted 3:22
person 24:24 49:18
  78:18,22
personally 14:24
  25:22
perspective 11:6 16:9
phonetics 7:10 30:20
physically 26:17,21
  50:17 57:20
piece 14:17 17:2 39:1
  73:16
pieces 25:24
Pinebrook 24:1
pipe 46:2
place 4:11 75:14

places 26:21
Plain 12:16 30:20
  31:12 53:20 69:17
  71:10 72:17 73:1
plan 6:15 62:14
planning 38:7 59:8
  76:8 79:2
players 54:9
pleadings 64:12
please 14:7 60:18
point 5:2 12:20 15:8
  17:3 19:5,12,24
  22:19 23:16,18
  43:22 47:8 54:5
  58:14 72:20 74:20
points 53:15
pole 5:19 7:18 10:4
  48:10 62:20 74:14
poles 4:16 10:8 47:24
police 37:10
policy 64:17
polite 79:11
portion 32:3
pose 63:1
position 10:13 11:18
  21:24 25:11,14
  34:10 35:21 36:5
  39:24 48:8,23 49:10
  72:3
possible 62:20
possibly 71:2
Post 3:25 10:23 22:20
  22:23 31:5 33:21
  61:1 71:25 75:16
precipitous 26:7
predicament 47:16
prefer 14:24
preference 72:10
prepare 39:13
prepared 11:10 13:5
  63:7
present 2:7 10:7,11
  11:4 15:13 19:13
  42:18,22 71:2 76:5
presentation 12:5
  27:8 28:1,2 41:10
  61:6
presented 15:15
  16:25 24:7 35:24
presenting 11:7
presumably 31:8
  63:14 67:8
pretty 16:8
previous 57:14 75:10
previously 29:23
  59:16

primarily 46:11
principal 3:23
printed 37:20
printout 39:12
prior 6:25 7:2 48:4
private 72:4
probably 19:3 31:12
  45:17 54:4
problem 17:17 20:16
  28:18 36:22 41:17
  43:25 47:13 50:15
  50:18 52:8 59:13
  78:22
problematic 41:15,17
  49:1
problems 17:18
  64:11
procedural 49:1
procedure 13:22
proceeding 10:5
process 15:15 36:18
  72:20
produced 58:24
producing 60:9
professional 53:22
  80:17
promised 39:11
properties 3:25 16:8
property 60:20 73:16
  76:3,18
proposal 10:23 35:12
proposed 60:21
  71:17,21
prospect 12:18
provide 20:20 39:7
  46:21
provided 6:2 64:5
Providence 2:17
public 7:3 8:2,5 11:6
  11:23 12:1 17:25
  26:2,24,25 27:5
  30:3,11,21 31:10,14
  32:3,9,23 34:7 42:3
  43:3,7 44:15 46:15
  46:18 51:6,13,18
  52:10,14 55:4 57:5
  62:23 63:8,11 64:5
  64:15,19,21,24,25
  66:20,25 67:6 68:3
  69:9 78:7,25 79:5
  80:5,18
publicly 75:1
public's 67:21
pull 78:13 79:6
purpose 9:21 69:22
purposes 27:10 28:15

48:18
pursued 22:21
put 11:2 12:2 13:11
  18:14 24:7,8,12,12
  24:19,20 25:18,21
  25:24 26:3,21 27:5
  28:24 30:3,4,12
  33:23 39:2 40:24
  41:3 44:9 48:23
  58:4 59:9 64:18
  69:21 70:2,10
putting 21:19,24 22:5
  34:9 49:10,11
puzzled 44:25
p.m 79:18

**Q**

question 27:14 61:3,9
  62:1 66:6 69:17
  70:18 71:18 75:22
  76:23
questions 33:15 37:2
  46:14,19 62:16 63:2
  63:8 66:16 68:14,20
  68:22,22 70:2,6
  76:6
quick 42:14 77:1
quickly 36:6 38:14
quiet 33:10
quite 8:8 28:12 45:1
  53:21

