# Table of Contents

1.  Request for Proposals ………………………………………… [1]

2.  Section I.      Overview ……………………………………… [3]

3.  Section II.     Instructions to Proposers ………………………… [3]

4.  Section III.    Evaluation of Proposals ………………………… [4]

5.  Section IV.     Description of Property to be Leased …………… [5]

6.  Section V.      Lease Terms and Conditions …………………… [5]

7.  Section VI.     Minimum Bid Requirements …………………… [5]

8.  Section VII.    Comparative Evaluation Criteria ……………… [5]

9.  Section VIII.   Document Submission Requirements …………… [8]

10. Proposal Form ……………………………………………… [9]

11. Price Summary Form ……………………………………… [11]

12. Disclosure of Beneficial Interests in Real Property Transaction … [12]


13. Certificate on Non-Collusion ……………………………… [15]

14. Certification as to the Payment of Taxes by Contractor ………… [16]

15. Lease Agreement …………………………………………… [17]

16. Exhibit A: Site Map

17. Exhibit B: Legal Description of Property

18. Exhibit C: Planned Wireless Communications Services District Bylaw

19. Exhibit D: Special Conditions

**Legal Notice**

# Request for Proposals
## Lease of Municipal Real Estate
## Wireless Communications Facilities



## Town of Wayland, Massachusetts

Sealed proposals will be received at the Office of the Town Counsel, Town of Wayland, Town Offices, 41 Cochituate Road, Wayland, Massachusetts 01778 until 12:00 noon, on Friday, October 7, 2005, at which time and place they will be publicly opened and read aloud, for the lease of a portion of land located within the Town's proposed Planned Wireless Communications Services District (the "Planned Wireless District") for the construction of a new telecommunications facility, and operation of this facility to support wireless communications activities. Subject to approval by two-thirds vote of a Special Town Meeting[1] which is expected to be held on or before November 2, 2005, the particular portion of land to be leased shall be located within the boundaries of certain Town-owned land on Reeves Hill, so-called, located at 139 Old Connecticut Path and 0 Old Connecticut Path, as shown on Plate 34 of the Atlas of the Town of Wayland, Massachusetts, 1996, numbered as Parcels 34-026, 34-027, and 34-026A (the "Reeves Hill Site"), and as shown on the plan entitled "Town of Wayland Planned Wireless Communications Services Zoning Overlay District," Survey Department, 41 Cochituate Road, Wayland, MA 01778, dated _____, 2005, a copy of which is on file in the office of the Town Clerk.

---

[1] The Wayland Planned Wireless District Zoning Overlay District bylaw, if approved at Special Town Meeting, will be submitted by the Town for approval by the Massachusetts Attorney General within five (5) days following the end of the Special Town Meeting noted above. The adoption of this bylaw is not considered final until such approval is received.

All proposals will remain in effect for a period of ninety (90) calendar days from the deadline for submission, or until a lease has been issued, or this Request for Proposals is cancelled, whichever occurs first.

Proposers may correct, modify or withdraw proposals, in writing only, not less than 48 hours prior to the proposal opening.  Corrections or modifications must be in a sealed envelope when submitted.

The Town of Wayland reserves the right to reject any or all proposals, waive any informalities in the proposal process, and to accept the proposal deemed to be in the best interests of the Town.

Each original proposal must be delivered together with four (4) additional copies in a sealed package, plainly marked "RFP - Proposal for Lease – Wireless Communications Facilities," and addressed to Mark J. Lanza, Esq., Town Counsel,, Town of Wayland, Town Offices, 41 Cochituate Road, Wayland, Massachusetts 01778.

# Request for Proposals
# Lease of Municipal Real Estate

# Wireless Communications Facilities

# Town of Wayland, Massachusetts

## Section I.  Overview

The purpose of this Request for Proposals (the "RFP") is to solicit proposals for the lease of a portion of land located within the proposed Planned Wireless Communications Services District (the "Property"), for the purpose of developing wireless communications facilities through the construction of a new 180' above ground level telecommunications monopole and related facilities within a 50' x 80' (4,000 square foot) equipment compound located within a preferred area immediately south of the existing tower on the property (the preferred area extending for approximately 100 feet to the south and 150 feet to the west from the Southeast corner of the fence surrounding the existing tower (corner nearest the apron and furthest from Old Connecticut Path). Subject to approval by two-thirds vote of a Special Town Meeting[2] which is expected to be held on or before November 2, 2005, the particular portion of land to be leased shall be located within the boundaries of certain Town-owned land on Reeves Hill, so-called, located at 139 Old Connecticut Path and 0 Old Connecticut Path, as shown on Plate 34 of the Atlas of the Town of Wayland, Massachusetts, 1996, numbered as Parcels 34-026, 34-027, and 34-026A , and as shown on the plan entitled "Town of Wayland Planned Wireless Communications Services Zoning Overlay District," Survey Department, 41 Cochituate Road, Wayland, MA 01778, dated _____, 2005, a copy of which is on file in the office of the Town Clerk. The successful proposer is encouraged to seek collocating users for the new telecommunications monopole. This RFP is intended to solicit proposals to lease the Property for such purposes under the terms and conditions described below.

Preference will be given to proposers who agree to comply with the design restrictions of the proposed bylaw that would rezone the Reeves Hill Site  by creating the Wayland Planned Wireless Communications Services Zoning Overlay District (see Exhibit C) and the Town's special conditions set forth in Exhibit D.

Proposers must meet all minimum evaluation criteria, must complete the enclosed proposal form and price summary form, and must include the requested documents. The Town has attempted in this RFP to be as accurate as possible, but is not responsible for any unintentional errors herein.

---

[2] The Wayland Planned Wireless District Zoning Overlay District bylaw, if approved at Special Town Meeting, will be submitted by the Town for approval by the Massachusetts Attorney General within five (5) days following the end the Special Town Meeting noted above. The adoption of this bylaw is not considered final until such approval is received.

## Section II. Instructions to Proposers

1.    Failure to complete the enclosed forms, answer any questions, or provide the required
      documentation will be deemed non-responsive and will result in rejection of the proposal,
      unless the Town determines that such failure constitutes a minor informality, as defined
      in M.G.L. c.30B.

2.    Proposers shall have the opportunity to request clarification and ask questions about this
      RFP during a **proposers' conference that will be held at the Wayland Town Hall, 41
      Cochituate Road, Wayland, MA at 10:00 a.m., Friday, September 30, 2005**. With the
      exception of the opportunity for discussion during the proposers' conference, all requests
      for clarification and any questions about information contained in this RFP must be
      submitted in writing and addressed to:

                        Mark J. Lanza, Esq.
                        Town Counsel
                        Town Building
                        41 Cochituate Road
                        Wayland, MA 01778

      No requests or questions will be accepted after 5:00 p.m. on, Monday, October 3, 2005.
      The name, address, telephone number and fax number of the person to whom such
      additional information should be sent must be provided by the proposer. Answers to
      questions shall be provided in writing to all proposers. Only answers so provided in
      writing may be relied upon by proposers.

3.    One original and four copies of the proposal must be received by the Wayland Town
      Counsel prior to **12:00 noon, on Friday, October 7, 2005.** Proposals must be delivered
      in a sealed package, plainly marked "RFP – Proposal for Lease – Wireless
      Communications Facilities."

4.    Proposers may correct, modify or withdraw proposals, in writing only, not less than 48
      hours prior to the proposal opening. Corrections or modifications must be in a sealed
      envelope when submitted.

5.    Each proposal shall remain in effect for a period of ninety (90) calendar days from the
      deadline for submission, until a lease has been issued, or this RFP is cancelled, whichever
      occurs first.

6.    In the case of a discrepancy on the Price Summary Form between written and numerical
      amounts, the written amount shall prevail.

