**EXHIBIT F**
**Conditions for Plaintiffs' Tower Facility at Reeves Hill Site**

## DEFINITIONS

*For the purposes of the conditions below, the following definitions apply:*

***ZBA:*** *the Wayland Zoning Board of Appeals*

***Building Commissioner:*** *the Building Commissioner of Town of Wayland (or his designated agent)*

***Town:*** *the Town of Wayland*

***FAA:*** *the Federal Aviation Administration (or its successor agency)*

***FCC:*** *the Federal Communications Commission (or its successor agency)*

***DPH:*** *the Massachusetts Department of Public Health (or its successor agency)*

***Applicants, Tower Owner, Tenants:*** *the applicants, the tower owner and the tower's tenants, respectively*

**The Zoning Board of Appeals sets the following conditions for the wireless communication facility at 0 and 139 Old Connecticut Path ("Reeves Hill"), Wayland, MA:**

## PERMITS AND STANDARDS

**1. Other permits:** Except to the extent superseded by or inconsistent with the Judgment in the matter *AT&T Wireless Services of Massachusetts v. Town of Wayland, et al.*, United States District Court for the District of Massachusetts, Civil Action Docket No. 04-11807MLW (the "TCA Case"), the Applicants must obtain and comply with all other required municipal, state, and federal permits from regulatory authorities having jurisdiction in this matter.

**2. Structural integrity:** The 180-foot monopole tower must meet the Massachusetts Building Code provisions for seismic loadings and structural protection from wind and ice and shall be designed to support a height at least 20' above tower height.

**3. Radiofrequency emissions:** The tenants' use of the monopole tower must be fully compliant with federal requirements on radiofrequency emissions and the provisions of the Wayland Zoning Bylaw, §198-1503.2.16, to the extent lawful, reasonable and applicable and not inconsistent with regulations adopted by the FCC.

**4. Monitoring standards:** Monitoring, testing, and inspection must be in accordance with the regulations of the FCC and, to the extent lawful, reasonable and applicable, DPH.

**5. ANSI standards:** The monopole tower and its transmission must comply in all respects with the current standards of the American National Standards Institute (ANSI) and the National

Council for Radiation Protection (NCRP), whichever are stricter, if and to the extent adopted by the FCC.

**6. Construction traffic control:** Prior to the issuance of a building permit and the start of construction, the Applicants must meet with representatives from the Building Department, the Police Department, the Highway Department, the Conservation Commission, and any other relevant Town officials to discuss staging areas, traffic issues, and other construction-related matters. The Applicants must bear the cost of any reasonable and necessary temporary traffic controls associated with the construction.

**7. Construction inspections:** An independent, Massachusetts-registered professional engineer who is not affiliated with any of the Applicants, at the Applicants' reasonable expense, must review all the construction documents, review and approve all quality-control procedures, and inspect the site at appropriate intervals. The reviews and inspection results must be included in a certified report, submitted to the Building Commissioner, attesting that the construction of the facility complies with the Judgment in the TCA Case and other applicable building and safety codes.

**8. Construction:** All materials shall be assembled and constructed on the site by contractors licensed by the Commonwealth of Massachusetts, with insurance and bonding mutually acceptable to the Applicants and the Wayland Building Commissioner.

**9. Maintenance:** The monopole tower and associated equipment mounted on the tower at the site shall be subject to periodic inspection and maintenance, to ensure their structural and mechanical integrity, and to avoid structural, mechanical and other failures. This periodic inspection and maintenance must occur at least every year. The Tower Owner must submit a report to the Building Commissioner indicating, among other details, the date of the inspection, the personnel performing the inspection, and the results. If any changes or repairs to the tower are performed as a result of the maintenance inspection, the Tower Owner should file a supplemental report after the repairs. Each report is due within 7 business days of the inspection or repair. In the event the Tower Owner fails to conduct a required inspection or to submit a required report, the Town shall notify the Tower Owner and all FCC-licensed carriers collocating on the tower of this alleged omission; and the Tower Owner or any carrier collocating on the tower shall have 45 days to conduct the required inspection and submit the required report before the Town may commence any enforcement action with respect thereto. [See also Condition 22, below.]

**10. Removal:** Within six (6) months of the termination of the use of the tower, the Tower Owner and its Tenants will remove all of their respective above-ground improvements and the Tower Owner will, to the extent reasonable, restore the site to its condition at the commencement of the tower construction, reasonable wear and tear and loss by casualty or other causes beyond its control excepted. Notwithstanding the foregoing, the Tower Owner and its Tenants will not be required to remove from the site any foundations which are fully buried or underground utilities, but shall remove any such materials which reach or protrude above the surface. [See also Condition 20, below.]

**VISUAL IMPACT**

**11. Screening vegetation:** To mitigate against visual impacts on the neighborhood, the Tower Owner must, during construction, not permit any contractor to place or stockpile construction materials on the root zones of the existing vegetation and mature trees or to disturb the root

2

zones of the mature trees (the "root zone" being an area around the base of the tree equal to the width of the canopy). The Tower Owner must replace any mature tree on the site that dies within 4 years of the construction unless the death was from natural causes or caused by activity other than that of the Tower Owner or its Tenants. The replacement vegetation must be a fast-growing species at least 15 feet high when planted.

