UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, f/k/a AT&T WIRELESS PCS, LLC, and HORIZON TOWERS, LLC, (substituted for Eastern Towers, LLC)<br><br>Plaintiffs,<br>v.<br>TOWN OF WAYLAND, MASSACHUSETTS, BOARD OF APPEALS of the TOWN OF WAYLAND and JAMES E. GRUMBACH, ERIC B. GOLDBERG, STEVEN FUGARAZZO, LAWRENCE K. GLICK, SUSAN KOFFMAN, SHAUNT SORIAN, ADIA GENNIS, LINDA SEGAL, as they are members and alternate members of the Board,<br><br>Defendants. | C.A. No. 04-11807 MLW |

## STIPULATION IN FURTHERANCE OF FINAL JUDGMENT

This Stipulation in Furtherance of Final Judgment (the "Stipulation") is made by, between and among the following parties:

    The Plaintiff New Cingular Wireless PCS, LLC, f/k/a AT&T Wireless PCS, LLC, ("Cingular"), a Delaware Limited Liability Company qualified to do business in Massachusetts with a business address of 580 Main Street, Bolton, Massachusetts 01740;

    The Plaintiff Horizon Towers, LLC, a Massachusetts Limited Liability Company with a principal place of business at 8 Doaks Lane, Marblehead, MA 01945, the assignee from Eastern Towers, LLC of the ground lease agreement and all other site related work product involving the development of a wireless communications tower at 137 Boston Post Road, Wayland, MA (collectively "Horizon");

    The Defendant Town of Wayland, a duly constituted municipality in Middlesex County, Massachusetts, with its principal office located at the Town Building, 41 Cochituate Road, Wayland, MA 01778 (the "Town"); and

    The Defendant Zoning Board of Appeals ("Board of Appeals") of the Town of Wayland, a duly constituted board with an office located at Town Building, 41 Cochituate Road, Wayland, MA 01778, and the Defendant members, associate members and former members of the Board of Appeals.

## **FACTUAL RECITATIONS**

WHEREAS, the Federal District Court entered Final Judgment in the above-captioned matter on or about September 12, 2005 as corrected on or about September 22, 2005, *nunc pro tunc* (the "Judgment") (Exhibit A).

WHEREAS, after an RFP process as referenced in Section 2.2.1 of the Judgment, Horizon and the Town entered into a Lease Agreement with respect to the Reeves Hill Site executed in November of 2005 (the "Lease") (Exhibit B).

WHEREAS, subtenants, including Cingular, have entered into permitted subleases with Horizon for space at the Reeves Hill Tower Facility.

WHEREAS, at a Special Town Meeting on November 1, 2005, the Town adopted a zoning bylaw to rezone the Reeves Hill Site as a Planned Wireless Communication Services District as referenced in Section 2.2.3.b of the Judgment (the "Reeves Hill Zoning Amendment") (Exhibit C).

WHEREAS, the Attorney General approved the Reeves Hill Zoning Amendment, with the exception of one provision not relevant hereto (Exhibit D).

WHEREAS, on or about May 17, 2006, certain Wayland residents filed a Complaint (With Jury Demand) in Middlesex Superior Court, Civil Action No. MICV 2006-01659 (the "Suit") (Exhibit E).

WHEREAS, the Suit challenges the validity of the Reeves Hill Zoning Amendment.

WHEREAS, on or about May 31, 2006, the Town issued a Building Permit for the Reeves Hill Tower Facility (the "Building Permit") (Exhibit F).

WHEREAS, if the Suit is not resolved promptly and favorably to Horizon and Cingular, the Suit makes it possible for Horizon to terminate the Lease under Section 7(b) and entitles

2

Horizon and Cingular to the relief set forth in Section 3 of the Judgment with respect to the 137 Boston Post Road Site.

WHEREAS, notwithstanding the filing of the Suit, all parties to this Stipulation consider it appropriate for Horizon, Cingular and Horizon's permitted subtenants to proceed with construction and operation of the Reeves Hill Tower Facility pursuant to the Judgment at this time, on the terms set forth herein, and with a full reservation of all of the parties' rights under the Judgment in the event the Suit is ultimately resolved adversely to them.