**R**

radio 29:10
railroad 6:20,22
raised 57:11
raising 5:9
reach 55:9
read 58:13 63:12
  69:3 72:9 73:6
real 25:20
really 15:20,21 22:3
  42:4 44:22 55:18
  76:14
rear 3 21
reason 42:21 58:5
  59:13
reasonable 49:18
  50:7
reasons 49:20
rebut 59:9
rebuttal 34:16
recall 32:25 48:12
receive 63:17
received 5:6 6:25
Recess 20:7 35:6

recite 50:5
recited 49:21,22
recognize 9:22
recollection 43:15,17
recopy 26:25
record 4:5 6:3 11:16
  14:7,8,11 21:23
  24:8,9,21 32:7 40:3
  40:4,23 53:18 57:2
  57:5 58:2 59:7,11
  63:12,20,22 64:3
  66:20 73:22 76:21
  80:9
reference 26:15,23
referencing 7:11
reflect 40:4,4
refused 73:15
regard 23:4 76:2 77:3
regarding 35:24
regards 60:22
Registered 80:17
Reinhardt 2:10 71:9
  71:10 72:12,15 73:6
  73:21 74:4 75:6,20
reiterate 28:17
relate 23:12 58:22
related 41:23
reliance 48:23
relying 47:14
remarks 22:19
remember 36:11,17
  61:11 68:20 69:18
render 35:17 37:4
  46:21 55:5 59:25
  70:22
rendered 20:19 55:21
rendering 55:8,10
reply 70:4
report 9:22 44:4
  69:19
reported 1:23 80:7
Reporter 80:17
reports 42:16
represent 40:10
representation 18:2
  18:7,17 47:14
representations
  22:22
representative 63:16
reproduce 27:1
request 31:20 39:15
  45:10
requested 5:17 45:4
  47:18 49:8
requesting 45:4 47:6
require 7:1 48:1

required 3:9 45:15
  50:6 60:23
requirements 3:20
requires 26:6
requiring 27:7 50:18
  76:4
rerun 54:6
reschedule 45:22
research 8:23 9:9
resident 71:11,13
residents 17:19 51:24
  72:16
respect 4:16 7:17
  10:8 15:10 20:11,14
  20:22 22:19 23:2
  28:3,19 46:10 47:21
  48:7 53:16 62:17,19
  74:9
respectfully 28:12
respective 10:9
respond 5:20 8:17
  49:6 62:23 63:5
  64:9
responded 13:15
response 45:11 48:21
responsibility 66:22
results 50:13
re-hear 27:4
re-hearing 27:2
re-photo 27:1
RF 41:21,22,23 56:22
RFP 37:11
Rhode 2:17
right 8:17,25 12:6
  15:7 16:9 21:23
  24:14 26:13 29:12
  33:21 60:1 66:7
  67:14,21 71:21 73:1
  78:1,7
Road 4:1 10:23 12:16
  22:20,23 24:1 30:20
  31:6,12 33:21 53:20
  60:20 61:1 69:17
  71:10,25 72:17 73:1
  75:17
roadside 3:20 4:1
Robinson 2:9 8:4,20
  60:19,19 61:2 62:6
  76:24,25 77:3,12
room 23:4 75:8
roughly 38:24,25
Route 10:15 72:7
routinely 8:12
Rudnick 2:15 4:6
rules 7:1
run 17:18

rush 22:11

**S**

S 2:12
safer 78:24
SARIAN 2:3 56:4
sat 35:3 43:10
satisfy 27:10
save 36:2
says 33:19,21,22
  52:12 59:15
scenario 17:6
schedule 12:1,7,12
  14:15 15:5,5,22,23
  17:2,13,23 19:3
  22:6 27:23 34:23
  39:19 44:23 52:17
scheduled 44:18,20
  51:23 75:24
schedules 35:9
scheduling 21:7
  43:25 61:12
school 51:19
Schriver 31:19,19
  62:8,8
Scott 2:16 4:5 5:15
  45:19 46:8
scurrilous 23:4,4
seal 80:11
search 72:1
second 14:22 24:16
  54:5
Secondly 21:11
secretary 70:13
Sections 3:18
see 3:11 5:15 7:4 8:2
  8:6 9:10 15:24
  23:14 25:15 26:5
  35:21 38:8 40:11
  42:8 67:24 68:4
seek 33:3
seen 7:21
Segal 43:14,15
Seldon 30:19,19 31:9
selectmen 4:18,20,23
  5:7,8,19 7:12 31:1
  48:12 73:4,15
Selectmen's 74:16,17
send 38:16,18 39:12
  39:14
sense 62:3
sent 4:11,17 9:3
  13:14 65:13,16,17
  65:19 66:14,18
  68:15
sentence 40:25