7.    The awarding of a lease pursuant to this RFP (the "Lease") is subject to approval by the
      Town, at a Special Town Meeting which is expected to be held on or before November
      2, 2005, of (i) a bylaw that would rezone the Reeves Hill Site by creating the Wayland
      Planned Wireless Communications Services Zoning Overlay District (see Exhibit C), (ii)

a change in use of the Reeves Hill Site, and (iii) the lease of a portion of the Reeves Hill Site to allow for the construction and operation of a telecommunications facility thereon. Nothing in this RFP shall be construed as superceding the Town's zoning bylaw governing the installation of wireless communications facilities, to the extent such zoning bylaw would otherwise apply to the Reeves Hill Site.

## Section III.  Evaluation of Proposals

All proposals will be reviewed in accordance with M.G.L. c.30B by the Wayland Town Counsel, and final selection will be made by the Board of Selectmen based on the results of the Wayland Town Counsel's evaluation and analysis of the information and materials required under this RFP.  The Lease will be awarded to a proposer/s who meet/s the evaluation criteria, submit/s the required documents, has/have the demonstrated experience and resources to fulfill the requirements of this RFP, and best meet/s the comparative evaluation criteria.

As set forth in Section VI below, a proposal must be submitted by or in conjunction with an FCC-licensed provider of personal wireless services.  The Town will reject any proposal submitted by a tower company or other person not in conjunction with an FCC-licensed provider of personal wireless services on the ground that such a proposal is speculative and not in the best interests of the Town.

The Town will award a Lease to one responsive and responsible proposer or set of joint proposers.  Proposers will have thirty (30) days from the time they receive notice from the Town that their offer has been accepted to execute the Lease.  If the parties fail to execute a Lease within thirty (30) days of notice of award, the Town may select the next most advantageous offer. **The Lease in substantial form is attached to this RFP.**

The Lease will not become binding on the Town until after Town Meeting approves (i) the bylaw that would rezone the Reeves Hill Site by creating the Wayland Planned Wireless Communications Services Zoning Overlay District (see Exhibit C), (ii) the change in use of the Reeves Hill Site, and (iii) the lease of a portion of the Reeves Hill Site to allow for the construction and operation of a telecommunications facility thereon.

The Town reserves the right to negotiate any and all aspects of the proposed lease terms and conditions, or to reject any and all proposals if it determines that it is in the best interest of the Town to do so.  The Town also reserves the right to waive any informalities in the proposal process and to accept the proposal(s) deemed to be in the best interest of the Town.

## Section IV.  Description of Property to be Leased

Subject to approval by two-thirds vote of a Special Town Meeting which is expected to be held on or before November 2, 2005, the particular portion of land to be leased shall be located within the boundaries of certain Town-owned land on Reeves Hill, so-called, located at 139 Old Connecticut Path and 0 Old Connecticut Path, as shown on Plate 34 of the Atlas of the Town of Wayland, Massachusetts, 1996, numbered as Parcels 34-026, 34-027, and 34-026A, and as shown on the plan entitled "Town of Wayland Planned Wireless Communications Services

Zoning Overlay District," Survey Department, 41 Cochituate Road, Wayland, MA 01778, dated _____, 2005, a copy of which is on file in the office of the Town Clerk.

Attached is a site map (the "Site Map") that shows the location of various existing structures currently being used by the Wayland Water, Police and Fire Departments, e.g., water tanks, pump house, and emergency communications tower (see Exhibit A). The Site Map also shows the preferred location for the 4,000 square foot equipment compound (the "Preferred Lease Location"), as determined by the Wayland Board of Water Commissioners, in which the monopole and related support structures could be constructed, and an area in which no construction may occur (the "Restricted Area"). Use of an area other than the Preferred Lease Location will require the advance written approval of the Wayland Board of Water Commissioners, which approval will not be unreasonably withheld.

All site analysis, planning, and construction activity shall be undertaken in a manner that enables the Town to continue to operate various functions, unencumbered by said activities, e.g. use by the Water, Police and Fire Departments, subject to (i) the removal of the existing emergency communications tower and any related foundations (for the purposes of this document removal of foundations means removal of material protruding above the surface) on which such tower is currently located, and (ii) the relocation of the antenna located thereon (or new antenna to be supplied by the Town at its sole expense) to the new monopole, along with any other equipment related thereto, in the event the Town has requested, in writing, that such removal and relocation occur.

## Section V.  Lease Terms & Conditions

The term of the Lease shall be for an initial term of ten (10) years, with eight renewal terms of five (5) years each (at the Lessee's option) for a total of fifty (50) years. Conditions are as provided in the attached Lease.

## Section VI.  Minimum Bid Requirements

**In order to be deemed responsive, all proposers and proposals must conform to the following minimum bid requirements:**

- **Minimum Proposer Requirements:**

    Any Proposer submitting a bid shall either:

    (a)    Demonstrate that it is licensed by the Federal Communications Commission to provide personal wireless services to the Town of Wayland (an "FCC licensed carrier");

    (b)    Demonstrate that the proposal is made jointly with an FCC licensed carrier; or

    (c)    Demonstrate that it has an executed agreement to lease space on the tower proposed in this RFP to an FCC licensed carrier.

6

*Proposals from non-FCC licensed carriers, that do not meet the requirements set forth in (b) or (c) above will be rejected as non-responsive.*

- **Minimum Rent Requirements:**

  For a bid to be considered conforming, the rent proposal must meet or exceed the following minimum rent requirements:

  | | |
  |---|---|
  | Years 1 through 5: | $27,000.00/year |
  | Years 6 through 10: | $27,000.00/year plus annual escalation of 3% per year |
  | Year 11: | $35,000.00/year |
  | Year 12 and Thereafter: | $35,000.00/year plus annual escalation of 3% per year |

  The minimum base rent shall include space for up to three collocated FCC licensed carriers. Rent shall be paid monthly in advance.

- **Minimum Additional Collocation Rent:**

  In the event that a fourth wireless communications carrier collocates at the Reeves Hill Site, beginning in the year that such carrier collocates at the Reeves Hill Site (the "Collocation Year), the successful bidder shall pay to the Town a minimum of:

  | | |
  |---|---|
  | Collocation Years 1 through 5: | $8,000.00/year |
  | Collocation Years 6 through 10: | $8,000.00/year plus annual escalation of 3% |
  | per year | |
  | Collocation Year 11: | $9,500.00/year |
  | Collocation Year 12 and Thereafter: | $9,500.00/year plus annual escalation of 3% |
  | per year | |

- **Local Property Tax**

  The Town-owned real property is exempt from local real estate taxes. The Town intends to charge, and the Proposer shall agree to pay, an annual local property tax on the tower facility equal to the actual construction cost of the tower facility, including, but not limited to, the foundation, monopole, and equipment shelters, times the ordinary mil rate in effect for commercial property in the Town as a whole, together with the CPA surcharge, if any, then in effect, or such lesser amount as may be determined by the Wayland Board of Assessors in accordance with law. No other local property tax shall be charged or payable.

- **Removal of Existing Emergency Communications Tower**

  For a bid to be conforming, the Proposer must agree at its sole expense to remove, within 90 days of the cessation of the use, the existing emergency communications tower (not including its foundation) and, at the Town's expense, relocate the antenna located thereon

(or new antenna to be supplied by the Town at its sole expense) to the new monopole along with any other equipment related thereto, in the event the Town requests, in writing, that such tower be removed and antenna be relocated, provided that such antennas do not interfere with the provision of wireless communications by the Proposer or any of the wireless communication carriers subleasing space from the Proposer. To be effective, the Town's written request must be presented to the Proposer no later than 10 days following the execution of the Lease.

**Special Conditions**

The Town has proposed, and the Proposer shall agree to, a list of special conditions that must be met, in addition to the conditions set forth in the Wayland Planned Wireless Communications Services Zoning Overlay District bylaw, in connection with the construction, operation and removal of the telecommunications facility proposed for the Reeves Hill Site. A copy of the special conditions is attached as an Exhibit hereto.