**12. Fencing and landscaping:** The fencing surrounding the installation and accessory equipment, which will serve to control access to the facilities and the monopole tower, must be an 8-foot high locked black or green chain link fence topped by three strands of barbed wire. The fence must be kept in good repair, at the Tower Owner's expense, and screened to the east (except for an access gate) by evergreen vegetation (at least one row of native evergreen shrubs or trees capable of forming a continuous hedge at least 10 feet in height within two years of planting to effectively screen the tower base and accessory facilities), which vegetation must be also maintained and replaced if it dies.

**13. Lighting and Noise:** No permanent lighting can be placed to shine on or otherwise illuminate the monopole, unless required by the FAA. Lighting on the monopole shall be limited to that needed for emergencies or as required by the FAA. Any lighting placed at the base to facilitate inspection and maintenance must be turned off when the inspection/maintenance personnel are not present. No flag shall be flown or displayed on the monopole. Noise generation shall be in accordance with the provisions of the Wayland Zoning Bylaw, §198-1503.2.16 to the extent reasonable, applicable and lawful.

**14. Concealment:** All equipment must be concealed behind the fencing. All antennas must be flush (closely) mounted to the outside of the monopole tower, with appropriate allowance for antenna tilting, to meet coverage objectives consistent with minimizing adverse visual impact of the antennas. The monopole tower must be constructed to ensure that no portion of the structure falls off in high winds or ice storms. The monopole tower must have a galvanized finish in a color as determined by the ZBA within 30 days of the execution of the Agreement for Judgment.

**15. Collocators:** The Tower Owner must agree to provide access for FCC-licensed collocators, including space on the monopole tower and room at the base, within the chain link fencing, for related ground equipment. The facilities of Cingular Wireless and three additional FCC-licensed collocators within the tower and within the fence are hereby approved. All additional collocators must file a separate application with the ZBA.

**16. Signage:** The only signs allowed at the facility are no-trespassing/private property warning signs affixed to the fence and a required sign indicating whom to contact in the event of an emergency and the telephone number for that contact. As long as the monopole tower remains in use, this contact information must be kept current.

## INDEMNITIES AND PROTECTIONS

**17.   Indemnification:** The Tower Owner shall indemnify the Town for any damage to the Town's water supply tanks or other structures and equipment in the vicinity of the facility caused by its facility.

**18. Corrosion protection:** The Tower Owner must supply proof that the manufacturer of the tower has added corrosion protection for the monopole and the base of the tower. All hardware must be galvanized, to prevent rust.

**19. Liability insurance:** The Tower Owner, each of its Tenants and all applicants will carry from the date of commencement of construction through the later of, the date of removal of the tower or termination of tower use, the following insurance, at a minimum: (i) "All Risk" property insurance for the replacement of all property on the site at replacement cost; (ii) commercial general liability insurance with a minimum limit of liability of $5,000,000 combined single limit for bodily injury or death/property damage arising out of any one occurrence, naming the Town as an additional insured, if permitted by the insurer; and (iii) Workers' Compensation Insurance as required by law. All insurance carriers shall be licensed in Massachusetts. Annual proof of such insurance must be filed with the Town Clerk.

**20. Removal bond:** Removal must be conducted in accordance with Condition 10 hereof. To ensure this, the Tower Owner must obtain a performance bond or other form of financial security, in an amount consistent with a removal cost estimate stamped by a Massachusetts registered professional engineer and deposit it with the Town, to be used for removal and site-restoration costs in the event that the Applicants fail to comply. The Tower Owner also agrees to allow the Town and its agents and employees the right to enter the property for the purpose of removing the monopole in the event that it is not removed after such cessation of use, and Applicants warrant that the lease with the property owner will, for the duration of the lease, confirm this right to enter.

**21. Change in owner or lessee:** If the monopole tower as a whole, or any of its components, is sold, assigned, licensed or leased to an entity other than applicant Eastern Towers or Horizon Towers, the new owner or lessee must notify the ZBA in writing, within seven business days of the sale or transfer, with its name, address, telephone, and other contact information. [See also Condition 16, above.] The new owner or lessee shall be subject to all of the provisions of this permit.

**22. Right to Cure:** In the event the Applicants or the Tower Owner or any Tenant fails to perform any condition required of it hereunder within forty-five (45) days after receipt of written notice from the Town specifying the failure, then the Town may commence an enforcement action with respect thereto; provided, however, that no such failure will be deemed to exist if the Applicants, Tower Owner or any Tenant, as applicable, has commenced to cure such violation within such period and provided that such efforts are prosecuted to completion with reasonable diligence. Delay in curing a violation will be excused if due to causes beyond the reasonable control of the Applicants, Tower Owner or any Tenant. In the event that a failure presents an imminent threat to the public health or safety, the Town may commence enforcement action within a shorter time period as may be warranted by the circumstances.