NOW THEREFORE, for adequate consideration, the receipt and sufficiency of which are hereby acknowledged, the parties to this Stipulation agree as follows, with the intention that this Stipulation shall operate both as a means to implement the Judgment and as an independent contract between the parties:

I. **CONSTRUCTION AND OPERATION PURSUANT TO JUDGMENT**

Horizon and Cingular will (and Horizon's other permitted subtenants may) exercise due diligence to commence construction on or before August 22, 2006 and upon completion of such construction, intend to commence the operation of the Reeves Hill Tower Facility both pursuant to the Judgment, the Lease and the Building Permit, on the terms set forth herein, and with a full reservation of their rights under the Judgment. The sole remedy for any failure to exercise such due diligence shall be that the Town may elect to declare this Agreement null and void, by written instrument delivered on or before August 31, 2006 to Horizon and Cingular's counsel.

In the event that such construction and/or operation is restrained or enjoined, and/or the Suit is resolved in the Trial Court in any way adversely to the rights of Horizon and/or Cingular with respect thereto, the Town and the Board of Appeals covenant and agree that Horizon has the right to terminate the Lease under Section 7(b) and Horizon and Cingular are entitled to the relief set forth in Section 3 of the Judgment with respect to the 137 Boston Post Road Site. If, and only if, all parties agree, they may extend parts I and II of this Stipulation beyond the entry of a preliminary or final injunction, restraining order or judgment in the Trial Court, to encompass any appeal. Otherwise, an adverse injunction, restraining order or judgment in the Trial Court shall entitle Horizon and Cingular to said relief.

## II. **DEFENSE OF THE SUIT**

Pursuant to Section I of the Agreement for Judgment in the above-captioned matter:

- Horizon and Cingular covenant and agree that they will, separately or together, use reasonable efforts to defend the validity of the Agreement for Judgment and the Final Judgment against collateral attack in the Suit. The other parties hereto covenant and agree (a) to cooperate with those efforts on reasonable request, and (b) not to undertake any action (directly or indirectly) with the intent or effect to undermine those efforts and/or to attack the validity of the Final Judgment.

- The Town and Board of Appeals ("Town Defendants") covenant and agree to defend in the Suit the validity of all actions taken by them pursuant to the Agreement for Judgment and the Final Judgment. Horizon and Cingular covenant and agree to assist the Town Defendants in the defense of the Suit with respect to those actions.

- The Town Defendants, Horizon and Cingular will bear their own costs and fees in defending the Suit.

## III. **AMENDMENTS TO THE LEASE**

The Town Defendants recognize that (a) the Commencement Date of the Lease is "the date that Tenant commences construction" (§ 4), (b) if the Suit is not resolved promptly and favorably then Horizon has the right to terminate the Lease under Section 7(b) and Horizon and Cingular are entitled to the relief set forth in Section 3 of the Judgment with respect to the 137 Boston Post Road Site, and (c) in these circumstances the Town would receive neither any rent under the Lease nor any of the zoning benefits from the use of the Reeves Hill Site for the approved facility. The Town Defendants further recognize that Horizon and its permitted subtenants (including Cingular) will incur certain costs and business risks of proceeding with construction of the Reeves Hill Tower Facility while the Suit is pending, which costs and risks would be avoidable by

5

exercising their right to the relief set forth in Section 3 of the Judgment with respect to the 137 Boston Post Road Site.

Accordingly, the Town and Horizon agree that the Lease shall be and hereby is amended as follows:

A. Notwithstanding the provisions of Section 4 of the Lease, rental payments under the Lease ("Rental Payment(s)") shall not begin to accrue until the later of (1) fifty (50) days after the Town delivers an executed original of this Stipulation to Cingular's and Horizon's attorneys if construction begins within twenty (20) days of such delivery, or (2) the commencement of construction of the tower at the Reeves Hill Site.