separate 24:5 37:12
  64:17
series 72:6
serious 21:14
serves 51:13,17
services 3:16
session 31:14
set 15:22,23 17:8
  37:17 42:12 44:8
  47:3,7 80:11
setback 60:23
setbacks 3:21
seven 58:19
shake 24:15,17
Shaunt 2:3 56:6
Sheila 2:10 8:17
  64:10 79:11
she's 8:18
shorten 28:4 35:22
shouldn't 27:3
show 43:11 44:1
showing 13:12
side 3:21
sides 32:21
sign 40:12 45:16
signature 45:15
similar 16:8
simply 13:5 30:8
  64:24
single 12:4
sit 16:2 27:1 28:1
site 5:18 10:11 29:5
  74:13
sites 12:23
siting 29:4,13
sitting 45:11 49:7,8
situation 23:5 68:7
six 42:4
slightly 29:5
small 58:20
Smith 67:15
Society 23:10
somebody 23:8 43:25
  58:4 59:15 61:15,16
  78:5
sorry 32:13 60:12
sort 11:1 23:14 49:1
  72:1
sound 20:25
South 2:16 80:2
SPA701 3:18
speak 30:22 56:10
  67:13
speaking 23:19 45:17
special 3:8 14:20 76:2
specifically 33:18

69:23 70:14
Spectrum 3:8
speed 4:23
spending 36:25
spent 16:3
spoken 64:10
spring 19:11
Sprint 1:8 2:17 3:7
  4:15 5:17 7:17 9:23
  9:24 10:1,10,12,22
  10:25 11:3,7,10
  12:20 13:15 17:11
  18:3 23:15 25:24
  27:15 28:12,18,23
  30:24 32:14 33:2
  35:14 37:13,20,22
  45:3,24 46:3 47:5
  47:21 56:18 62:9
  72:23,23 74:11,12
  74:19 75:14
Sprint's 11:6 17:21
  28:16 46:2 48:19
Squires 29:15
ss 80:2
Stan 2:9 9:18 49:13
  60:17,19 76:23 77:2
  78:1 79:8
stand 27:25 72:18
stands 72:19
stansions 11:19
start 25:9
started 24:2
starting 44:21 71:23
State 6:18 52:3
statement 24:23
states 18:6 22:25 55:4
status 9:22 10:20
  13:5 19:6 40:17
  42:9 45:5 47:7,18
  48:15,18,24
stenographically
  80:8
step 35:1
Stephanie 30:19
Steve 20:1
STEVEN 2:5
stipulate 27:8
stipulated 41:13
stipulating 28:23
stipulation 28:14,19
  29:17,22,22 35:23
stone 17:8 71:6
stop 67:19
stopped 25:17
Street 2:13,16 6:18
strenuously 67:25

strictly 77:18
strongest 67:20
strongly 13:1
stuck 25:16
submit 4:15 5:21
  11:21 14:3 57:4
  58:9,15,17 62:10,13
  67:17 68:10,13,17
  75:17
submitted 4:20 5:3
  6:3 7:2,15 26:17
  28:14,20 48:4 58:11
  62:18 63:9,10 69:1
  74:10
submitting 6:8
subsequent 30:25
substance 73:13
substantial 59:6
substantive 10:19
  13:2 19:8
sudden 22:10
suddenly 75:4
sued 28:9 45:2
sufficient 5:24
suggest 8:15 11:24
  14:3 33:12 53:9
suggested 64:1
suggesting 41:2
suggestion 49:16,17
  50:3
summarize 7:13
Sunday 53:7,8
support 59:7
suppose 40:18 59:13
sure 17:24 22:17 33:5
  36:4 38:17 45:13
  59:21
surmising 68:21
Susan 2:4 13:6 19:25
  67:2
suspect 47:11 54:3
  73:19
suspend 22:8
suspended 79:18