## Section VII.  Comparative Evaluation Criteria

The purpose of information requested in this Section is to assist the Town in evaluating each proposal. Responses should be complete and full so as to allow evaluation of the following criteria:

1.    Total Annual Net Lease Fee, and Collocation Fee, During the Lease Term and Renewal Terms.

2.    Financial Strength and Credit Worthiness

A Highly Advantageous rating will be given to proposers who, in the sole discretion of the Town, have more than sufficient assets to enter into the Lease and make payments for the total annual lease value set forth in the proposal.

An Advantageous rating will be given to proposers who, in the sole discretion of the Town, have sufficient assets to enter into the Lease.

An Unacceptable rating will be given to proposers who, in the sole discretion of the Town, do not have sufficient assets to enter into the Lease.

For purposes of this criteria, assets of a parent company or affiliate(s) will be considered if such assets are available to support the funding of the payments under the Lease.

3.    Least Amount of Impact to Environmentally Sensitive Areas

A Highly Advantageous rating will be given to proposers whose proposed location and plans for their facilities have no impact on the Town-owned conservation land abutting the proposed Planned Wireless Communications Services District or any environmentally sensitive area currently existing on the Reeves Hill Site, e.g., wetlands, streams, etc.

8

An Advantageous rating will be given to proposers whose proposed location and plans for their facilities potentially impact the Town-owned conservation land abutting the proposed Planned Wireless Communications Services District or any environmentally sensitive area currently existing on the Reeves Hill Site, e.g., wetlands, streams, etc., provided such proposers demonstrate they have the experience, resources, and ability to engineer, design, and construct the site in a manner that mitigates those impacts.

An Unacceptable rating will be given to proposers whose proposed location and plans will impact the Town-owned conservation land abutting the proposed Planned Wireless Communications Services District or any environmentally sensitive area currently existing on the Reeves Hill Site, e.g., wetlands, streams, etc., in a manner that cannot or will not be mitigated.

4.    Most Aesthetically Appropriate Location and Use of the Property

A Highly Advantageous rating will be given to proposers who propose to locate their facilities in the Preferred Lease Location or whose proposed location and plans for their facilities result in the most aesthetically appropriate use of the site by minimizing the potential visual impact of the proposed facilities, and are consistent with the requirements of the Town's proposed Planned Wireless Communications Services District Bylaw and the special conditions contained in Exhibit D hereto. Design measures taken to minimize the visual impact of the equipment will contribute to a Highly Advantageous rating.

An Advantageous rating will be given to proposers whose proposed location is not in the Preferred Lease Location and whose plans for the Property comply with the requirements of the Town's proposed Planned Wireless Communications Services District Bylaw and the special conditions contained in Exhibit D hereto, but which use standard installation techniques, with only modest efforts in the area of mitigating visual impacts.

An Unacceptable rating will be given to proposers whose proposed location is not in the Preferred Location and whose plans for the Property are not for wireless communication tower purposes and/or otherwise do not comply with the Town's proposed Planned Wireless Communications Services District Bylaw, the special conditions contained in an Exhibit hereto, and the provisions of this RFP.

5.    Least Amount of Impact to Other Town Facilities and Operations

A Highly Advantageous rating will be given to proposers whose proposed location and plans for their facilities have no adverse impact on Town facilities located within and operations conducted on the Property, subject to (i) the removal of the existing emergency communications tower and any related foundations on which such tower is currently located (for the purposes of this document removal of foundations means removal of material protruding above the surface), and (ii) the relocation of the antenna located thereon (or new antenna to be supplied by the Town at its sole expense) to the new monopole, along with any other equipment related thereto, in the event the Town has

requested, in writing, that such removal and relocation occur. The Water, Police and Fire Departments currently conduct certain activities on the Property within the proposed Planned Wireless Communications Services Wireless District.

An Advantageous rating will be given to proposers whose proposed location and plans for their facilities potentially have an indirect adverse impact on Town facilities located within and operations conducted on the Property (other than the removal of the existing emergency communications tower and any related foundations on which such tower is currently located, and the relocation of the antenna located thereon (or new antenna to be supplied by the Town at its sole expense) to the new monopole, along with any other equipment related thereto, in the event the Town has requested, in writing, that such removal and relocation occur, but for which the proposers propose to take steps to mitigate the impact on such facilities and operations.

An Unacceptable rating will be given to proposers whose proposed location and plans directly and adversely impact Town facilities located within and operations conducted on the Property (other than the removal of the existing emergency communications tower and any related foundations on which such tower is currently located, and the relocation of the antenna located thereon (or new antenna to be supplied by the Town at its sole expense) to the new monopole, along with any other equipment related thereto, in the event the Town has requested, in writing, that such removal and relocation occur), and for which no steps can or will be taken to mitigate the impact on such facilities and operations.

6.     Technical Expertise and Capabilities and Documentation of Need

A Highly Advantageous rating will be given to proposers who, in the Town's sole discretion, have significant technical expertise and capabilities for the construction, operation and maintenance of wireless communications towers, antennas, and other equipment. In particular, this highest rating will be reserved for proposers whose experience, professional licenses and accreditations, and professional references demonstrate that the offeror is capable of developing a specialized approach to the operation and maintenance of the wireless communication tower, antennas and communications equipment in a manner that is suitable for this Lease. To obtain this rating, proposers must also provide detailed documentation of the need for such facilities to be located at this site.

An Advantageous rating will be given to proposers who, in the Town's sole discretion, have some technical expertise and capabilities for the operation and maintenance described above, and who provide adequate documentation of need in Wayland for these facilities.

An Unacceptable rating will be given to proposers who, in the Town's sole discretion, have little or no specific technical expertise or capabilities for operation and maintenance described above and who do not adequately describe the need for these facilities to be located in Wayland.

7.    Experience with Similar Projects

A Highly Advantageous rating will be given to proposers who, in the Town's sole discretion, have significant experience in the development and operation of facilities that are similar in nature, size, and scope. In particular, this highest rating will be reserved for proposers who have significant experience in dealing with municipalities and leasing of public land, who have developed sites in Massachusetts, and who have experience using design methods and techniques to minimize visual impacts of the proposed equipment, including the mounting and attaching of antennas to monopole towers.

An Advantageous rating will be given to proposers who, in the Town's sole discretion, have experience in the development and operation of similar projects.

An Unacceptable rating will be given to proposers who, in the Town's sole discretion, have little or no experience in the development and operation of similar projects.

8.    Demonstrated Cooperation with the Town of Wayland

A Highly Advantageous rating will be given to proposers whose proposal, in the Town's sole discretion, demonstrates a significant level of cooperation with the Town to resolve disputes involving the siting of proposed wireless communications facilities, to identify appropriate locations for such facilities on Town-owned property, to provide needed wireless communications coverage both to highly-traveled routes in town and to established populated areas of town, including the so-called Mainstone Farm area, and to minimize the number of wireless communications facilities in the Town.

An Advantageous rating will be given to proposers whose proposal, in the Town's sole discretion, demonstrates a modest level of cooperation with the Town to resolve disputes involving the siting of proposed wireless communications facilities, to identify appropriate locations for such facilities on Town-owned property, to provide needed wireless communications coverage both to highly-traveled routes in town and to established populated areas of town, including the so-called Mainstone Farm area, and to minimize the number of wireless communications facilities in the Town.

An Unacceptable rating will be given to proposers whose proposal, in the Town's sole discretion, demonstrates little or no cooperation with the Town to resolve disputes involving the siting of proposed wireless communications facilities, to identify appropriate locations for such facilities on Town-owned property, to provide needed wireless communications coverage both to highly-traveled routes in town and to established populated areas of town, including the so-called Mainstone Farm area, or to minimize the number of wireless communications facilities in the Town.