B. Beginning on the date when Rental Payments first accrue under paragraph III.A. above, until the date specified in paragraph III.C. below, Horizon shall pay the Rental Payments, when due, into an interest bearing escrow account at Fidelity Investments("Escrow Account") to be maintained by Anderson and Kreiger, LLP as escrow agent ("Escrow Agent"), pursuant to an Escrow Agreement to be signed by the parties. Horizon shall simultaneously notify the Town of the amount of each Rental Payment and the account into which the payment is deposited. Horizon shall provide any necessary permission and authorization for the Town to verify with the Escrow Agent and/or Fidelity Investments the amount and date of all deposits into the Escrow Account and the balance of the account.

1. The rent paid into the Escrow Account under paragraph III.B. above, minus offsets or adjustments under this Stipulation paragraph III.D below, shall be released from the Escrow Account and paid to the Town upon the full and final resolution of the Suit in favor of the Town, Horizon and Cingular. For purposes of this paragraph, "full and final resolution of the Suit" shall mean entry of a final judgment that permits construction and use of the wireless communications facility at the Reeves Hill Site to the full extent contemplated in the Lease and the Judgment, and which is not appealed within the applicable time for appeal or, if the matter is appealed, receives a favorable final appellate disposition, which is no longer subject to further appeal, permitting construction and use of the wireless communications facility at the Reeves Hill Site to the full extent contemplated in the Lease and the Judgment.

2. The rent paid into the Escrow Account under paragraph III. B. above, minus offsets or adjustments under this Stipulation paragraph III.D. below, shall be released from the Escrow Account and paid to Horizon upon either of the following: (1) on the tenth

6

(10th) day (or the following business day, if the tenth (10th) day is on a weekend or holiday) after the receipt of notice of entry of an Adverse Judgment, as hereinafter defined, by the Trial Court, or: (2) five (5) business days after Horizon and Cingular notify the Town of their election to exercise their right to the relief set forth in Section 3 of the Judgment with respect to the 137 Boston Post Road Site, consistent with this Stipulation and the Judgment. An "Adverse Judgment" shall mean any judgment that does not permit the construction and use of the wireless communication facility at the Reeves Hill Site to the full extent provided in the Lease and Judgment. The filing of an appeal from an Adverse Judgment shall not relieve the Escrow Agent of the obligation to make the payment to Horizon unless all parties to this Stipulation agree in a writing delivered to the Escrow Agent within nine (9) days (or the next business day, if the ninth (9th) day is on a weekend or holiday) after the entry of the Adverse Judgment. In the event that there is an appeal and an Adverse Judgment is entered after appeal, and the parties do not agree in writing to any further amendments or stipulations, the Escrow Agent shall make the payment to Horizon as provided above.

3. In any case, the release of funds shall include release of the interest accrued to the party to whom the principal is released.

C. Rental Payments shall be made directly to the Town, and no longer into the Escrow Account, when the sum of (i) the cumulative Net Operating Income ("NOI"), as defined below, and (ii) the balance in the Escrow Account first exceeds the Total Construction Costs.

1. "Net Operating Income" (NOI) shall be computed monthly and on a cash basis and shall mean:

Monthly Rental Income
 minus the following Monthly Expenses including:
    Ground Rent
    Insurance
    Maintenance and Repairs
    Real Estate Taxes
    Accounting and Administrative Services (not to exceed 4% of collected rents), if any.

Excluded from monthly income or expenses are any legal fees and interest costs paid or reimbursed by Horizon or its tenants.

2. "Total Construction Costs" shall mean Professional Services and Costs of Design and Construction of the Tower and shall include the following:

   (a)  Professional Services (not to exceed $15,000 in the aggregate):

   NEPA / environmental review
   SHPO/historic review
   Geotechnical services
   Professional Design and certification fees
   21E and other environmental testing
   Any other ordinary and necessary professional expense other than attorneys fees.