—————— T ——————
table 3:19,22
take 10:21 23:16
  25:11 42:23 58:6,6
  61:23 66:21 68:2
taken 16:17 24:25
  57:14
talk 8:15 22:1,13
  23:21 34:24 35:4
  36:19 60:16 76:17
  78:5

talked 35:13 50:8
talking 14:7 18:12,19
  35:11 37:15 52:9
  59:1,3 60:25
tape 49:14
tax 78:2 79:13
TCA 24:8
telephonic 16:9
tell 14:17 21:19,20,22
  24:23 30:15 38:13
  65:1 71:20 77:25
telling 45:12 64:2
temporary 4:13
ten 22:10 46:9
Teresa 1:24 80:4,16
terms 4:24 10:5,10
  11:5 15:16 30:21
  47:23 56:22 64:22
test 59:4
testimony 29:6,8
  61:24
thank 9:19 12:15
  13:19 18:10 20:2
  23:23 24:22 30:6
  34:20 56:6 60:1
  69:13 70:16 75:20
thanks 79:14
that's 5:12 8:14 12:9
  13:7,9,19 14:1,2
  15:18 16:9 19:24
  21:13,23 23:7,20
  26:6 27:5,22 28:20
  28:24 30:2,5 31:7
  31:17 32:16 34:11
  34:13,17 37:14 38:5
  39:24 40:8 42:2,5
  42:14 43:4 44:7,12
  46:24,25 51:18 52:2
  54:23,25 55:10,21
  55:23 58:14,24
  59:10,13,18 60:11
  62:5,25 65:15 66:2
  67:1 68:6 71:1
  72:13,25 76:9,20
  78:3 79:3,12
thereabouts 38:22
there's 7:8 14:20
  18:21 19:18,19 26:5
  27:4 28:13 33:22
  37:6,12 42:6 55:7
  56:20 58:5 59:6
  72:16 77:7
they're 8:13,14 19:11
  34:9 62:13 64:23
  77:12
they've 33:13 34:9,10

**thing** 16:16 17:9 21:3
22:2 23:14 34:2
40:5 41:8 46:9
68:18 77:15 78:10
**things** 7:1 18:4 25:3
63:1 64:19 66:20
67:24 68:1,25
**think** 8:18 11:17,25
12:3 13:10 16:10
17:25 18:20 19:1
21:18,23 22:3 23:12
23:22 26:2 27:24
28:10 29:10,21
30:11 31:10 33:3
34:6,22 36:11 37:21
38:1 40:9 43:13
44:11 49:18,18,22
51:12,13 54:18,22
58:6 59:13 65:2
66:2,3 67:4,6,15
68:12 71:1 75:7
76:8,9,11,16,19
78:6,8 79:4,14
**thinking** 55:11
**thinks** 37:3
**third** 52:6
**THOMAS** 2:6
**Thorndike** 2:13
**thought** 15:18 39:2
43:12 76:14
**thousand** 39:8
**three** 44:20,23 54:22
**Thursday** 53:2,3,11
**tight** 22:6
**time** 16:11,12,13,14
16:21 21:1 28:4
36:1,3,18 44:6
45:22 46:21 48:2
49:24 50:7,14 51:7
52:20 54:8 55:1
60:1 63:17 64:4
66:13 67:16 70:15
76:15
**timely** 19:12 55:21
**times** 43:14,16
**timetable** 15:9,16
**timing** 17:22 23:12
**today** 63:4,5
**told** 8:7 46:8 61:23
65:2 77:20
**tomorrow** 8:16 79:10
**tonight** 3:5 4:8 10:19
12:11,21,23 13:3
15:21,22 21:6 23:9
26:7 30:14,23 31:6