## Section VIII.  Document Submission Requirements

The following documents must accompany the proposal.  Failure to provide any of the requested documents, or their substantial equivalent, may result in the determination that the proposer is non-responsive.

1.     Proposal Form and Price Summary Form

2.     Disclosure of Beneficial Interest Form (M.G.L. c.7, §.40J)

3.     Certificate of Non-Collusion

4.     Tax Certification

5.     Evidence that the individual signing executing the Proposal Form and Price Proposal is authorized to contractually bind the proposer.

6.     A copy of proposer's most recent audited, if available, or unaudited annual and quarterly financial statements, together with such statement for any parent company or affiliate whose assets will be made available to fund the payments under the Lease.  For a non-publicly traded entity, the awarding authority shall keep confidential any confidential business information so designated pursuant to the public records laws;

7.     A description of proposer's technical expertise and capabilities pertinent to this project, including a list of proposer's professional licenses, accreditations, and references pertinent to the proposer's performance and experience;

8.     A summary of proposer's direct experience with similar projects, including a description of proposer's business and its development and operation of like projects; and

9.     A list of three references, including contact name and telephone number.  The Town may contact these references in determining whether the proposer is responsible.

# PROPOSAL FORM
## Lease of Municipal Real Estate
## Wireless Communications Facilities

TOWN OF WAYLAND
Town Offices
41 Cochituate Road
Wayland, Massachusetts 01778

1.    Name of Person or Business Submitting Proposal:

_____

Address:

_____

_____

_____

2.    Please check off one of the following:

( )    If a corporation, State of Incorporation:

_____

( )    If a partnership, names of partners:

_____

_____

_____

( )    Individual

( )    Other: _____

13

_____
Signature

_____
Name of Person Signing

_____
Title

_____
Name of Business

_____
Address

_____
Federal Identification Number

# PRICE SUMMARY FORM
## Lease of Municipal Real Estate
## Wireless Communications Facilities

TOWN OF WAYLAND
Town Offices
41 Cochituate Road
Wayland, Massachusetts 01778

This price summary form must be submitted with the proposer's proposal. Failure to adhere to this instruction will result in disqualification of your proposal.

Proposer's Information:

Name of Offeror: _____

Base Annual Rent (including up to three collocators):

| Term | Minimum Required Bid | Proposer's Bid |
|---|---|---|
| Years 1-5 | $27,000/year | |
| Years 6-10 | $27,000/year + 3%/year | |
| Year 11 | $35,000/year | |
| Years 12 and Thereafter | $35,000/year + 3%/year | |

Collocation Rent (in the event of a fourth collocator):

| Term | Minimum Required Bid | Proposer's Bid |
|---|---|---|
| Years 1-5 | $8,000/year | |
| Years 6-10 | $8,000/year + 3%/year | |
| Year 11 | $9,500/year | |
| Years 12 and Thereafter | $9,500/year + 3%/year | |

## DISCLOSURE OF BENEFICIAL INTERESTS IN REAL PROPERTY TRANSACTION

This form contains a disclosure of the names and addresses of all persons with a direct or indirect beneficial interest in the real estate transaction described below. This form must be filed with the Massachusetts Division of Capital Asset Management, as required by M.G.L. c.7, §40J, prior to the conveyance of or execution of a lease for the real property described below. Attach additional sheets if necessary.

1.    Public agency (as defined in M.G.L. c.7, §39A) involved in this transaction:

    _____

2.    Complete legal description of the property:




3.    Type of Transaction: __ Sale        __ Lease or rental for  [term]

4.    Seller(s) or Lessor(s):
      Purchaser(s) or Lessee(s):

5.    Names and addresses of all persons who have or will have a direct or indirect beneficial interest in the real property described above. Note: If a corporation has, or will have a direct or indirect beneficial interest in the real property, the names of all stockholders must also be listed except that, if the stock of the corporation is listed for sale to the general public, the name of any person holding less than ten percent of the outstanding voting shares need **not** be disclosed.


Name                                    Address

_____               _____

_____               _____

_____               _____

5. Continued

None of the persons listed in this section is an official elected to public office in the Commonwealth of Massachusetts or an employee of the Division of Capital Asset Management, except as noted below:

Name                                          Title or position

_____                    _____

_____                    _____

6.      This section must be signed by the individual(s) or organizations(s) entering into this real property transaction with the public agency named in item 1.  If this form is signed on behalf of a corporation, it must be signed by a duly authorized officer of that corporation.

The undersigned acknowledges that any changes or additions to item 4 of this form during the term of any lease or rental will require filing a new disclosure with the Division of Capital Asset Management within 30 days following the change or addition.

The undersigned swears under the pains and penalties of perjury that this form is complete and accurate in all respects.

Signature:        _____

Date:             _____

## CERTIFICATE OF NON-COLLUSION

The undersigned certifies under penalties of perjury that the bid or proposal submitted relative to this project is in all respects bona fide, fair and made without collusion or fraud with any other person, joint venture, partnership, corporation or other business or legal entity.

_____

(Name of person signing bid)


_____

(Company)


_____

(Date)

## CERTIFICATION AS TO PAYMENT OF TAXES

Pursuant to M.G.L. c.62C, §49A, I hereby certify under the

pains and penalties of perjury that _____ has complied with all laws
                                              (Offeror)

of the Commonwealth of Massachusetts relating to the payment of taxes and has filed all state

tax returns and paid all State taxes required under law.


_____                    _____
Date                                   Signature of Authorized
                                       Representative of Offeror


_____            _____
Social Security Number or              Title
Federal ID Number of Contractor

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("Agreement"), dated as of the date below, is entered into by the TOWN OF WAYLAND, a Massachusetts Municipal Corporation, with a Tax ID# of _____, having its principal office at the Wayland Town Offices Building, 41 Cochituate Road, Wayland, MA 01778 (hereinafter referred to as "Landlord") and _____, its usual place of business at _____ (hereinafter referred to as "Tenant").

## BACKGROUND

Landlord owns that certain plot, parcel or tract of land, together with all rights and privileges arising in connection therewith, on Reeves Hill, so-called, located at 139 Old Connecticut Path and 0 Old Connecticut Path, as shown on Plate 34 of the Atlas of the Town of Wayland, Massachusetts, 1996, numbered as Parcels 34-026, 34-027, and 34-026A, , as identified in Book 4946, Page 499; Book 12779, Page 381 and Book 11357, Page 203, at the Middlesex County South Registry of Deeds (collectively "Property").  Tenant desires to use a portion of the Property in connection with its federally leased licensed communications business.

The parties agree as follows:

1.    **LEASE OF PREMISES.**        Landlord leases to Tenant a certain portion of the Property containing approximately 4,000 square feet square feet including the air space above such room/cabinet/ground space as described on attached **Exhibit 1**, together with unrestricted access for Tenant's uses from Old Connecticut Path or, if such access is unavailable, the nearest public right-of-way along the Property to the Premises as described on attached Exhibit 1 (collectively, "Premises").