   (b)  Costs of Design and Construction of Tower incurred after May 17, 2006:

   Costs of the design and construction of the tower include costs associated with all work commencing with building permit fees, clearing of the site, excavation, foundation, back-fill, tower purchase, shipping and erection, provision of all utilities to compound (but not including monthly charge for such service), fencing, and landscaping. It also includes the employment of a general contractor, professional services for construction, construction management, including services provided by one or more employees of Turning Mill, and any and all sub-contractors necessary to accomplish the foregoing work.

In the event any of the above mentioned services have been or are to be performed by affiliates of the principals of Horizon, the cost of such services shall not exceed the amount that would otherwise have been payable had a non-affiliated entity or person been hired to provide such service(s).

For informational purposes only (and not as a limitation, waiver, or agreement of any kind), Horizon presently estimates Total Construction Costs of approximately $175,000.

Horizon shall provide quarterly reports to the Town setting forth the cumulative amount of NOI and Total Construction Costs paid or incurred as of the date of such report, and shall make available at Horizon's office, for inspection by a qualified representative of the Board of Selectmen (such as an accountant), such non-privileged back-up as the Town may

reasonably request. The first quarterly report shall be due on September 15, 2006, covering the period through August 31, 2006.

D. On or before August 1, 2006, the Town may notify Horizon in writing of the Town's selected method of paying the cost to move, if applicable, and install the Town's emergency antennas and associated equipment on the Tower. Within this time frame, the Town may choose, for instance, to advance the funds, to receive a bill from Horizon, payable within thirty (30) days, or to pay by abating rent in the amount of the full cost incurred as a result of removing, if applicable, and installing the antennas and equipment (Horizon to document such cost for the Town by providing it with a written statement thirty (30) days prior to such rent abatement).

   1. If the Town does not inform Horizon in writing of the Town's selected payment method within the allotted time, then Horizon and Cingular shall have the sole discretion for determining the method of payment by the Town, including but not limited to deducting costs from the rent otherwise due.

   2. The parties recognize that, to the extent provided under paragraph 2 (c)(ii) of the Lease, Horizon has undertaken to remove the existing tower on Reeves Hill, which currently supports the Town's antennas and equipment, within 90 days of the cessation of the use of the existing emergency communications tower and any related foundation(s) on which such tower is currently located (for the purposes of this document removal of foundations means removal of material protruding above the surface), and relocate the antenna located thereon (or new antenna to be supplied by the Landlord, at its sole expense) to the new monopole along with any other equipment related thereto, provided that (x) it receives a written request from the Landlord to do so no later than 10 days following the execution of this Agreement and (y) such antennas do not interfere with the provision of wireless communications by Tenant or any of the wireless communications carriers subleasing space from Tenant." Horizon acknowledges timely receipt of the written request noted in paragraph 2 (c) (ii) (x) of the Lease If the Town chooses to relocate its existing antenna from the existing tower to the Tower and Horizon incurs any costs relating to the Town's antennas or equipment in the course of dismantling the existing tower, and no written notification has been received by August 1, 2006, then Horizon may deduct those costs from any Rental Payments otherwise due into escrow (or to the Town), including, without limitation, costs of dismantling, storing, disposing of or otherwise dealing with the Town's antennas and equipment on the existing tower.

IV. **TOWER COLOR**

Attachment 1, Section N to the Reeves Hill Zoning Amendment provides that, "The monopole must have a galvanized finish and its color shall be a color selected by the ZBA." The parties agree that the Board of Appeals' selected color shall be an unpainted galvanized, matte, i.e., non-reflective, finish.

V. **REPRESENTATIONS AND WARRANTIES**

Each party respectively represents and warrants that this Stipulation has been duly authorized by all necessary votes, actions, and other requirements of Horizon, Cingular, the Town, and the Board of Appeals and its members and associate members, and constitutes a legal, valid and binding obligation in accordance with its terms, and that no consent or permission related to the obligations assumed by this Stipulation is required under any covenant, agreement, or encumbrance or under any law or regulation of any governmental entity or jurisdiction. Without limitation, the undersigned Counsel represent and warrant that they have been authorized by their respective clients to execute and do hereby execute this Stipulation.