31:11,15,17 32:18
40:16 42:8,10 48:5
48:24 56:7 67:3
71:14 72:17 73:9
79:15
**tonight's** 4:10 9:21
**top** 25:7
**total** 27:9
**totally** 23:4
**tower** 1:9 3:13 9:1,7
31:5 37:8 57:10,19
60:21 71:17,22
72:18,25 73:20 75:5
75:15,18
**towers** 9:24 10:15
25:5 56:19 72:5,6
72:11 75:13,15
**town** 1:1,19 3:17 7:10
7:16 10:4 12:24,25
14:20 37:10 38:20
39:8,11 42:23 43:6
45:10,10 47:24 48:6
48:7,8,12 52:2
61:23 62:19 70:11
73:1,14 78:2,4,5
**towns** 54:3
**town's** 48:21 74:11
**transcribed** 80:8
**transcript** 32:18,19
80:9
**transcripts** 34:4
**travel** 8:21,21
**treat** 78:4
**treated** 24:4
**tried** 43:14,16
**true** 27:22 36:14,16
79:12 80:9
**trust** 6:18 18:2 29:17
29:22
**try** 13:21 23:15 35:22
47:22 65:14 66:1
**trying** 15:9 33:17
**Tuesday** 3:3 14:25
15:6 39:20 44:17
53:6
**turned** 33:23
**turns** 59:14
**two** 3:5 16:7 21:2
24:2,4,5 25:3,24
27:18 37:10,11
42:16 50:8,19 51:9
53:15 54:10 64:17
71:11 77:16
**typewriting** 80:8
**typical** 44:22
**typically** 8:12,13

**T-Mobile** 38:2

_____

**U**

**ultimate** 59:4
**unavailable** 11:19
**uncomfortable** 40:17
**understand** 8:9 15:9
19:10 22:3,5,11
23:5 30:21 54:11
59:12,20 61:4 66:11
72:12
**understanding** 13:10
15:14 20:17 21:11
27:19 43:6 57:13
64:10
**understate** 23:5
**understood** 66:5
75:19
**unfair** 40:9 49:9 67:1
67:18
**unfortunate** 8:14
**unfortunately** 4:9
39:1 48:8
**unhappy** 50:11
**United** 18:6 22:25
**upset** 77:9,20,20
**upsetting** 77:15
**urge** 50:20,20
**use** 17:16 28:4 52:9
63:12 76:3,18
**uses** 3:23
**utilized** 28:15

_____

**V**

**variances** 3:9
**various** 75:13
**Verizon** 38:2
**viable** 10:16 48:9
73:18
**view** 13:16 23:19
25:21 26:6 40:5
50:21
**voice** 28:8 51:6
**voices** 27:11
**voluminous** 64:13
65:25
**vote** 6:17 28:7 74:17
74:18

_____

**W**

**wait** 15:19 25:15
**waiting** 43:11
**wake** 75:3
**want** 9:10 12:2 15:21
17:13,25 18:24
21:25 23:6,14,18,21

23:21 24:9 25:16
26:4 30:12 33:13
36:6 40:12,24 42:12
46:24 47:2 54:7
58:9,11 59:18,21
60:5,8 67:7,15 69:7
69:9 74:1 77:13
78:9 79:6,6
**wanted** 4:14 60:16
68:14 75:7,9,14
**wanting** 16:14
**wants** 27:25 58:15
74:7
**war** 65:23
**wasn't** 9:17 14:1
34:13 36:16 42:18
42:21 57:18,20
61:10 76:7
**way** 10:16 14:1 15:12
25:10 27:4 29:18
32:16 33:20 39:25
40:10,20 44:9,11
52:21 55:23 72:7
77:7 78:3
**Wayland** 1:19 3:4,17
73:2 80:7
**website** 70:14
**Wednesday** 15:1
52:18
**week** 44:1,2 52:22
54:17 62:10
**weeks** 21:2 42:5 50:8
50:19 54:22
**weighing** 9:24
**weighs** 42:1
**welcome** 3:3 32:18
**went** 5:6 29:13 31:1
63:11 75:3 77:15,19
79:9
**Weston** 12:25 37:8
37:10,11 57:11 72:7
**we'd** 11:20 15:19
31:15 35:13,14,20
35:21 71:2 74:5
**we'll** 16:21 26:11
63:1 71:7
**we're** 10:20 16:10
17:16 18:18 25:8,14
26:9 28:5 30:15
31:6,13,16 34:17
35:7,16 38:13 44:5
44:6,21 47:16,17
52:3,4,5 55:15
56:16,17,19 59:5,21
60:3,5 68:20 72:24
74:5