2.    **PERMITTED USE.**    (a) Tenant may erect and maintain on the Premises improvements, personal property, and facilities, including, but not limited to a new telecommunications tower, structural tower base(s), radio transmitting and receiving antennas, communications equipment, equipment cabinets

and/or shelter, and related facilities for the transmission and reception of communications signals and the installation, maintenance, operation, repair and replacement of its communications fixtures and related equipment, cables, accessories and improvements (collectively, the "Communication Facility"); such use includes the right to test, survey and check title on the Property and any other items necessary to the successful and secure operation of the Communication Facility; Tenant further has the right but not the obligation to add, modify and/or replace equipment in order to be in compliance with any current or future federal, state or local mandated application, including, but not limited to, emergency 911 communication services, at no additional lease cost to Tenant or other additional cost to Landlord (collectively, the "Permitted Use"). Landlord and Tenant agree that Exhibit 1 shows the initial location for the installation of Tenant's Communication Facility and that it does not limit Tenant's rights under this paragraph. Landlord's execution of this Agreement will signify Landlord's approval of Exhibit 1. Tenant has the right to install and operate transmission cables from the equipment shelter or cabinet to the antennas, electric lines from the main feed to the equipment shelter or cabinet and communication lines from the main entry point to the equipment shelter or cabinet, and to make Property improvements, alterations, or additions appropriate for Tenant's use ("Tenant Changes"). Tenant Changes include the right to construct a fence around the Premises and undertake any other appropriate means to secure the Premises. Tenant agrees to comply with all applicable governmental laws, rules, statutes and regulations, relating to its use of the Communication Facility on the Property and also agrees to comply with the provisions contained in the Wayland Planned Wireless Communication Services District Zoning Bylaw contained in the attached Exhibit [3] not in derogation of any applicable federal law or federal Court Judgment and the Landlord's special conditions contained in the attached Exhibit [4]. Tenant has the right to modify, supplement, replace, and/or upgrade the equipment at any time during the term of this Agreement. Tenant will be allowed to make such alterations to the Property as are required to accomplish Tenant's Changes or to insure that Tenant's Communication Facility complies with all applicable federal, state or local laws, rules or regulations, permits, and approvals.

21

(b)      Construction Standards.  Any and all improvements to be constructed, erected or maintained on or at the Property shall be constructed, erected and maintained in accordance with plans and specifications submitted to and approved by the Town, through its Building Commissioner, and in accordance with local building permits. Subject to and without waiver of Tenant's rights with respect to any lawful pre-existing non-conforming or other grandfathered or exempt status of its Permitted Use of the Premises and the Property and with respect to any court orders with respect to its use or facility, the Tenant's construction, operation and maintenance of any and all improvements on or at the Property shall at all times comply with all lawful and applicable federal, state, and local laws (including the local Zoning Bylaw), rules and regulations as they may be enacted or amended from time to time, including, but not limited to, FCC and FAA regulations. The Tenant will be responsible for obtaining, at its sole cost and expense, all approvals, permits and Leases necessary for the construction of any and all improvements on or at the Property, and the operation and maintenance of said improvements and the Property, including, without limitation, special permits required by local authorities, state authorities, and approvals and authorizations required by the FCC and FAA.

(c)      Construction and Other Costs.

(i) The Tenant will pay all costs and expenses incurred in connection with the construction, maintenance and operation of the Communication Facility and any and all related improvements on or at the Property, including utility connections and the cost of electricity and other utilities the Tenant consumes in its construction, maintenance and operational activities at the rate charged by the servicing utility company, for which the Tenant will make payments directly to said company. The Tenant shall perform all construction, maintenance and operations activities on or at the Property in compliance with all applicable laws, ordinances, codes and regulations, as the same may be administered by authorized governmental officials; and

(ii) Tenant shall remove, at its sole expense, within 90 days of the cessation of the use the existing emergency communications tower, the emergency communications tower

and any related foundation(s) on which such tower is currently located (for the purposes of this document removal of foundations means removal of material protruding above the surface), and, at the Landlord's sole expense, relocate the antenna located thereon (or new antenna to be supplied by the Landlord, at its sole expense) to the new monopole along with any other equipment related thereto, provided that (x) it receives a written request from the Landlord to do so no later than 10 days following the execution of this Agreement and (y) such antennas do not interfere with the provision of wireless communications by Tenant or any of the wireless communication carriers subleasing space from Tenant.

(d)     Removal.    The Tenant shall be responsible for removal of all portions of the Communications Facility in accordance with Section 14 herein.

**3.    TERM.**        The Initial Lease Term will be ten (10) years ("Initial Term"), commencing upon the Commencement Date, as defined below.  The Term will terminate on the last day of the month in which the tenth annual anniversary of the Commencement Date occurred.  The Lease shall automatically renew for up to eight (8) additional periods of five years each ("Renewal Term") upon the same terms and conditions unless the Tenant notifies the Landlord in writing of Tenant's intention not to renew this Agreement at least sixty (60) days prior to the expiration of the existing Term.

If, at least sixty (60) days prior to the end of the eighth Renewal  Term, either Landlord or Tenant has not given the other written notice of its desire that the term of this Agreement end at the expiration of the such term, then upon the expiration of such term this Agreement shall continue in force upon the same covenants, terms and conditions for a further term of one (1) year, and for annual terms thereafter until terminated by either party by giving to the other written notice of its intention to so terminate at least six (6) months prior to the end of any such annual term.  Monthly rental during such annual terms shall be equal to the rent paid for the last month of the extended term.

**4.    RENT.**            Commencing on the date that Tenant commences construction (the "Commencement Date"), Tenant will pay the Landlord a monthly rental payment as provided for in the

Schedule of Rent attached hereto as Exhibit 2, plus the taxes identified below, to Landlord, at the address set forth above. Rent will be prorated for any partial month. Rent must be received by Landlord within the first three business days of the beginning of each month.

Tenant shall pay as additional Rent any increase in real property taxes levied against Premises which are directly attributable to Tenant's use of the Premises (but not, however, taxes attributable to periods prior to the Commencement Date [such as roll-back or greenbelt assessments]) if Landlord furnishes proof of such increase to Tenant]. As set forth in the RFP for the proposed facility, the annual local property tax on the tower facility, including, but not limited to, the foundation, monopole, and equipment shelters, shall not exceed the actual construction cost of the tower facility times the ordinary mil rate in effect for commercial property in the Town as a whole, together with the CPA surcharge, if any, then in effect. No other local property tax shall be charged or payable. In the event that Landlord fails to pay when due any taxes affecting the Premises or the easements granted herein, Tenant shall have the right but not the obligation to pay such taxes and deduct the full amount of the taxes paid by Tenant on Landlord's behalf from future installments of Rent.

5.    **LICENSE.**    Landlord hereby grants to Tenant for the duration of this Lease or any extensions thereof, an unimpaired, nonexclusive license in and over the Site from Old Connecticut Path for reasonable access thereto and to the source of electric and telephone facilities provided therefrom (collectively the "Access and Utility License Area"). Notwithstanding anything to the contrary in this Agreement, any revocation or termination by Landlord during the term of this Agreement of any such license for access and/or utilities shall be a material breach of this Agreement, and Tenant shall have the right to terminate this Agreement. Tenant will have access to the Premises and the Access and Utility License Area twenty-four (24) hours per day, seven (7) days per week. Notwithstanding anything to the contrary in this Agreement, Landlord hereby agrees that, to the extent an easement is required by any utility company in order to provide utility service to Tenant at the Premises, and Landlord is unable or unwilling to promptly obtain the necessary approvals to grant such easement(s), then Tenant may terminate this Agreement upon written notice to Landlord, without liability.

6.    **APPROVALS.** (a)    Landlord agrees that Tenant's ability to use the Premises is contingent upon its suitability for Tenant's intended use and Tenant's ability to obtain all governmental leases, permits, approvals or other relief required of or deemed necessary or appropriate by Tenant for its use of the Premises, including without limitation applications for zoning variances, zoning ordinances, amendments, special use permits, construction permits, and Conservation Commission approval and approval by DEP (collectively referred to as "Governmental Approvals"). Landlord authorizes Tenant to prepare, execute and file all required applications to obtain Governmental Approvals for Tenant's use under this Agreement and agrees to reasonably assist Tenant with such applications, except with respect to local permits and/or approvals.

(b)    Tenant has the right to obtain, at Tenant's sole cost and expense, a title report or commitment for a Leasehold title policy from a title insurance company of its choice and to have the Property surveyed by a surveyor of its choice.