**AS TO STIPULATIONS**

| | |
|---|---|
| THE PLAINTIFFS<br> NEW CINGULAR WIRELESSPCS, LLC, and<br> HORIZON TOWERS, LLC<br>By its attorneys, | TOWN OF WAYLAND,<br>BOARD OF APPEALS of the TOWN OF WAYLAND and the Members and Associate Members of the Board,<br>By its attorneys, |
|   /s/ Douglas H. Wilkins<br>Stephen D. Anderson, Esq. (BBO #018700)<br>Douglas H. Wilkins, Esq. (BBO #528000)<br>ANDERSON & KREIGER LLP<br>43 Thorndike Street<br>Cambridge, MA 02141 |   /s/ Patricia A. Cantor<br>Joel B. Bard, Esq. (BBO#029140)<br>Patricia A. Cantor, Esq. (BBO#072380)<br>Kopelman & Page, P.C<br>101 Arch Street<br>Boston, MA 02110<br>(617)-556-0007 |

(617) 252-6575

Dated: July 18, 2006

## AS TO LEASE AMENDMENT

**IN WITNESS WHEREOF**, the undersigned has caused this Agreement to be executed this 18 day of July, 2006.

**LANDLORD
TOWN OF WAYLAND, BY:
ITS BOARD OF SELECTMEN**

_____

_____

_____

_____

11

### LANDLORD ACKNOWLEDGMENT

COMMONWEALTH OF MASSACHUSETTS )
                                                     ) ss:
COUNTY OF MIDDLESEX )

On the __18__ day of __July__, 2006, before me, the undersigned Notary Public personally appeared the members of the Board of Selectmen, and proved to me through satisfactory evidence of identification, which were __personal recognition__, to be the persons whose names are signed on the preceding document, and acknowledged under oath that they constitute the Board of Selectmen of the Town of Wayland, and as such were duly authorized to execute this instrument on behalf of the Town of Wayland, a municipal corporation.

_____
MaryAnn L. DiNapoli
Notary Public

My Commission Expires: October 13, 2011

**APPROVED AS TO FORM:**

_____
Mark J. Lanza, Town Counsel

**TENANT**

_____
By:

12

**TENANT ACKNOWLEDGMENT**

COMMONWEALTH OF MASSACHUSETTS  )
                                                                          )ss:
COUNTY OF Essex                                          )

On the 28 day of July, 2006, before me, the undersigned Notary Public, personally appeared Edward T. Moore, proved to me through satisfactory evidence of identification, which were a Mass DLW/Photo, to be the person whose name is signed on the preceding document, and acknowledged to me that he/she signed it voluntarily and for its stated purpose as the President & Treasurer of Glover Property Management Inc. Real Estate Manager for Horizon Tower's, the Tenant named in the attached instrument, and as such was authorized to execute this instrument on behalf of the Tenant.

_____
(Official signature and seal of notary)
Notary Public: _____
My Commission Expires: _____

LAURA M. WHITNEY
Notary Public
Commonwealth of Massachusetts
My Commission Expires
February 28, 2008

HORIZON TOWERS, LLC

SECRETARY'S CERTIFICATE

I, Toyo R. Johnson, do hereby certify that I am a duly elected, qualified and acting Secretary of Glover Property Management, Inc., as Manager ("Manager") of Horizon Towers, LLC, a Massachusetts limited liability company ("Horizon"), and as such I am authorized to execute this certificate. In such capacity, I further certify that:

1.  A Schedule of Authorization (the "Schedule"), required to execute agreements, was duly adopted by the sole Manager of Horizon on September 23, 2005.

2.  Edward T. Moore, Manager is authorized and empowered under the current Schedule to execute and deliver in the name of and on behalf of Horizon all documents, certifications, and agreements required by the Town of Wayland (the "Town") for the lease concerning location of wireless communications facilities.

**IN WITNESS WHEREOF**, the undersigned has affixed his signature this ___rd day of July, 2006.

_____
Toyo R. Johnson, Secretary

13