we've 13:3,21 16:16
  22:9 24:4,12 25:18
  28:2,9 30:11 33:4
  42:15 45:2 46:4
  48:23 55:22 64:11
what's 7:4 10:14 13:8
  13:12 15:25 47:2
  67:10,17
Wheelock 60:20
WHEREOF 80:11
Where's 4:7
whichever 29:18
who's 77:5
willing 12:21 35:16
  44:5 49:25 50:12
winding 30:16
winter 71:22
wireless 1:8 2:14 3:13
  3:14,15 7:19 11:17
  37:12 45:14
withdraw 75:16
witness 34:12,16
  76:17 80:11
witnesses 33:7,13,14
  34:6
wonder 49:15
wondering 77:6
won't 33:11 79:5
word 16:10
words 63:25
work 13:22 44:5
workers 78:11
worst 17:5
wouldn't 28:18 36:22
  53:9,23,24 70:1
wrangling 55:22
write 16:11,22 50:1
  52:19 54:7 55:12,13
  74:2 76:20
writing 5:20 14:4
  57:3
written 35:13 39:23
  42:16 44:4 58:15
  61:16
wrong 44:19 61:7,15
  61:16 65:2
wrote 16:6 64:1
  66:18

**Y**

yard 3:21
year 6:12
years 24:2
year's 14:13,18
yelling 67:20
yesterday 8:6 77:15

you'd 22:12
you'll 59:5
you're 7:4 18:13
  21:16,19,20,24 22:5
  22:10 32:18 36:7
  40:6 45:16 59:1,8
  60:25 64:2 65:3
  78:1,2 79:13
you've 67:4 68:5

**Z**

ZBA 1:18 71:17,21
  71:22
zoning 1:1 3:4,17
  5:18 7:17 9:9 10:6
  60:24 66:15,21 72:9
  72:10 74:12,14,19
  80:6

**$**

$316.876 38:21
$650 38:23

**#**

#1452S98 80:17

**0**

02141-1764 2:13
02903 2:17
03-34 4:2

**1**

1001 3:23
1001.2 3:23
1002 3:24
1002.1 3:24
1002.1.7 3:24
1002.2 3:24
11th 51:23,25 54:18
  54:21,25 55:25
  58:20 60:14 70:25
  74:22 76:22
12 51:20
120-foot 3:12
121 2:16
131 5:19 7:18 10:4
  30:25 48:10 71:13
  73:8 74:24 75:2
135 3:25 10:23 11:23
  18:9 22:23 24:7,13
  24:20 25:5 26:17
  27:10 31:5 33:2,9
  33:21 36:1 37:4
  61:1 71:24 75:16
  77:17,19
137 22:20 24:13,20

25:5 27:9 33:2,9
  35:25,25 38:23
  41:10 42:18 58:11
  63:7 71:24 77:17,19
  77:19
137's 26:18
14 1:20 3:1 21:21
  35:12 55:5,14
14th 3:3 80:6
145 71:10
150 71:12
151 30:20
17 7:9
17th 7:25 50:23 52:13
  53:1,11 54:13 72:22
18th 3:11 14:23,25
  15:7,11 17:12 20:15
  20:17,18 30:8 31:8
  32:8 34:3,17 35:11
  35:18 36:8 37:2
  38:9,10 39:21 40:1
  41:8,11,15,16 44:7
  44:16 46:13,16,18
  49:19 50:5,7,10,16
  50:23,24 52:12,16
  53:24 54:16 55:24
  57:6 58:12,16,19,25
  59:14 60:6,13 62:24
  70:21,24 71:8 74:22
  79:16
1962 6:21
1965 6:21
198 3:17

**2**

2003 3:12
2004 1:20 3:1,3 7:9
  7:11 80:6,12
201.1.5 3:18
203401 3:18
25th 14:21 52:1 68:12
26th 14:23,25 52:17
  71:3 80:12
27 10:15 72:7
28th 4:17 6:5,10,11
  14:15 51:11

**3**

3 31:20 62:9
30 50:24
30-some-odd-page
  16:7
31st 35:17 39:23
  40:14,21 44:6 46:20

**4**

4th 51:17
43 2:13 53:20

**5**

5/29/09 80:19
50 72:4

**6**

6 3:18
6th 53:5,7
600 38:24

**7**

7:30 44:21
701.1 3:19
702 3:19

**8**

8 24:1
8th 7:11 17:13 54:17
8:00 3:6 15:6 17:11
  39:20 55:24
8:30 75:25
801 3:19
802 3:22

**9**

9 60:20
9:38 79:18
900 60:21
900-foot 60:23