(c)    Tenant may also obtain, at Tenant's sole cost and expense, soil boring, percolation, engineering procedures, environmental investigation or other tests or reports (collectively the "Tests") on, over, and under the Property, necessary to determine if the Tenant's use of the Premises will be compatible with Tenant's engineering specifications, system, design, operations or Governmental Approvals. The Tenant will be responsible for scheduling and performing all reasonably necessary tests and inspections, at its sole cost and expense, to determine whether the Property is appropriate for the Tenant's use for wireless communications purposes. Tenant shall be responsible for restoring the Property to its condition as existed prior to said testing and inspections.  The Tenant will indemnify the Town for all costs, claims and damages relating to said tests and inspections.  The Tenant will provide at least forty-eight hours advance notice of the proposed tests to the Town Administrator of the Town of Wayland.

7.    **TERMINATION.**    This Agreement may only be terminated, without penalty or further liability, as follows:

(a)    by either party on thirty (30) days prior written notice, if the other party remains in default under Paragraph 16 of this Agreement after the applicable cure periods;

(b)    by Tenant upon written notice, if Tenant is unable to obtain, or maintain, any required approval(s) or the issuance of a Lease or permit by any agency, board, court or other governmental authority necessary for the construction or operation of the Communication Facility as now and hereafter intended by Tenant; if a court order voids this lease or if title or other legal impediments prevent construction or operation or the Communication Facility as now and hereafter intended by Tenant; if the Town fails to take all necessary actions to authorize construction of the site by November 15, 2005 (except to the extent Tenant is responsible for any delay); or if Tenant determines in its sole discretion that the cost of obtaining or retaining the same is commercially unreasonable, provided, however, that if Tenant chooses to terminate the lease at its discretion, it shall be subject to payment of a termination fee in accordance with the provisions of (c) below;

(c)    by Tenant on ninety (90) days written notice for any reason, other than (a) or (b) above, or in paragraph 8, below, so long as Tenant pays Landlord a termination fee equal to twelve (12) months of base rent, at the then current rate, or the total of the remaining term's rent if the remaining term is less than twelve (12) months.

**8.    INSURANCE.**    Tenant will carry during the Term, at its own cost and expense, the following insurance: (i) "All Risk" property insurance for its property's replacement cost; (ii) commercial general liability insurance with a minimum limit of liability of $5,000,000 combined single limit for bodily injury or death/property damage arising out of one occurrence; (iii) Workers' Compensation Insurance as required by law; and (iv) obtain a performance bond or other form of financial security, in an amount consistent with a removal cost estimate stamped by a Massachusetts registered professional engineer and deposit it with the Town, to be used for removal and site-restoration costs in the event that the Tenant fails to remove the Communications Facility as provided for in Section 14 of this Agreement. Tenant will cause its general liability insurance carrier to list the Landlord as an additional insured on that policy. Tenant shall make reasonable efforts to provide an updated insurance certificate prior to the expiration of

its general liability insurance policy. Failure to provide such an updated certificate will not be grounds for termination.

9.    **INTERFERENCE.**    (a)    Landlord will provide Tenant with a list of all existing radio frequency user(s) and their frequencies on the Property to allow Tenant to evaluate the potential for interference. Tenant warrants that its use of the Premises will not interfere with existing radio frequency users on the Premises as long as the existing radio frequency user(s) operate and continue to operate within their frequencies and in accordance with all applicable laws and regulations.

(b)    Landlord will not grant, after the date of this Agreement, a lease, license, or any other right to any third party for the use of the Property , if such use may in any way adversely affect or interfere with Tenant's Communications Facility. Landlord will notify Tenant and receive Tenant's written approval, which approval shall not be unreasonably withheld, prior to granting any third party the right to install and operate communications equipment on the Property. Nothing contained herein will restrict Tenant or its successors and assigns from installing and modifying its communications equipment pursuant to the terms of this Agreement.

( c)    Landlord will not use, nor will Landlord permit its employees, tenants, invitees or agents to use, any portion of the Property in any way which interferes with the operations of Tenant or the rights of Tenant under this Agreement. Landlord will cause such interference to cease upon not more than forty-eight (48) hour notice from Tenant. In the event any such interference to Tenant's operations does not cease within the aforementioned cure period then the parties acknowledge that Tenant will suffer irreparable injury, and therefore, Tenant will have the right, in addition to any other rights that it may have at law or in equity, for Landlord's breach of this Agreement, to elect to enjoin such interference or to terminate the Agreement upon notice to Landlord.

10.    **INDEMNIFICATION.**    (a) To the extent permitted by law, Tenant agrees to indemnify, defend and hold Landlord harmless from and against any injury, loss, damage or liability (or any claims in respect of the foregoing), costs or expenses (including reasonable attorneys' fees and court costs) arising directly out of the installation, use, maintenance, repair or removal of the Communication Facility

27

or the breach of any provision of this Agreement, except to the extent attributable to the negligent or intentional act or omission of Landlord, its employees, agents or independent contractors.

(b)        To the extent permitted by law, Landlord agrees to release and hold Tenant harmless from and against any and all injury, loss, damage or liability (or any claims in respect of the foregoing), costs or expenses (including reasonable attorneys' fees and court costs) arising directly out of the actions or failure to act of Landlord or its employees or agents, or the breach of any provision of this Agreement, except to the extent attributable to the negligent or intentional act or omission of Tenant, its employees, agents or independent contractors.

(c) Notwithstanding anything to the contrary in this Agreement, each of Tenant and Landlord hereby waives any claims that they may have against the other with respect to consequential, incidental or special damages.

(d) The provisions of this Section shall survive the termination of this Agreement.

**11.    WARRANTIES.**        (a) Tenant and Landlord each acknowledges and represents that it is duly organized, validly existing and in good standing and has the right, power and authority to enter into this Agreement and bind itself hereto through the party set forth as signatory for the party below.

(b)        Landlord represents and warrants that: (i) Landlord solely owns the Property as a legal lot in fee simple, or controls the Property by lease, unencumbered by any liens, restrictions, mortgages, covenants, conditions, easements, leases, agreements of record or not of record, which would adversely affect Tenant's use and enjoyment of the Premises under this Agreement; (ii) as long as Tenant is not in default then Landlord grants to Tenant sole, actual, quiet and peaceful use, enjoyment and possession of the Premises; and (iii) its execution and performance of this Agreement will not violate any laws, ordinances, by-laws, covenants, or the provisions of any mortgage, lease or other agreement binding on the Landlord.; and (iv) if the Property is or becomes encumbered by a deed to secure a debt, mortgage or other security interest, Landlord will use best efforts to provide promptly to Tenant a mutually agreeable Subordination, Non-Disturbance and Attornment Agreement.

**12. ENVIRONMENTAL.** (a) Landlord and Tenant agree that each will be responsible for compliance with any and all environmental and industrial hygiene laws, including any regulations, guidelines, standards, or policies of any governmental authorities regulating or imposing standards of liability or standards of conduct with regard to any environmental or industrial hygiene condition or matters as may now or at any time hereafter be in effect, that are now or were related to that party's activity conducted in, or on the Property.

(b) Tenant agrees to hold harmless and indemnify Landlord from and to assume all duties, responsibilities, and liabilities at is sole cost and expense, for all duties, responsibilities and liability (for payment of penalties, sanctions, forfeitures, losses, costs, or damages) and for responding to any action, notice, claim, order, summons, citation, directive, litigation, investigation or proceeding arising solely as the result of Tenant's failure to comply with any environmental or industrial hygiene law, including without limitation any regulations, guidelines, standards or policies of any governmental authorities regulating or imposing standards of liability or standards of conduct with regard to any environmental or industrial hygiene conditions or matters as may now or hereafter be in effect.

(c) Landlord agrees to hold harmless Tenant from and to assume all duties, responsibilities, and liabilities at is sole cost and expense, for all duties, responsibilities and liability (for payment of penalties, sanctions, forfeitures, losses, costs, or damages) and for responding to any action, notice, claim, order, summons, citation, directive, litigation, investigation or proceeding which is related to (i) Landlord's failure to comply with any environmental or industrial hygiene law, including without limitation any regulations, guidelines, standards or policies of any governmental authorities regulating or imposing standards of liability or standards of conduct with regard to any environmental or industrial hygiene conditions or matters as may now or hereafter be in effect, and (ii) any environmental or industrial hygiene conditions that arise out of or are in any way related to the condition of the Property, unless the environmental conditions are caused by Tenant.

(d) The indemnifications of this Paragraph specifically include reasonable costs, expenses and fees incurred in connection with any investigation of Property conditions or any clean-up, remedial, removal

or restoration work required by any governmental authority. The provisions of this Paragraph will survive the expiration or termination of this Agreement.

**13.    ACCESS.**    At all times throughout the term of this Agreement, and at no additional charge to Tenant, Tenant and its employees, agents, and subcontractors, will have twenty-four hour, seven day vehicular access to and over the Property from Old Connecticut Path for the installation, maintenance and operation of the Communication Facility and any utilities serving the Premises. The Tenant shall be responsible for the providing of utilities to the site, and shall install such utilities in accordance with requirements of the Town. The Tenant shall be responsible for the cost of bringing such utilities to the site.

**14.    REMOVAL.**

(a)    All portions of the Communication Facility brought onto the Property by Tenant will be and remain Tenant's personal property and, at Tenant's option, may be removed by Tenant at any time during the Term. Landlord covenants and agrees that no part of the Communication Facility constructed, erected or placed on the Premises by Tenant will become, or be considered as being affixed to or a part of, the Property, it being the specific intention of the Landlord that all improvements of every kind and nature constructed, erected or placed by Tenant on the Premises will be and remain the property of the Tenant and may be removed by Tenant at any time during the Term. Within six (6) months of the termination of this Agreement, Tenant will remove all such improvements, reasonable wear and tear and loss by casualty or other causes beyond its control excepted. Any below ground footings, foundations, concrete, and/or underground utilities will not be required to be removed from the Property.

(b)    In the event that Tenant fails to remove any improvements from the Property within six (6) months following the termination of the Agreement, the Town, at its option, may exercise the performance bond or other financial security posted by Tenant, pursuant to Section 3, to insure removal of the Communications Facility.

**15.    MAINTENANCE; UTILITIES.**    (a) Tenant will keep and maintain the Premises in good condition, reasonable wear and tear and damage from the elements excepted. Landlord will maintain and

repair the Property and access thereto, in good and tenantable condition, subject to reasonable wear and tear and damage from the elements.

(b)     Tenant will be solely responsible for and promptly pay all utilities charges for electricity, telephone service or any other utility used or consumed by Tenant on the Premises. Landlord will fully cooperate with any utility company requesting an easement over, under and across the Property in order for the utility company to provide service to the Tenant. In the event Tenant cannot secure its own metered electrical supply, Tenant will have the right, at its own cost and expense, to submeter from the Landlord. Tenant will pay on a monthly basis the current local utility company rate for submetered electric, after the meter is read by the Landlord and billed to Tenant. Landlord will not be responsible for interference with, interruption of or failure, beyond the reasonable control of Landlord, of such services to be furnished or supplied by Landlord.

16.     **DEFAULT AND RIGHT TO CURE.** (a)  The following will be deemed a default by Tenant and a breach of this Agreement: (i) non-payment of Rent if such rent remains unpaid for more than fifteen (15) days after receipt of written notice of such failure to pay from Landlord; or (ii) Tenant's failure to perform any other term or condition under this Agreement within thirty (30) days after receipt of written notice from Landlord specifying the failure. No such failure, however, will be deemed to exist if Tenant has commenced to cure such default within such period and provided that such efforts are prosecuted to completion with reasonable diligence. Delay in curing a default will be excused if due to causes beyond the reasonable control of Tenant. If Tenant remains in default beyond any applicable cure period, Landlord will have the right to exercise any and all rights and remedies available to it under law and equity.

(b)     The following will be deemed a default by Landlord and a breach of this Agreement. Landlord's failure to perform any term or condition under this Agreement within thirty (30) days after receipt of written notice from Tenant specifying the failure. No such failure, however, will be deemed to exist if Landlord has commenced to cure the default within such period and provided such efforts are prosecuted to completion with reasonable diligence. Delay in curing a default will be excused if due to causes

31

beyond the reasonable control of Landlord. If Landlord remains in default beyond any applicable cure period, Tenant will have the right to exercise any and all rights available to it under law and equity, including the right to cure Landlord's default and to deduct the costs of such cure from any moneys due to Landlord from Tenant.

17.    **ASSIGNMENT/SUBLEASE.** Tenant will construct the monopole and utilities to accommodate at least four wireless communication carriers as may be permitted pursuant to the provisions of the Town's Planned Wireless Communications Services District Bylaw. Subject to the provisions of Section 2(c)(ii), the Landlord shall have the right to place, at its expense, one or more emergency antennas, e.g., Police and Fire, on Tenant's monopole as long as the antennas do not interfere with the provision of wireless communications by Tenant or any of the wireless communication carriers subleasing space from Tenant. Tenant shall have the right to sublet space on the monopole and within the fenced equipment compound at the base of the monopole to FCC-licensed carriers and to charge each such carrier collocating on the monopole commercially reasonable rent and reasonable costs and fees to offset the Tenant's site development costs, not to include the costs of Tenant's own communications equipment, if any. The term site development costs shall include, but not be limited to, costs of labor, materials, contractors and subcontractors, costs for plan generation and permitting, survey costs, costs of new construction, costs for removing the Town's emergency communications tower, if applicable, and costs of bringing power and telephone service to the site. If a fourth wireless communications carrier collocates on the monopole, the Landlord shall have the right to a collocation fee as set forth in Exhibit 2 to this Agreement.

Upon forty-five (45) days advance written notice to Landlord, Tenant will have the right to assign this Agreement to an affiliate of Tenant, without the Landlord's consent. Upon notification to Landlord of such assignment, Tenant will be relieved of all future performance, liabilities and obligations under this Agreement. Said assignee will be bound by the terms of this Agreement and its performance, liabilities and obligations. Prior to the effective date of any assignment of this Lease, Tenant shall ensure that all required bonds and certificates of insurance are properly executed by the assignee, with notice to be

provided to Landlord. Any assignment of this Lease shall not be valid unless and until such time as evidence is provided to Landlord of execution of bonds and certificates of insurance in favor of the assignee.

Except as set forth in the preceding paragraphs, the Tenant is expressly prohibited from assigning its Lease or subletting any portion of the Property, or otherwise granting to any third party the right to locate or maintain antennas or communications equipment on or at the Property without the written consent of Landlord, which shall not be unreasonably withheld, delayed or conditioned.

18.     **NOTICES.**     All notices, requests, demands and communications hereunder will be given by first class certified or registered mail, return receipt requested, or by a recognized overnight courier, postage prepaid, to be effective when properly sent and received, refused or returned undelivered. Notice will be addressed to the parties at the addresses set forth above. Either party hereto may change the place for the giving of notice to it by thirty (30) days prior written notice to the other as provided herein.

19.     **SEVERABILITY.**     If any term or condition of this Agreement is found unenforceable, the remaining terms and conditions will remain binding upon the parties as though said unenforceable provision were not contained herein. However, if the invalid, illegal or unenforceable provision materially affects this Agreement then the Agreement may be terminated by either party on ten (10) days prior written notice to the other party hereto.

20.     **CONDEMNATION.** In the event Landlord receives notification of any condemnation proceedings affecting the Property, Landlord will provide notice of the proceeding to Tenant within forty-eight (48) hours. If a condemning authority takes all of the Property, or a portion sufficient, in Tenant's sole determination, to render the Premises unsuitable for Tenant, this Agreement will terminate as of the date the title vests in the condemning authority. The parties will be entitled to share in the condemnation proceeds in proportion to the values of their respective interests in the Property, which for Tenant will include, where applicable, the value of its Communication Facility, moving expenses, prepaid rent, and business dislocation expenses. Tenant will be entitled to reimbursement for any prepaid Rent.

**21.    CASUALTY.**  Landlord will provide notice to Tenant of any casualty affecting the Property within forty-eight hours of the casualty.  If any part of the Communication Facility or Property is damaged by fire or other casualty so as to render the Premises unsuitable, in Tenant's sole determination, then Tenant may terminate this Agreement by providing written notice to the Landlord, which termination will be effective as of the date of such damage or destruction.  Upon such termination, Tenant will be entitled to collect all insurance proceeds payable to Tenant on account thereof and to be reimbursed for any prepaid Rent.

Tenant will provide notice to Landlord of any release of oil or hazardous materials on the Property within forty-eight (48) hours of such a release.

**22.    WAIVER OF LANDLORD'S LIENS.**    Landlord hereby waives any and all lien rights it may have, statutory or otherwise, concerning the Communication Facility or any portion thereof.  The Communication Facility shall be deemed personal property for purposes of this Agreement, regardless of whether any portion is deemed real or personal property under applicable law, and Landlord hereby consents to Tenant's right to remove all or any portion of the Communication Facility from time to time in Tenant's sole discretion and without Landlord's consent.

**23.    MISCELLANEOUS.**

(a)    Amendment; Waiver.    This Agreement cannot be amended, modified or revised unless done in writing and signed by an authorized agent of the Landlord and an authorized agent of the Tenant.  No provision may be waived except in a writing signed by both parties.

(b)    Short Form Lease. Either party will, at any time upon fifteen (15) days prior written notice from the other, execute, acknowledge and deliver to the other a recordable Memorandum of Lease.  Either party may record this memorandum at any time, in its absolute discretion.

(c)    Bind And Benefit.    The terms and conditions contained in this Agreement will run with the Property and inure to the benefit of the parties, their respective heirs, executors, administrators, successors and assigns.

(d)    Entire Agreement.    This Agreement and the exhibits attached hereto, all being a part hereof, constitute the entire agreement of the parties hereto and will supersede all prior offers, negotiations and agreements.

(e)    Governing Law.         This Agreement will be governed by the laws of the Commonwealth of Massachusetts, without regard to conflicts of law.

(f)    Interpretation.  Unless otherwise specified, the following rules of construction and interpretation apply:  (i) captions are for convenience and reference only and in no way define or limit the construction of the terms and conditions hereof; (ii) use of the term "including" will be interpreted to mean "including but not limited to"; (iii) whenever a party's consent is required under this Agreement, except as otherwise stated in the Agreement or as same may be duplicative, such consent will not be unreasonably withheld, conditioned or delayed; (iv) exhibits are an integral part of the Agreement and are incorporated by reference into this Agreement; (v) use of the terms "termination" or "expiration" are interchangeable, and (vi) reference to a default will take into consideration any applicable notice, grace and cure periods.

(g)    Estoppel.  Either party will, at any time upon fifteen (15) days prior written notice from the other, execute, acknowledge and deliver to the other a statement in writing (i) certifying that this Agreement is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying this Agreement, as so modified, is in full force and effect) and the date to which the rent and other charges are paid in advance, if any, and (ii) acknowledging that there are not, to such party's knowledge, any uncured defaults on the part of the other party hereunder, or specifying such defaults if any are claimed.  Any such statement may be conclusively relied upon by any prospective purchaser or encumbrancer of the Premises.  Failure to deliver such a statement within such time will be conclusive upon the requesting party that (i) this Agreement is in full force and effect, without modification except as may be properly represented by the requesting party, (ii) there are no uncured defaults in either party's performance, and (iii) no more than one month's rent has been paid in advance.

(h)    No Option.    The submission of this Agreement for examination or consideration does not constitute a reservation of or option for the Premises.  This Agreement will become effective as an Agreement only upon the legal execution, acknowledgment and delivery hereof by Landlord and Tenant.

(i)    Noise.  The use of the Property shall be in compliance with State and local regulations and bylaws governing noise.  Sound dampening equipment shall be used for equipment using an internal combustion engine.

(j)    Removal of Trees.   The Tenant shall not remove or harm any trees located outside the 4,000square foot area noted on Exhibit 1 and any required connection to the currently existing access to Old Connecticut Path without the specific written approval of both the Wayland Water Commissioners and Board of Selectmen prior to such removal, which approval will not be unreasonably withheld.

(k)    Liens.  The Tenant shall use its best efforts throughout the term of the Lease to prevent any mechanic's liens or other liens for work, labor, services, or materials from being filed or recorded against the Property or any portion thereof. In the event that any such lien shall be filed, the Tenant shall agree to procure the release or discharge thereof within sixty (60) days either by payment or in such other manner as may be prescribed by law, and the Tenant shall indemnify, hold harmless the Town, and defend the Town against any loss or damage related thereto.

(l)    Tenant's Discretionary Removal of Equipment.  Landlord hereby consents to Tenant's right to remove all or any portion of the Communication Facility from time to time in Tenant's sole discretion and without Landlord's consent.

**IN WITNESS WHEREOF**, the undersigned has caused this Agreement to be executed this _____ day of _____, 2005.

**LANDLORD**
**TOWN OF WAYLAND, BY:**
**ITS BOARD OF SELECTMEN**

## **LANDLORD ACKNOWLEDGMENT**

COMMONWEALTH OF MASSACHUSETTS     )
                                                            ) ss:
COUNTY OF MIDDLESEX                            )

On the _____ day of _____, 2005, before me, the undersigned Notary Public personally appeared the members of the Board of Selectmen, and proved to me through satisfactory evidence           of               identification,              which              were _____, to be the persons whose names are signed on the preceding document, and acknowledged under oath that they constitute the Board of Selectmen of the Town of Wayland, and as such were duly authorized to execute this instrument on behalf of the Town of Wayland, a municipal corporation.


_____
Notary Public
My Commission Expires: _____


**APPROVED AS TO FORM:**


_____
Mark J. Lanza, Town Counsel


**TENANT**


_____
By:

## TENANT ACKNOWLEDGMENT

COMMONWEALTH OF MASSACHUSETTS   )
                                 )ss:

COUNTY OF _____)

     On the _____ day of _____, 200_, before me, the undersigned Notary Public, personally appeared _____, proved to me through satisfactory evidence of identification, which were _____, to be the person whose name is signed on the preceding document, and acknowledged to me that he/she signed it voluntarily and for its stated purpose as the _____ of _____ , the Tenant named in the attached instrument, and as such was authorized to execute this instrument on behalf of the Tenant.


                                   _____
                                   (Official signature and seal of notary)
                                   Notary Public: _____
                                   My Commission Expires: _____

# EXHIBIT 2

## SCHEDULE OF RENT

Base Annual Rent (including up to three collocators):

Initial Ten Year Term of Lease: Years 1 to 5 _____
                             Years 6 to 10 _____

Year Eleven of Lease Term:    _____

Annual Escalator to be applied in Year Twelve and thereafter: _____ (% per year).

Collocation Rent (in the event of a fourth collocator):

Additional Rent for Collocation: Years 1 to 5: _____
                             Years 6 to 10 _____

Additional Rent for Collocation Year Eleven of Lease Term: _____

Annual Escalator to be applied in Collocation Year Twelve and thereafter: _____ (% per year).


G:\DOCS\ATT\WaylandEasternLit\P\AMENDEDFINALSETTLEMENT\ExhibitA-RFP-Final-1A-Clean-081105.DOC